UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| In re: | CHAPTER 11 |
|---|---|
| **Isaacson Steel, Inc.** | Case No. 11-12415-JMD |
| **Isaacson Structural Steel, Inc.** | Case No. 11-12416-JMD |
| Debtors | Jointly Administered |

## ORDER on
## DEBTOR'S NON-ADVERSARIAL MOTION FOR ORDER PERMITTING SUBSTITUTION OF PROPOSED ORDER TO DEBTOR'S FIRST MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL AND PROVISION OF ADEQUATE PROTECTION

Upon the Debtor's Non-Adversarial Motion for Order Permitting Substitution of Proposed Order to Debtor's First Motion for Order Authorizing User of Cash Collateral and Provision of Adequate Protection (the "Motion") and after having reviewed the Motion, it is hereby ordered, adjudged and decreed that:

A. The Motion is approved.

B. The Proposed Order attached hereto as Exhibit A is deemed substituted for the proposed Order attached to the Motion [docket no. 18].

C. This Order shall become effective on the date hereof.

Dated: July 19, 2011

/s/ J. Michael Deasy
J. Michael Deasy, Bankruptcy Judge

EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:  CHAPTER 11

**Isaacson Steel, Inc.**  Case No. 11-12415-JMD
**Isaacson Structural Steel, Inc.**  Case No. 11-12416-JMD

Debtors  Jointly Administered

ORDER on

DEBTOR'S FIRST MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL AND
PROVISION OF ADEQUATE PROTECTION

This matter having come before the Court on the motion of the above-captioned Debtor and Debtor-in-possession ("Debtor") pursuant to 11 USC §§ 105, 363 Fed. R. Bankr. P. 4001 (b), and LBR 4001-2 for an order authorizing Debtor to use cash collateral ("Cash Collateral") in the ordinary course of its business, the Court hereby finds as follows:

1. On June 22, 2011 (the "Petition Date"), the Debtor filed a Petition for Relief under Chapter 11 of the United States Code (the "Bankruptcy Code").

2. On the June 28, 2011, the Debtor filed its Ex Parte, Emergency First Day Motion for Order Authorizing Use of Cash Collateral and Provision of Adequate Protection (the "Motion").

3. On or about June 28, 2011, Passumpsic Savings Bank ("Passumpsic") filed a preliminary objection to the Motion.

4. At a June 30, 2011 hearing (the "First Cash Collateral Hearing"), and with the assent of Passumpsic, the Court entered a preliminary cash collateral order, permitting the Debtor to use Passumpsic's cash collateral through July 5, 2011 (the "First Interim Cash Collateral Order"), pursuant to which the Court, among other things, i) authorized Debtor to use Cash Collateral to pay its ordinary and necessary expenses through July 5, 2011 pursuant to a budget submitted by the Debtor at the First Cash Collateral Hearing; ii) granted Passumpsic post-

1

petition replacement liens in all post-petition property of the estate of the same type against which Passumpsic held validly-perfected liens as of the Petition Date; and iii) authorized Debtor to pay Passumpsic, as additional adequate protection, the sum of $30,000 from the net proceeds of the so-called BIW payment (the "Interim Adequate Protection Payment").

5. A further hearing on the Debtor's use of Cash Collateral was scheduled for July 5, 2011.

6. Following the First Cash Collateral Hearing, the Debtor and Passumpsic engaged in negotiations, pursuant to which the parties agreed to continue the July 5, 2011 hearing to some date prior to July 15, 2011 and, further, that the Debtor would be permitted to continue using Cash Collateral through July 19, 2011 in accordance with a budget supplied to Passumpsic by the Debtor, a copy of which is attached hereto as Exhibit B based in part on an additional $20,000 adequate protection payment made by Debtor, which is shown in the exhibit.

7.

8. The Court scheduled a further hearing on Debtor's Motion on July 19, 2011 (the "Second Cash Collateral Hearing").

9. Subject to and without waiver of any of its or its estate's rights, the Debtor has agreed to provide Passumpsic with continuing replacement liens and, in addition, to make the monthly adequate protection payments to Passumpsic provided for herein during term of this Order.

10. Passumpsic has consented to the continued use of Cash Collateral on the terms set forth herein.

11. The Court, having jurisdiction to consider the Motion and the relief requested therein in accordance with, inter alia, 11 USC §§ 157 and 1334; and the Court having reviewed the Motion and other papers filed in this matter; and notice of the Second Cash Collateral Hearing being good and sufficient notice under the circumstances, and the Court having determined that the legal and factual bases set forth in the Motion and at the Second Cash Collateral Hearing establish just cause for the relief granted herein.

**Now therefore, it is hereby:**

A. Ordered, that the use of Cash Collateral is necessary in order to preserve the operations, value, and integrity of the Debtor's business. The entry of the relief contained in this Order is the best interests for the Debtor, its estate, and its creditors. To avoid immediate and irreparable harm to the Debtor, its estate and its creditors pending a further hearing on the use of Cash Collateral, Debtor is authorized to use Cash Collateral in accordance with the Budgets attached to this Order as Exhibits A-1, A-2 and A-3 (except as the budget is modified by the terms of this order or the further order of this Court), to pay expenses in the ordinary course of its business or as otherwise allowed by or required by Order of the Court pending a further hearing on the Motion; and it is further

B. Ordered, that pursuant to Sections 361 and 363(e) of the Bankruptcy Code, and for purposes of section 507(b) of the Bankruptcy Code, as adequate protection to Passumpsic for the Debtor's use of Cash Collateral, Passumpsic is hereby granted replacement liens in all post-petition property of the estate of the same type against which Passumpsic held validly-perfected security interests as of the Petition Date subject to the provisions of any order granting Debtor's Motion for Order Authorizing Debtor to Enter Into Working Capital Financing Arrangement with Cate Street Capital, Inc. and any liens granted Cate Street pursuant thereto, which have priority over the liens claimed by Passumpsic (the "Replacement Liens"). The Replacement Liens shall maintain the same priority, validity, and enforceability as such liens on the Cash Collateral, but shall be recognized only to the extent of any diminution in the value of the collateral resulting from the use of Cash Collateral pursuant to this Order. The Replacement Liens shall not attach to any avoidance powers held by the Debtor or any trustee for the Debtor, including those avoidance powers set forth in section 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or to the proceeds of any claims under or actions commenced pursuant to such powers; and it is further

C. Ordered, that for the purposes of this order, "diminution in value" shall not include with respect to:

    1. Any account or account receivable (an "account"), any loss of or reduction in the value thereof resulting from (i) Debtor's rejection of the contract that gave rise to such account or Debtor's breach of such contract, (ii) direct or joint check payments made by the account debtor to any of Debtor's suppliers, subcontractors or vendors, (iii) the exercise of any

right of recoupment by the account debtor, (iv) the exercise of any right of offset held by the account debtor with respect to such account, (v) any counterclaim or defense asserted by the account debtor, (vi) the account debtor's financial or legal inability to pay the account when due, (vii) the existence of a senior lien on the account or (viii) any other circumstance, condition or event beyond Debtor's reasonable control.

2. Any inventory, any loss of or reduction in the value thereof resulting from (i) Debtor's rejection of the contract for which Debtor purchased the inventory, (ii) the use of the inventory in the fulfillment of a contract, (iii) the existence of a senior lien on the inventory or (iv) any other circumstance, condition or event beyond Debtor's reasonable control.

D. Ordered that the parties and any business or financial consultant retained by Debtor shall use their best efforts to identify Debtor's account debtors on the Petition Date and the value of their accounts under the circumstances that existed at and after the commencement of this case subject to the effect of the "diminution in value" definition set forth herein. If the parties cannot reach an agreement within 20 days from the date of this order, Debtor shall file a motion asking this Court to determine the value of Debtor's Petition Date accounts subject to the terms of this Order."

E. Ordered, as further adequate protection, the Debtor shall make monthly payments of $30,000 to Passumpsic, such payments to be made on or before the 30th day of each month beginning on August 30, 2011 (the "Adequate Protection Payments"). The Adequate Protection Payments will be made without prejudice to any party-in-interest including, without limitation, the Debtor, the United States Trustee, the unsecured creditors committee, any trustee subsequently appointed by the United States Trustee (the "UST") and/or any other party-in-interest to seek to characterize the payments in any manner or otherwise object to the payments. Passumpsic may withdraw its consent to the continued use of Cash Collateral, and may seek an expedited hearing in accordance with and subject to the provisions below, if the Debtor fails to make any of the Adequate Protection Payments or otherwise fails to comply materially with any provisions of this Second Interim Order, including the provisions relating to the Debtor's obligation to provide Passumpsic with regular financial and account information (as set forth below); and it is further

4

F.   Ordered, that the Debtor may use Cash Collateral through September 30, 2011 in accordance with the budget attached to the Motion (the "Budget") and this Order.

G.   Ordered, that if during the term of this Order, the Debtor commences an adversary proceeding against Passumpsic, seeks to invalidate any lien or payment to Passumpsic, or otherwise formerly challenges any asserted lien of or payment to Passumpsic, Passumpsic may withdraw its consent to the continued use of Cash Collateral after 5 days' written notice to the Debtor, and may seek an expedited hearing in accordance with and subject to the provisions below which are incorporated herein by reference; and it is further

H.   Ordered, that if Passumpsic shall withdraw its consent to the continued use of Cash Collateral in accordance with its rights as set forth herein, or if Debtor otherwise fails to comply with the terms of this Order, Passumpsic shall be entitled to a hearing on the Motion and on the Debtor's right to continued use of Cash Collateral on 10 -days' notice, subject to the Court's calendar, but Passumpsic may seek an earlier hearing in the case of a bona fide emergency; provided that the Debtor may continue to use Cash Collateral pending any such hearing or further order of the Court, and any withdrawal by Passumpsic of its right to continued use of Cash Collateral shall be without prejudice to the Debtor's right to seek continued use of Cash Collateral; and it is further

I.   Ordered, that the Debtor shall deliver to Passumpsic to the extent reasonably possible given its accounting system and personnel a Contract Status Report (i) on the fifteenth day of each month (or if such day is not a Business Day, on the next Business Day), prepared as of the last Business Day of the previous month, (ii) summarizing the status of all of Debtor's pre-petition and post-petition contracts (the "Contracts"), as of such dates, including the following information: (i) the percentage of work completed pursuant to each Contract; (ii) a list of goods identified to each Contract, including those owned by owners or general contractors, including Turner and MasterCraft; (iii) raw materials purchased for each Contract and (vi) an accounting of billing, collection and payment on all Accounts related to the Contracts, including a sales and collections report, in form satisfactory to Passumpsic. Debtor shall also provide to Passumpsic a detailed aged trial balance of all Accounts of Debtor related to the Contracts; and it is further

5

J.  Ordered, that a further hearing on the Motion and the Debtors further use of Cash Collateral shall be held by the court on _____ 2011 at ____ a.m/p.m. Objections to the Motion and to further use of Cash Collateral shall be filed by _____, 2011; and it is further

K.  Ordered, that this order is subject to the "winding down proviso" set forth in LBR 4001(d)(1).

Dated: _____        _____
                                J. Michael Deasy, Bankruptcy Judge


EXHIBIT A-1

**ISAACSON STRUCTURAL STEEL INC.**
**Case #11-12416**
**Cash Flow Budget - 10 Business Days**
**June 29, 2011 to September 30, 2011**
**PROJECTION**

| | Perioid Ended 7/19/2011 | W/E 7/22/2011 | W/E 7/29/2011 |
|---|---:|---:|---:|
| Beginning Balance 6/23/2011 | $ 39,909 | $ 39,909 | $ 694,963 |
| **Source of Funds** | | | |
| Turner Rent | | | $ 3,500 |
| Bridge Loan | | $ 500,000 | |
| Receivables | | $ 623,473 | $ 631,985 |
| Offsets: | | | |
|   Infra | | $ (312,324) | $ (460,888) |
|   Detailing | | | $ (57,500) |
|   Erection | | $ (34,095) | $ (4,922) |
|   Materials | | $ - | $ (200,000) |
| **Net Receivables to ISSI** | | $ 277,054 | $ (91,325) |
| **Total Source of Funds** | | $ 777,054 | $ (87,825) |
| | | | |
| **Less: Cash Disbursed** | $ 114,000 | $ 122,000 | $ 127,895 |
| | | | |
| **Cash Balance** | $ (74,091) | $ 694,963 | $ 479,243 |

**Cash Disbursed**

**Passumpsic AP Payment**

| | | | |
|---|---:|---:|---:|
| Insurance | $ 5,800 | $ 6,300 | $ 6,300 |
| **Payroll** | | | |
|   Payroll - Gross | $ 105,000 | $ 105,000 | $ 105,000 |
|   Payroll Tax Liability - EE & ER | | $ 7,500 | $ 7,500 |
| **Other Expenses** | | | |
|   Software Licenses | | $ - | $ - |
|   Gallagher Auditing Fees | | $ - | $ - |
|   Electricity | | $ - | $ - |
|   NCIC | | $ - | $ - |
|   Northway Bank Loans-Vehicle/Equipment | | $ - | $ - |
|   Wells Fargo (2 Trucks only) | | $ - | $ 3,695 |
|   Vehicle Payments | | $ - | $ - |
|   Vehicle Repairs | | $ - | $ - |
|   Supplies | | $ - | $ - |
|   Freight | $ 3,000 | $ 3,000 | $ 3,000 |
|   Office Supplies | $ 200 | $ 200 | $ 200 |
|   Professional Development | | $ - | $ - |
|   Payment of Bridge Loan and Interest | | $ - | $ 2,200 |
| **Total Cash Out** | $ 114,000 | $ 122,000 | $ 127,895 |

EXHIBIT

A-2

**ISAACSON STRUCTURAL STEEL INC.**
**Case #11-12416**
**Cash Flow Budget - 10 Business Days**
**June 29, 2011 to September 30, 2011**
**PROJECTION**

|  | W/E 8/5/2011 | W/E 8/12/2011 | W/E 8/19/2011 | W/E 8/26/2011 |
|---|---|---|---|---|
| Beginning Balance 6/23/2011 | $ 479,243 | $ 368,466 | $ 406,383 | $ 173,364 |
| **Source of Funds** | | | | |
| Turner Rent | | | | $ 3,500 |
| Bridge Loan | | | | |
| Receivables | $ 71,571 | $ 474,817 | $ 400,000 | $ 400,000 |
| Offsets: | | | | |
|   Infra | $ - | $ - | $ (100,000) | $ (100,000) |
|   Detailing | $ - | $ (57,500) | $ (57,500) | $ (57,500) |
|   Erection | $ - | $ (27,400) | $ (65,319) | $ (14,041) |
|   Materials | $ - | $ (200,000) | $ (200,000) | $ (250,000) |
| **Net Receivables to ISSI** | $ 71,571 | $ 189,917 | $ (22,819) | $ (21,541) |
| **Total Source of Funds** | $ 71,571 | $ 189,917 | $ (22,819) | $ (18,041) |
| Less: Cash Disbursed | $ 182,348 | $ 152,000 | $ 210,200 | $ 129,095 |
| **Cash Balance** | $ 368,466 | $ 406,383 | $ 173,364 | $ 26,228 |
| **Cash Disbursed** | | | | |
| Passumpsic AP Payment | | $ 30,000 | | |
| Insurance | $ 52,148 | $ 6,300 | $ 94,300 | $ 6,300 |
| **Payroll** | | | | |
|   Payroll - Gross | $ 105,000 | $ 105,000 | $ 105,000 | $ 105,000 |
|   Payroll Tax Liability - EE & ER | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 |
| **Other Expenses** | | | | |
|   Software Licenses | $ - | $ - | $ - | $ - |
|   Gallagher Auditing Fees | $ - | $ - | $ - | $ - |
|   Electricity | $ 14,500 | $ - | $ - | $ - |
|   NCIC | $ - | $ - | $ - | $ - |
|   Northway Bank Loans-Vehicle/Equipment | $ - | $ - | $ - | $ - |
|   Wells Fargo (2 Trucks only) | $ - | $ - | $ - | $ 3,695 |
|   Vehicle Payments | $ - | $ - | $ - | $ - |
|   Vehicle Repairs | $ - | $ - | $ - | $ 1,000 |
|   Supplies | $ - | $ - | $ 200 | $ 200 |
|   Freight | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 |
|   Office Supplies | $ 200 | $ 200 | $ 200 | $ 200 |
|   Professional Development | $ - | $ - | $ - | $ - |
|   Payment of Bridge Loan and Interest | $ - | $ - | $ - | $ 2,200 |
| **Total Cash Out** | $ 182,348 | $ 152,000 | $ 210,200 | $ 129,095 |

ISAACSON STRUCTURAL STEEL INC.
Case #11-12416
Cash Flow Budget - 10 Business Days
June 29, 2011 to September 30, 2011
PROJECTION

| | W/E 9/2/2011 | W/E 9/9/2011 | W/E 9/16/2011 | W/E 9/23/2011 | W/E 9/30/2011 |
|---|---|---|---|---|---|
| Beginning Balance 6/23/2011 | $ 26,228 | $ (116,320) | $ 151,480 | $ 289,280 | $ 457,080 |
| **Source of Funds** | | | | | |
| Turner Rent | | | | | $ 3,500 |
| Bridge Loan | | | | | |
| Receivables | $ 800,000 | $ 1,200,000 | $ 1,200,000 | $ 1,200,000 | $ 1,200,000 |
| Offsets: | | | | | |
|   Infra | $ (350,000) | $ (400,000) | $ (500,000) | $ (500,000) | $ (500,000) |
|   Detailing | $ (60,000) | $ (60,000) | $ (60,000) | $ (60,000) | $ (60,000) |
|   Erection | $ (100,000) | $ (100,000) | $ (100,000) | $ (100,000) | $ (100,000) |
|   Materials | $ (250,000) | $ (250,000) | $ (250,000) | $ (250,000) | $ (250,000) |
| **Net Receivables to ISSI** | $ 40,000 | $ 390,000 | $ 290,000 | $ 290,000 | $ 290,000 |
| **Total Source of Funds** | $ 40,000 | $ 390,000 | $ 290,000 | $ 290,000 | $ 293,500 |
| Less: Cash Disbursed | $ 182,548 | $ 122,200 | $ 152,200 | $ 122,200 | $ 762,963 |
| **Cash Balance** | $ (116,320) | $ 151,480 | $ 289,280 | $ 457,080 | $ (12,383) |
| **Cash Disbursed** | | | | | |
| Passumpsic AP Payment | | | $ 30,000 | | |
| Insurance | $ 52,148 | $ 6,300 | $ 6,300 | $ 6,300 | $ 140,168 |
| **Payroll** | | | | | |
|   Payroll - Gross | $ 105,000 | $ 105,000 | $ 105,000 | $ 105,000 | $ 105,000 |
|   Payroll Tax Liability - EE & ER | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 |
| **Other Expenses** | | | | | |
|   Software Licenses | $ - | $ - | $ - | $ - | $ - |
|   Gallagher Auditing Fees | $ - | $ - | $ - | $ - | $ - |
|   Electricity | $ 14,500 | $ - | $ - | $ - | $ - |
|   NCIC | $ - | $ - | $ - | $ - | $ - |
|   Northway Bank Loans-Vehicle/Equipment | $ - | $ - | $ - | $ - | $ - |
|   Wells Fargo (2 Trucks only) | $ - | $ - | $ - | $ - | $ 3,695 |
|   Vehicle Payments | $ - | $ - | $ - | $ - | $ - |
|   Vehicle Repairs | $ - | $ - | $ - | $ - | $ 1,000 |
|   Supplies | $ 200 | $ 200 | $ 200 | $ 200 | $ 200 |
|   Freight | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 |
|   Office Supplies | $ 200 | $ 200 | $ 200 | $ 200 | $ 200 |
|   Professional Development | $ - | $ - | $ - | $ - | $ - |
|   Payment of Bridge Loan and Interest | $ - | $ - | $ - | $ - | $ 502,200 |
| Total Cash Out | $ 182,548 | $ 122,200 | $ 152,200 | $ 122,200 | $ 762,963 |