UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | CHAPTER 11 |
| **Isaacson Steel, Inc.** | Case No. 11-12415-JMD |
| **Isaacson Structural Steel, Inc.** | Case No. 11-12416-JMD |
| Debtors | Jointly Administered |

**OBJECTION TO
MOTION OF UNITED STATES TRUSTEE FOR ENTRY OF ORDER
CONVERTING CASES TO CHAPTER 7**

**[DOC. NO 962]**

The Debtors in Possession, **Isaacson Steel, Inc.** and **Isaacson Structural Steel, Inc.**, respectfully object to the Motion for Entry of Order Converting Cases to Chapter 7 [Doc. No. 962] filed by the United States Trustee (the "Motion" and "UST") as follows:

**RESPONSE TO PRELIMINARY STATEMENT**

In general, the Debtors object to the unsubstantiated and unsupportable statements made by the U.S.T. in his Motion. The U.S.T. has no factual foundation for the hyperbolic claim that the Debtor's "directors and officers have essentially abandoned their responsibilities as fiduciaries and a void exists in the management of the Debtors' estates. The U.S.T. did not object to the Monthly Operating Reports signed by the Debtor's approved Business and Financial Consultant and filed by the Debtor for months. The Debtors disclosed the fact that they received and complied with a Grand Jury Subpoena. Neither the Debtor nor Arnold Hanson has received a "target letter" or had any further communications with the Department of Justice or any other governmental agency regarding the Grand Jury or the Subpoena. Although the Debtors ceased their business operations during late April 2012 following the sale of all or substantially all of their assets, the Debtor, the Official Committee of Unsecured Creditors, the

New Hampshire Business Finance, Turner Construction, Inc. and Passumpsic Savings Bank (the "Negotiating Parties") have been engaged in the quiet, cost-efficient negotiations necessary to file a consensual plan of reorganization that will pay a dividend, albeit a small dividend, to unsecured, non-insider creditors holding allowed claims.

## JURISDICTION

1. The Debtors admit the allegations made in this paragraph.

## PARTIES

2. The Debtors admit the allegations made in this paragraph.

3. The Debtors admit the allegations made in this paragraph.

## RESPONSE TO ALLEGED FACTS

*Filing of Chapter 11 Cases*

4. The Debtors admit the allegations made in this paragraph.

5. The Debtors admit the allegations made in this paragraph.

6. The Debtors admit the allegations made in this paragraph.

*Formation of Official Unsecured Creditors' Committee*

7. The Debtors admit the allegations made in this paragraph.

*§ 341 Meetings*

8. The Debtors admit the allegations made in this paragraph.

*DIP Financing Motions and Other Borrowing Motions*

9. The Debtors admit the allegations made in this paragraph.

10. The Debtors admit the allegations made in this paragraph.

*Sales of Debtors' Assets*

11. The Debtors admit the allegations made in this paragraph.

12. The Debtors admit the allegations made in this paragraph.

13. The Debtors admit the allegations made in this paragraph.

*Plan and Disclosure Statement*

14. The Debtors deny that Code Section required them to file a Report outlining why they had not filed a Plan or why they would not recommend conversion by a specific date. The operative phrase is "as soon as practicable." The Debtor has not requested an extension of exclusivity leaving the door open for any creditor, party in interest or other person free to file a plan. By way of further objection, the Debtor states that it intends and expects to file a plan of reorganization that will have the support of the Committee, BFA and PSB and may have the support of Turner Construction, Inc.

*Pending Litigation*

15. The Debtors admit the allegations made in this paragraph.

*Operating Reports and Balance on Hand*

16. The Debtors admit the allegation made in the first sentence of this paragraph, but state by way of further objection that the President of the Debtors has now signed without change and re-filed each of the reports (the "Refiled Reports"), which should resolve this issue. The Debtors admit the allegations made in the second sentence of this paragraph. The Debtors deny the allegation that the Reports filed by Mr. Wexler are not in a form approved by the United States Trustee, but state by way of further objection that the U.S.T. did not complain for months and that no objection has been made to the form of the Refiled Reports other than the need to attach bank statements, two more issues that have been resolved. The Debtors deny that the Reports lack necessary and important details other than the supporting bank statements which have been given to the U.S.T. and filed with this Court. The Debtors deny the allegations made in the fourth and fifth sentences of this paragraph. The Debtors admit the allegations made in the sixth sentence of this paragraph assuming the word "raised" is modified by "recently." By way of further objection, the U.S.T. fails to assert that there are post-petition taxes, post-petition payables or post-petition trade payables due.

17. The Debtors admit the allegations made in this Paragraph.

18. The Debtors admit the allegations made in the first sentence of this paragraph.

The Debtors' mail is being forwarded to Arnold Hanson, President.  By way of further objection, the Debtors state that the Debtors' accounts receivable will be collected by the Debtors under the contemplated plan of reorganization and disbursed in accordance with the Plan.

*Claims Made Against Directors and Officers*

**19.**     The Debtors do not have sufficient information to form a reasonable belief as to the completeness and truth of the allegations made in the last sentence of this paragraph and, therefore, deny them    The Debtors admit each and every other allegation made in this paragraph.  A lack of clarity with respect to a complex issue to be discussed at the Northeast Bankruptcy Conference does not seem to be a basis for the dismissal of these cases.

**20.**      The Debtors deny the allegations made in this Paragraph.  The Debtors stated that they had been served with a Grand Jury Subpoena and responded fully to the Subpoena.  Since responding to the Subpoena over a year ago, the Debtors have had no further communications with the Department of Justice.

## ARGUMENT

**I.     Preliminary Statement.**

In general, the Motion is long on conclusory assertions and short on facts.  The hallmark of these Cases has been the ability of the Debtors, the Official Committee of Creditors, Passumpsic Savings Bank, the New Hampshire Business Finance Authority and Turner Construction, Inc., (collectively, the "Major Constituencies") and their professionals to work through complex issues with limited, but infinitely valuable assistance from the Court.  Since the Debtor sold its real estate and tangible personal property with the permission of this Court, there has been little for Arnold Hanson, the Debtors' President, to do other than consult with the Debtors' professionals and provide information when requested to do so.

Following the Tangible Asset Sale, the Major Constituencies resolved for the most part the issues pertaining to the distribution of certain money, including the so-called Ending Cash. The remaining issue is the payment of pre-petition real estate taxes assessed against real

estate owned by ISSI from the escrow funds held by Orr & Reno, which served as transaction counsel to ISSI.  The U.S.T. has not participated in the global settlement negotiations, but the Major Constituencies have been actively and diligently engaged in that process for months by meeting, exchanging spread sheets and preparing term sheets and draft Settlement Agreements, none of which yet represent an agreement.  In the opinion of Debtors' counsel, all of the Major Constituencies have a genuine and sincere interest in reaching a mutually acceptable, albeit painful agreement, the professional relationships, expertise and experience necessary to formulate an agreement and that an agreement will be reached because the open issues continue to narrow.

Counsel to the Debtors has also begun preparing a Disclosure Statement and Plan of Reorganization in consultation with the Major Constituencies.  It cannot be completed until the parties reach a global settlement agreement because that agreement will be the funding mechanism for the Plan.  Without a global settlement, it is unlikely that any measurable dividend will be paid to true, third party trade creditors because of the super-priority claims held and asserted by Passumpsic and Turner Construction and the unsecured claim held by the Bank.

II.     **The Court Should Not Enter an Order converting these Cases to Chapter 7 Because There is a Reasonable Prospect of an Effective Reorganization within a Reasonable Period of Time.**

In the Motion, the U.S.T. seems to allege that "cause" for conversion exists under Code Section 1112 because of "(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." *U.S.T. Motion at 11*.  The Debtors maximized the value of their tangible personal property through a series of Court-approved sales and promptly distributed the proceeds of those sales.  Creditors have been paid in accordance with the sale orders entered by this Court to protect their rights while the plan process moves forward.  After retaining James Lamontagne and Sheehan Phinney Bass + Green as Special Litigation Counsel, the Debtors began the process of identifying and reducing

their choses in action to cash. No fact is alleged that would permit a reasonable finding for "loss" or "diminution."

Based on the current state of discussions with the Major Constituencies, the Debtors have drafted a Disclosure Statement and Plan of Reorganization (the "Draft Plan"). The Draft Plan includes at this time the mechanisms for implementing the Global Settlement being discussed by the Major Constituencies. It cannot be completed until the Major Constituencies or most of them have reached a Global Settlement. Although these Cases have been pending for almost 2 years, the U.S.T. seems to have lost sight of the fact that the Debtors successfully completed a series of steel fabrication and erection contracts totaling millions of dollars during that period.

Under *Timbers*, which was decided under Code Section 362 but is equally applicable to Code Section 1112, the question is whether there exists a "reasonable possibility of a successful reorganization within a reasonable period of time." *United Savings Bank v. Timbers of Inwood Forest Associates, Ltd., 808 F.2d 363 at 371 (5th Cir. 1987)*. "Reasonable time" is fundamentally a factual issue. Two years to wind up millions of dollars in major steel fabrication contracts, sell all or substantially all of the Debtor's tangible personal property and negotiate the disbursement of the proceeds of those sales, conduct Global Settlement negotiations intended to prevent economically dysfunctional competition among creditors and formulate a plan of reorganization based on a Global Settlement is reasonable and begin the process of filing the adversary proceedings necessary to reduce Chapter 5 actions, director and officer liability claims and other causes of action to judgment or settlement is reasonable. Doing everything at once is rarely possible and almost never cost effective.

Frankly, the conversion of these Cases would be wasteful and will not likely lead to the formulation of a plan of reorganization or a global settlement that would pay a measurable dividend to trade creditors. Learning and understanding the complicated facts underlying the parties negotiations would be difficult, time consuming and expensive. Disrupting the "case

relationships" established by the Major Constituencies would be counterproductive. Achieving the best possible result for creditors requires continued, patient negotiations that respect the needs and goals of all of the Major Constituencies. Given the demonstrated ability of the Major Constituencies to resolve issues by agreements that the U.S.T. does not question, the conversion of these Cases is not in the best interests of creditors as a whole.

III.     **The Debtor Has Not Liquidated All or Substantially All of the Property of the Estate.**

The Debtors retain all of its Chapter 5 actions and its claims against its former directors and officers and others, including David Driscoll and his accounting firm. The Debtors have retained the services of James S. Lamontagne and Sheehan Phinney Bass + Green to act as Special Counsel for the purpose of analyzing the Debtors' Chapter 5 actions and then file and prosecute appropriate complaints in conjunction with the Debtors' counsel, including a complaint against Inframetals. Mr. Lamontagne is well-qualified and has no allegiance to the Debtors' principals. In connection with the Global Settlement discussions, Mr. Lamontagne has shared his preliminary conclusions with the Major Constituencies.

The effective liquidation of the Debtors' claims against its directors and officers is much more complicated for a number of reasons. The Directors and Officers Liability Insurance Policy (the "DO Policy") is a wasting policy with respect to which a number of parties have made or will make claims, including the Debtors. A Global Settlement maximizes the possibility of a settlement that prevents the DO Policy coverage from wasting away on defense costs. While a Global Settlement is not a certainty, the disruption and delay caused by a change in the Debtors' management will be counterproductive given the short schedule for completing discovery in the pending Driscoll litigation and the Major Constituencies shared disinclination to extend the trial schedule if they can reach an agreement.

In the absence of an agreement, the Debtors will have to seek injunctive relief to prevent the pending Driscoll litigations and the actions filed by Inframetals and J.M. Moriarity from

moving forward. It will impose an unfunded obligation on the estates. While a trustee could seek equitable relief, it seems unlikely that a trustee would incur that cost and expense.

IV. **The Principals of the Debtors Have Not Abandoned their Obligations to the Estate.**

Contrary to the allegation that the principals of the Debtor have abandoned their obligations to the estates, Arnold Hanson has remained actively involved as a director and officer. Mr. Griffin, the former Chief Financial Officer of the Debtors, left their employ. He has stopped acting as a director although no director actions have been necessary. Although the U.S.T. seems to believe that the Debtors need the services of Mr. Griffin, the Debtors disagree.

The only factual basis for the allegation that Mr. Hanson has "essentially abandoned" his obligations to the estate is the fact that Robert Wexler and Tron Group (collectively, "Wexler") signed the Debtors' Monthly Operating Reports. This Court approved the retention of Wexler as the Debtor's business and financial consultant. Wexler served as the Debtors' Chief Restructuring Officer, without the benefit of the title, subject to the direction and control of Mr. Hanson. Neither Debtor saw a problem with Wexler signing the Monthly Operating Reports that he had prepared based on the books of account and financial records that he oversaw. However, when the U.S.T. raised the issue, the Debtors promptly corrected the deficiency.

## CONCLUSION

More probably than not, converting these Cases would derail the Major Constituencies Global Settlement discussions and damage the interests of true, third party trade creditors. It would deprive the Debtors of the benefit of their counsels' experience in director and officer and Chapter 5 litigation. From a technical standpoint, there is no showing of loss or diminution in the value of the estate or an allegation that would support a conclusion that "almost two years" is an unreasonably long time to file and then confirm a plan of reorganization given the facts and history of this Case.

Respectfully Submitted,

Dated: May 2, 2013 /s/ William S. Gannon
William S. Gannon (BNH 01222)

Counsel to:

ISAACSON STRUCTURAL STEEL, INC.
ISAACSON STEEL, INC.

WILLIAM S. GANNON PLLC
889 Elm Street, 4th Fl.
Manchester NH 03101
PH: 603-621-0833

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served the foregoing pleadings on each person named on the attached Service List(s) by causing it to be filed electronically via the CM/ECF filing system or mailed by first class United States Mail, postage prepaid or in such other manner as may be indicated.

Dated: May 2, 2013 /s/ Mary Ann Joyce
Jeanne Arquette-Koehler
Beth E. Venuti
Mary Ann Joyce

**COMBINED APPEARANCES SERVICE LIST**
In Re: Isaacson Steel, Inc., Chapter 11, Case No. 11-12415-JMD
In Re: Isaacson Structural Steel, Inc., Chapter 11, Case No. 11-12416-JMD

Ann Marie Dirsa - **ECF**
Assistant U.S. Trustee

Gregory Moffett – ECF
Joshua Menard – ECF
For Passumpsic Savings Bank

Edward C. Dial, Jr. – ECF
For Ford Motor Credit

Daniel Sklar – ECF
Holly Kilibarda – ECF
For Creditors' Committee

David Azarian – ECF
For American Aerial Services

David Anderson – ECF
Gayle P. Ehrlich - ECF
For Cate Street Capital

Christopher Allwarden – ECF
Honor Heath - ECF
For PSNH

Kristen Harris – ECF
Jonathan Starble - ECF
For Infra-Metals Co.

David Chenelle – ECF
For JM Coull, Inc.

Steven M. Notinger – ECF
For Steven Griffin

Joseph Foster – ECF
For The Eli L. Isaacson Family Trust

Richard Levine – ECF
Tobias Crawford - ECF
For Colby Company

John R. Harrington – ECF
For Wells Fargo Equipment Finance

D. Ethan Jeffrey - ECF
Charles R. Bennett – ECF
Stephen Sutton - ECF
For Turner Construction

Justin Boothby – ECF
For Isaacson Structural Steel

Matthew Johnson - ECF
For Northway Bank

Gina Fonte – ECF
For The Richmond Group

Peter Hermes – ECF
For John Moriarty & Assoc.

Michey Long – ECF
For Prime Steel Erecting

George Marcus – ECF
For NH BFA

Rodney Stark – ECF
For D.J. Driscoll and Company

Lizabeth M. MacDonald - ECF
For City of Berlin

Mark Derby – ECF
For Presby Steel

David C. Green – ECF
For RBS Citizens

Geoffrey Coen – ECF
Paula-Lee Chambers - ECF
For Travelers Casualty

Robert Wexler - email

Internal Revenue Service
Special Procedures Function
80 Daniel
PO Box 9502
Portsmouth NH 03802

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia PA 19101-7346

State of New Hampshire
Dept. of Employment Security
Attn: Arnold Rocklin-Weare
32 South Main Street
Concord, NH 03301