UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN RE: ) | Chapter 11 |
| ) | |
| ISAACSON STEEL, INC., ) | Case No. 11-12415-JMD |
| ISAACSON STRUCTURAL STEEL, INC. ) | Case No. 11-12416-JMD |
| Debtor ) | Jointly Administered |
| ) | |

**RESPONSE OF PASSUMPSIC SAVINGS BANK TO THE OBJECTION OF NEW HAMPSHIRE BUSINESS FINANCE AUTHORITY'S TO THE MOTION OF UNITED STATES TRUSTEE FOR ENTRY OF ORDER CONVERTING CASES TO CHAPTER 7**

Passumpsic Savings Bank ("**Passumpsic**"), by and through its attorneys, Preti Flaherty Beliveau & Pachios, PLLC, and hereby submits this Response to the *Objection of New Hampshire Business Finance Authority to Motion of United States Trustee for Entry of Order Converting Cases to Chapter 7* [Doc. #1010] (the "**Objection**"), stating as follows:

1. Passumpsic has been actively and earnestly engaged in negotiations with the Debtor, the BFA and other constituent parties aimed at a potential, but as-yet-unrealized "global" resolution that would, if consummated, offer the prospect of a modest dividend to unsecured creditors. While Passumpsic remains optimistic that such an agreement can soon be reached, the parties are not there yet. Accordingly, Passumpsic is compelled to address several inaccuracies in the BFA's Objection, as they relate to the nature and extent of the BFA's claimed collateral position.

2. In its Objection, New Hampshire Business Finance Authority ("**BFA**") alleges that it holds a priority security interest in potential (but still un-asserted) claims against the Debtor's former directors and officers and in the proceeds of a directors and officers liability policy that the Debtor purchased prepetition.

3. Referencing the BFA Financing Order [Doc. #446], the BFA's Objection states, at Paragraph 2, that the BFA has "a first priority security interest in the *Debtors'* commercial tort claims against their former directors and officers (the "**BFA Collateral Claims**") and in the *proceeds of the Debtor's directors' and officers' liability policy. . . .*" (emphasis added) Such statements substantially overstate the nature and extent of BFA's collateral position, as its lien is not nearly as broad as its Objection suggests.

4. By virtue of the BFA Financing Order, the BFA obtained "a first priority security interest on the *Debtor's or the estate's* commercial tort claims" and a first priority security interest in "any proceeds, benefits or coverage *payable on account of the Debtor's or the estate's commercial tort claims* under any insurance policy owned by the Debtor or the estate, *which provides coverage for any such commercial tort claims. . . .*" See BFA Financing Order, at p.3, ¶5(c) (emphasis added)

5. Clearly, the BFA Financing Order provides BFA with a security interest in only the "Debtor's or the estate's" commercial tort claims. (Upon information and belief, neither the Debtor nor the BFA have actively filed or pursued *any* claims against the Debtor's directors and officers.) As the BFA's security interest is entirely derivative of any claims held by the Debtor and/or the estate, the BFA's security interest naturally does not extend to, nor does it in any way affect Passumpsic's continuing pursuit of its own, independent claims against certain non-debtor third parties, including the Debtor's former directors and officers.

6. As with its lien on the commercial tort claims, the BFA's security interest in proceeds of the D&O Policy is also entirely derivative, and it is expressly limited to any insurance proceeds "*payable on account of*" the Debtor's or the estate's claims. In other words, if the Debtor and the estate have no viable – and insurable - claims against the officers and

directors, the BFA has no colorable claim to or security interest in *any* proceeds of the D&O Policy.

7.  Passumpsic also takes issue with the BFA's assertion, at page 4 of its Objection, that the proceeds of the D&O Policy are "property of the estate." To the contrary, the proceeds of the D&O Policy are not property of the bankruptcy estate, because the Debtor and the estate have no right to receive and keep any payments that might be made by the D&O insurer on any covered D&O claims. Indeed, as the Fifth Circuit has stated:

> The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds with the insurer paid on a claim. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate. In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.

Houston v. Edgeworth (In re Edgeworth), 993 F.2d 51, 55-56 (5th Cir. 1993).

8.  In the present case, the D&O Policy provides three types of coverage: Side A Coverage (covering the Debtor's directors and officers for D&O claims asserted *against them personally*); Side B Coverage (providing the Debtor coverage for any D&O claim against the individual officers and directors but *only "to the extent the [Debtor] indemnifies [the officers/directors] for such loss"*); and Side C Coverage (covering the Debtor with coverage for claims *"first made against the [Debtor] during the Policy Period. . . ."*). See Exhibit A, Excerpts from D&O Policy, Power Source Directors and Officers Coverage Section, at p. EXHIBIT A 1, A 2 and A 25 (emphasis added).

9.  Where a policy insures directors and officers (Side A Coverage), the majority view is that the proceeds of the policy are not property of the estate. See In re Allied Digital Technologies Corp., 306 B.R. 505, 509-10 (Bankr. D. Del. 2004).

3

10. Further, where a policy offers both Side A (individual directors and officers) and Side B (debtor post-indemnification) coverage, the proceeds are only property of the estate if, "depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution." See In re Allied Digital Tech. Corp., 306 B.R. 505, 512 (Bankr. D. Del. 2004). When, as here, the Debtor has not made any indemnity payments to directors and officers and has not made payments that would entitle it to entity coverage, the proceeds cannot be classified as property of the estate. See In re Adelphia Communications, Corp., 298 B.R. 49, 53-54 (S.D.N.Y. 2003).

11. Moreover, the D&O Policy at issue here expressly states that none of the D&O insurance proceeds are payable to the Debtor for either Side B or C claims where the monies paid on account of Side A (officers and directors) claims exhaust the policy limits. Specifically, the D&O Policy provides:

> (A) In the event of Loss arising from one or more Claims for which payment is otherwise due under this Coverage Section but which Loss in the aggregate exceeds the remaining available Limit of Liability for this Coverage Section, the Company shall:
>
> (1) *First pay such Loss for which coverage is provided under Insuring Clause (A)* of this Coverage Section; *then*
>
> (2) with respect to *whatever remaining amount of the Limit of Liability is available after payment of (1) above*, pay such Loss for which coverage is provided under any other Insuring Clause of this Coverage Section.

See Exhibit A, at p. EXHIBIT A 33 (emphasis added)

12. Clearly, the Debtor and the estate have no credible claim to ownership of the proceeds of the D&O Policy, as the total D&O claims asserted by Passumpsic and other creditors (including InfraMetals and Moriarty) collectively exceed $10 million. When, as here, a debtor or estate's only possible claim to the policy proceeds is as a plaintiff bringing a lawsuit against the

4

directors or officers, the debtor or estate have no greater claim to the proceeds than any other plaintiff.  See In re LocatePlus Holdings Corp., Case No. 11-15791-JNF, FN5 (Bankr. D. Mass. 10-31-2011), Laminate Kingdom, Case No. 07-10279-BKC-AJC, 7, Allied Digital, 306 B.R. at 513.

Respectfully submitted,

PASSUMPSIC SAVINGS BANK
BY ITS ATTORNEYS

Dated: May 7, 2013           By:\s\  Gregory A. Moffett
                                Gregory A. Moffett (BNH 1998)
                                Daniel P. Luker (BNH 1598)
                                Joshua E. Menard (BNH #06427)
                                Preti Flaherty Beliveau & Pachios PLLP
                                P.O. Box 1318
                                Concord, NH  03302-1318
                                (603) 410-1525

### CERTIFICATE OF SERVICE

I, Gregory A. Moffett, Esquire, of Preti Flaherty Beliveau & Pachios PLLP, as counsel for **Passumpsic Savings Bank**, hereby certify that service of the within pleading was made to Williams S. Gannon, Esquire and all parties registered to receive ECF service in this proceeding.

Dated: May 7, 2013           By:\s\ Gregory A. Moffett
                                Gregory A. Moffett (BNH 1998)
                                Daniel P. Luker (BNH 1598)
                                Joshua E. Menard (BNH #06427)
                                Preti Flaherty Beliveau & Pachios PLLP
                                P.O. Box 1318
                                Concord, NH  03302-1318
                                (603) 410-1525