## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | CHAPTER 11 |
| **Isaacson Steel, Inc.** | Case No. 11-12415-JMD |
| **Isaacson Structural Steel, Inc.** | Case No. 11-12416-JMD |
| Debtors | Jointly Administered |

### DEBTORS', COMMITTEES', NEW HAMPSHIRE BUSINESS FINANCE AUTHORITY, PASSUMPSIC SAVINGS BANK'S AND TURNER CONSTRUCTION, INC.'S JOINT MOTION FOR INTERIM PROTECTIVE ORDER AND FINAL ORDER APPROVING GLOBAL SETTLEMENT AGREEMENT

The Debtors in Possession, **Isaacson Structural Steel, Inc.** and **Isaacson Steel, Inc.** (individually, "Structural" and "Steel" and, collectively, the "Debtors"), the **Official Committee of Unsecured Creditors** (the "Committee"), **Passumpsic Savings Bank** ("Passumpsic" or "PSB"), the **New Hampshire Business Finance Authority** (the "BFA") and **Turner Construction, Inc.** (individually, "Turner", collectively with Debtors, the Committee, Passumpsic and BFA, the "Moving Parties") respectfully move this Court as follows:

### INTRODUCTION

1.      Pursuant to Code Sections 105, 107 and 363, F.R.B.P. 9018 and 9019 and F.R.C.P. 26(c), the Moving Parties request the following interim and final relief with respect to the Global Settlement Agreement, dated between August 2 and August 5, 2013, entered into by the Moving Parties subject to the approval of this Court (the "Settlement Agreement"[1] and "Settlement"):

---

[1] Although the Settlement is not global in the sense that it binds non-signatory creditors and other parties in interest, the Moving Parties use the term to describe the Settlement because it resolves the hotly contested issues among the BFA, Passumpsic and Turner

      **A.**      An interim, ex parte protective order in the form accompanying this Motion (the "Proposed Protective Order") which:

      **(1)**      Authorizes the Debtors to submit a hard or printed copy of the Settlement Agreement marked "For In Camera Review Only" to this Court for *in camera* review to ensure that this Court is fully apprised of the details of the Settlement pending further orders of this Court while, at the same time, protecting from disclosure to defendants and potential defendants in certain litigation commenced or to be commenced by the Moving Parties, the parties' assumptions regarding the merits of the claims and causes of action which are or will be the subject of such litigation, the Moving Parties' evaluation of the potential damages recoverable against such defendants, and the Moving Parties work product and other confidential research and commercial information, including insights of the Moving Parties into such matters (the "Confidential Research and Commercial Information").

      **(2)**      Requires the Debtors to submit a hard or printed copy of the Settlement Agreement marked "Subject to Protective Order dated August ___, 2013" to Geraldine B. Karonis, Asst. U.S. Trustee (the "U.S.T.") upon entry of a protective order as described in paragraph (1) above, and which and directs the U.S.T. to protect the confidentiality of the Settlement Agreement and Settlement by directing the U.S.T. not to copy electronically, scan, photocopy or otherwise reproduce the Settlement Agreement or discuss its terms and conditions with any person other than its attorneys and employees with a legitimate need to know the Settlement terms or file any objection or other pleading that discloses the Confidential Research and Commercial Information included in the Settlement Agreement.

      **(3)**      Determines preliminarily and without prejudice to the objection of any creditor or party in interest that this Court will hear and decide this Motion based on this Motion and the Settlement Summary provided herein, and without disclosure of the Confidential Research and Commercial Information except as described herein.

**B.**    A final order approving the Settlement in the form accompanying this Motion (the "Proposed Approval Order") which:

(1)    Incorporates and makes permanent the Proposed Protective Order and determines that the benefits of preserving the confidentiality of the Confidential Research and Commercial Information to the Debtors and the other Moving Parties substantially outweighs any detriment to creditors and other parties in interest, and promotes the interests of creditors and other parties in interest.  Further, determining that the Moving Parties have sought no more protection than reasonably necessary under the circumstances.

(2)    Determines that the Settlement Summary included in this Motion, coupled with this Court's in camera review of the Settlement Agreement, provides a sufficient record and basis for this Court to make the findings required by F.R.B.P. 9019.

(3)    Approves the Settlement and Settlement Agreement.

(4)    Directs the U.S.T. to return its hard copy of the Settlement Agreement to counsel to the Debtors following the entry of the final order approving the Settlement Agreement, and continue to hold the Confidential Research and Commercial Information in confidence subject to the further order or orders of this Court or any other court of competent jurisdiction.

**CERTIFICATE REGARDING PRE-FILING EFFORT TO OBTAIN CONCURRENCE**

2.    Before filing this Motion, counsel to the Debtors served a draft version of this Motion on the United States Trustee and asked for the United States Trustee's consent to the granting of the interim and final relief requested in this Motion.  As of the filing date, the United States Trustee has not consented to the granting of the requested relief.

## RULE 9019 AND SETTLEMENT SUMMARY

3.      For the purposes of this Motion, F.R.B.P. 9019 provides , in pertinent part, as follows:

> On motion . . . and after notice and hearing, the court may approve a compromise or a settlement.  Notice shall be given to creditors, the United States Trustee, [and] the debtor . . . as provided in Rule 2002.

4.      In order to resolve a number of complex, interwoven issues among the Moving Parties, the Settlement Agreement contemplates the creation of a Liquidating Trust preceding, and continuing as part of a plan of reorganization to be filed by the Debtor and joined by other parties if they elect to do so (the "Plan").  Assuming approval, the Settlement Agreement entitles each of BFA, PSB and the Committee to appoint one (1) trustee (collectively, the "Liquidating Trustees").  The Liquidating Trustee will retain (i) George J. Marcus, Esq., Peter Callaghan, Esq. and William S. Gannon, Esq. to prosecute the claims made or to be made by PSB and the Liquidating Trustees against the Debtor's current or former directors and officers and David J. Driscoll and his accounting firm for the shared benefit of PSB and the Debtors, BFA, Turner and the other creditors of the Debtors' estates (the "DO Counsel" and "DO Claims") and (ii) William S. Gannon, Esq. and James S. Lamontagne, Esq. to prosecute the Chapter 5 Actions filed or to be filed by the Debtors ("Chapter 5 Actions" and "Chapter 5 Counsel").  As used in this Motion, the term "Litigation Assets" means and includes the DO Claims and the Chapter 5 Actions and the Net Proceeds of the Claims and Actions.

5.      The Settlement Agreement requires that PSB, Turner, the Debtors, and the Debtors' estates assign, transfer and set over to the Liquidating Trust, for prosecution of the DO Claims by the Liquidating Trustees for the benefit of the beneficiaries of the Trust.  The entry of the order confirming the contemplated plan of reorganization will automatically assign and transfer other creditors' DO Claims to the Liquidating Trust which will be authorized to bring

the Claims in the name and for the beneficiaries of the Liquidating Trust.  Under the Plan and the

Settlement Agreement, the Liquidating Trustees will be responsible for the prosecution of the

DO Claims and Chapter 5 Actions (the "Litigation Assets").

      **6.**      The Settlement Agreement allocates the Net DO Proceeds among PSB, the

Debtors and BFA, which holds a first priority security interest in and to the Debtors' DO Claims

by virtue of earlier orders of the Court granting such security interest in conjunction with debtor-

in-possession financing provided by BFA.  The Liquidating Trustees shall have authority,

pursuant to the Plan to pay PSB and BFA directly, and without further order of the Court,

defined portions of the net proceeds of the DO Claims (collectively, "Net DO Proceeds").  At the

same time, these creditors have agreed to limit the amount of their claims upon the Net DO

Proceeds.  After payment of such defined portions of the Net DO Proceeds, and payment of or

reserve for costs and expenses of the Liquidation Trust, the balance of the Net DO Proceeds will

be made available for distribution to creditors of the Debtors' estates, in the manner provided in

the Plan and the Settlement Agreement.   As a result, creditors of the Debtors' estates are likely

to receive a greater share of the Net DO Proceeds than they would otherwise be expected to

receive.

      **7.**      The Settlement will result in (i) the dismissal with prejudice of the adversary

proceedings filed against PSB by the Debtors and (ii) the reimbursement of PSB, from NET DO

Proceeds, for up to $100,000 for accounting, expert witness and legal fees and costs directly

attributable to the filing and preparation of *Passumpsic Savings Bank v. Driscoll et als*., Docket

No. 215-2011-CV-176 pending in the Grafton Superior Court (the "Driscoll Proceeding")

subject, however, to the determination by the Liquidating Trustees (exclusive of the PSB

Trustee) that such fees and costs were reasonable in amount and reasonably necessary.  Any

remaining Net DO Proceeds will be distributed in accordance with the formula and methodology established by the Settlement Agreement and the Plan.

8.      The Settlement Agreement allocates the projected Estate Proceeds among the superpriority creditors created by the orders previously entered in this Case granting superpriority administrative creditor status to certain creditors, including PSB, BFA, Turner and the Estates themselves (the "Superpriority Orders" and "Superpriority Creditors"), the Debtor's professionals holding allowed claims (the "Debtor's Professionals"), a defined group of ordinary, non-insider trade creditors (exclusive of deficiency claims of PSB or Turner) ("Trade Creditors"), who will be paid a dividend not otherwise available in the judgment of the Moving Parties, and general unsecured creditors.  The distribution scheme generally follows the priorities established by the Code, as modified by the Superpriority Orders, but provides the equivalent of a "carveout" for the benefit of the Trade Creditors.  In addition, the Settlement Agreement obligates Turner to pay the priority claims asserted by the Massachusetts Department of Revenue Administration for the benefit of Structural and its Estate.

9.      Among other things, the Settlement Agreement eliminates the otherwise inevitable and unavoidably expensive litigation among the Moving Parties regarding, among other things, (i) their DO Claims and their rights to all or portions of the proceeds of the Debtor's Directors and Officers Liability Insurance (the "DO Insurance Proceeds" and "DO Insurance Policy"), (ii) the relative priorities of the security interest held by BFA in the DO Insurance Proceeds and the competing rights of PSB with respect thereto, (iii) their competing Superpriority and Administrative Claims and (iv) the administrative claim asserted by Turner. The Settlement allows DO Counsel and Chapter 5 Counsel to be paid from the gross proceeds of Net DO Proceeds and Net Chapter 5 Proceeds.  The Settlement Agreement assures that the DO Claims and Chapter 5 Claims can be prosecuted effectively and economically for the benefit of

all parties, including the Debtors, having an interest therein.  Finally, and perhaps, most

importantly, the Settlement Agreement makes the Debtors administratively solvent and capable

of paying dividends to all creditors holding allowed claims against their Estates.

## BASIS FOR REQUESTED RELIEF

### The Interests of Justice Require the Entry of the Proposed Protective Order.

10.     Generally, courts recognize the right of parties to inspect and copy judicial

records and documents to "promote trustworthiness of the judicial process, to curb judicial

abuses, and to provide the public with a more complete understanding of the judicial system,

including a better perception of fairness.[2]  Code Section 107 and F.R.B.P. 9018 and 9014, which

incorporates F.R.C.P. 26, however, require or empower this Court, in the interest of justice, to

grant the Moving Parties the limited protection requested in this Motion.  Further, "every court

has [inherent] supervisory power over its own records and files."  *Nixon, supra at 598*.

11.      Code Section 107(b)(1) specifically authorizes a bankruptcy court to "protect" a

debtor or any other "entity with respect to a trade secret or confidential research or . . .

commercial information."  F.R.B.P. 9018 reads, in pertinent part, as follows:

> On motion . . . with or without notice, the court may make any order
> which justice requires (1) to protect any entity in respect of a trade secret,
> or other confidential research, or commercial information . . . .

Further, F.R.C.P. 26 made applicable to this Motion by F.R.B.P. 9014 permits this Court to

require that a disclosure regarding "a trade secret or other confidential research or commercial

information not be revealed or be revealed only in a specified way.  In essence, Code Section

107 and the implementing rules "are congressionally sanctioned exceptions" to the general rule

of open access, "and represent an entrustment of a certain amount of discretion to a trial judge to

---

[2] *See, e.g., Nixon v. Warner Commc'ns, Inc., 435 U.S. 589 (1978); Gitto v. Worcester Telegram & Gazette Corp., 422 F.3d 1, 6 (1st Cir.2005)  SEC v. Van Waeyenberghie, 990 F.2d 845, 849 (5th. Cir.1993)* and *Littlejohn v. BIC Corp., 851 F.2d 673, 678 (3d. Cir.1988).*

limit public access when, in the words of Rule 26(c), "justice so requires."  *In re 50-Off Stores, Inc. 213 B.R. 646, 650 (Bkrtcy. W.D. Tex. 1997) citing Martindell v. International Tel. & Tel. Corp.,* 594 F.2d 291, 295–96 (2d Cir.1979).

12.     Code Section 704 recognizes the inherent authority of the Court to enter protective orders.  The Section obligates trustees to "provide such information concerning the estate and the estate's administration as is requested"  . . . unless the court orders otherwise." "Unless the court had the inherent power to order confidentiality, it could not "order otherwise." *In re Robert Landau Associates, Inc., 50 B.R. 670, 675-676 (Bkrtcy. N.Y. 1985)*

13.     In this case, the Settlement Agreement addresses and resolves multiple disputes among the Moving Parties' regarding prosecution and allocation of the DO Claims and the Chapter 5 Causes of Action, which are the Debtors' most valuable property at this time, and the distribution of the Net DO Proceeds.  It also compromises potential disputes regarding the Moving Parties Superpriority and Administrative Claims, and as a practical matter the distribution rights of millions of dollars of unsecured claims in a way that virtually guarantees a dividend to the Trade Creditors (the "Trade Creditors Dividend") without litigation.  Indeed, even if the Debtors were to substantially prevail in the causes of action available to them, the resulting attorneys' fees, costs and expenses as well as the extreme dilution caused by the allowance of the unsettled Superpriority, administrative and unsecured claims asserted by the other Moving Parties, would leave the Debtors without enough money to pay Trade Creditors a meaningful dividend.

14.     The Settlement Agreement provides for the distribution of the Net DO Proceeds in a series of carveouts negotiated on the basis of several potential litigation results and the compromise of claims at various levels to provide the Trade Creditor Dividend.  It reflects the parties' thoughts and negotiations regarding the value of the Litigation Assets, their claims

against each other and the claims held and asserted by third parties.  Federal Rule of Evidence

408 makes settlement negotiations inadmissible as a general rule.  Outside of a bankruptcy case,

the attorney-client privilege and work product privilege generally protects the confidentiality of

documents and other materials that provide insight into analysis and research done for clients,

the evaluation of the outcomes of potential litigation and advice regarding settlement.  Moreover,

this is particularly true where parties with common interests join together in a "common interest"

agreement to pursue claims and causes of action.  The Moving Parties can and should be

considered to have "common interests" with respect to the DO Claims and other claims and

causes of action.

> **15.**    In *50-Off Stores*, the bankruptcy court considered the parallel question of how

much disclosure would be required in connection with the retention of counsel to represent the

debtor in a litigation.  *50-Off Stores, Inc., 213 B.R. 646 (Bkrtcy. W.D. Tex. 1997)*.  The court

recognized that it "has some obligation to determine whether it is in the best interests of the

estate to even incur the expense necessary to pursue the "liquidation of this particular asset" and

that it could not make that decision without understanding the potential litigation.

> Outside of bankruptcy . . . , it would be permitted to select its own
> attorneys, to confer with those attorneys regarding the potential value of the
> litigation, to discuss the litigation strategy that ought to be employed, and to settle
> on payment arrangements that ought to be made — all without fear of public
> scrutiny, and certainly without fear of invasion of those conversations by the very
> defendants who are to be sued.  No defendant would ever presume, as its first line
> of discovery, to simply depose the attorneys . . . .  Were such an extraordinary
> course actually pursued by an attorney with the temerity to try it, a Rule 26(f)
> protective order would no doubt issue almost immediately, and shroud such
> conversations from view behind the cloak of attorney-client privilege and attorney
> work product.

*Id., 654*.  The court decided that a "lawyer's work product is one type of confidential . . .

commercial information" as are disclosures made by a client [Id. at 655-56] and settlement

negotiations.  To prevent the "obvious injustice," the court exercised its discretion to protect the

debtor and its bankruptcy estate by entering a sealing order that prevented disclosure, "except as

is necessary for the bankruptcy court to perform its administrative, statutorily imposed duties . . .

for the 'members of the family' (i.e. the creditors of the estate." *Id. at 656*.

16.     In *Dana Corp.*, the District Court for the Southern District of New York refused

to let the Creditors Committee appeal the sealing order entered by the Bankruptcy Court for

procedural reasons, primarily the failure to designate that order in its Notice of Appeal.  *In re*

*Dana Corp. 412 B.R. 53 (S.D. N.Y. 2008)*.  The District Court affirmed the bankruptcy court

order approving the sealed settlement noting that:

> [T]here were sufficient facts in the public record for the bankruptcy court
> to approve the settlement agreements even though the full settlement agreements
> were filed under seal.  There was substantial disclosure of the content of the
> agreements to the Committee.  The substantive contents of the settlements were
> not concealed from the Committee and there was no failure to comply with Fed.
> R. Bank. P. 9019.

Id., at *59-60*.  In its opinion, the District Court left little doubt that it would have affirmed the

sealing order as well given the breadth and adequacy of the disclosure of the substance and

import of the contents of the settlement.

17.     Rule 9019 does not require a party seeking approval of a settlement to provide a

copy of the settlement agreement.  *F.R.B.P. 9019 and Dana, supra*.  While it is often convenient

to attach the proposed settlement agreement, all that is required by the Rule are "sufficient facts

in the public record" for the bankruptcy court to make the findings required by *Jeffrey, infra at ¶*

*21*.  In this case, the Motion fulfills that requirement without damaging the Debtors and their

Estates.

18.     The Proposed Protective and Approval Orders carefully limit the disclosure of the

Settlement Agreement.  *In re Robert Landau Associates, Inc. 50 B.R. 670, 675-676 (Bkrtcy. N.Y.*

*1985) (protective order that did not limit disclosure sufficiently reversed)*.  This Court will be

given a complete copy of the Settlement Agreement.  The Debtors will also provide the United

States Trustee with a copy of the Settlement Agreement subject to the Protective Order entered

by this Court.  Of course, the Creditors Committee, which is a party to the Settlement

Agreement, has a complete copy of that Agreement, having participated in its creation and

joining in this Motion. The Moving Parties, which hold all of the Superpriority and virtually all

of the Administrative Claims in this Case and approximately 65% of the approximately

$37,000,000.00 of allowable unsecured claims in this case, have agreed to hold the Settlement

Agreement in confidence.

       **19.**     The issues settled by the parties do not involve the integrity of the bankruptcy

process, rather, the parties seek only to seal information that in most contexts would not be

disclosed to adverse parties in actual or contemplated litigation.  *In re Food Management Group,*

*LLC 359 B.R. 543 at 547-548 (Bkrtcy. S.D.N.Y. 2007) (sealing improper with respect to issues*

*affecting integrity or transparency of bankruptcy process).*  Protecting the confidentiality of the

Settlement Agreement itself under these circumstances will not affect adversely or materially the

transparency of the bankruptcy process because (i) the Settlement Agreement will be disclosed to

this Court and the United States Trustee, (ii) the United States Trustee will be given a copy of the

Settlement Agreement and the opportunity to discuss questions and concerns with the Moving

Parties prior to the hearing and file an objection requesting the inclusion of additional disclosures

pertaining to subjects identified in a way that will not disclose the terms of the Settlement

Agreement, such as "The Motion fails to disclose the voting rights of each Liquidating Trustee."

       **20.**     Justice requires granting the limited Proposed Protective Order, which is well

within the scope of the discretion vested in this Court.  *See, e.g., Martindell, supra.*  This Court

should not require the disclosure of information that could potentially benefit defendants and

potential defendants as long as it has sufficient information to "perform its administrative,

statutorily imposed duties . . .  for the 'members of the family' (i.e. the creditors of the estate."

*Id. at 656.*  Entering the Proposed Protective Order will balance the needs of this Court, the open

access rights of creditors and other parties in interests and those of the Debtors and the other
Moving Parties in maximizing the value of the Litigation Assets for the benefit of their
constituencies.

### The Proposed Settlement Satisfies the Requirements of F.R.B.P. 9019.

21.    In *Jeffrey,* the United States Court of Appeals for the First Circuit laid down the
findings that must be made by a bankruptcy court in approving a compromise or settlement
pursuant to F.R.B.P. 9019 (the "Jeffrey Rule" and "Jeffrey Factors").  *Jeffrey v. Desmond, 70
F.3d 183 (1st Cir.1995).*  Reaching the global Settlement required the parties to analyze, evaluate
and make decisions regarding bankruptcy law issues, including the impact of the automatic stay
on pending state court litigations, the expected outcome of the adversary proceeding filed against
PSB by the Debtors, the relative priorities and amounts of the Superpriority and Administrative
Claims asserted by the Moving Parties and the potential outcome of the Chapter 5 Actions and
issues of state law, such as the nature and extent of the insurance coverage afforded by the DO
Insurance Policy, the priorities of the Moving Parties with respect to the DO Proceeds and the
range of recovery.  Finally, the Moving Parties had to weigh the cost and expense of litigating
with each other, and the resulting burden of additional estate administrative expense, instead of
focusing efforts and expenditures in recovering claims against the defendants and potential
defendants.

22.    The successful negotiation of the Settlement Agreement involving millions of
dollars and multiple bankruptcy and state law claims by the Moving Parties, which have
conflicting interests, does not by itself compel this Court to approve the Settlement Agreement.
It does suggest strongly, however, that the Debtors, the Committee, BFA, PSB and Turner
themselves gave very careful consideration to the Jeffrey Factors and concluded that, on balance,
the Settlement "fall(s) above the lowest point on the continuum of reasonableness".  After

weighing the litigation issues in light of the Jeffrey Rule, the Debtors decided in the exercise of

their business judgments that the Settlement falls well above the "lowest point on the continuum

of reasonableness" and furthers the interests of their Estates.

23.    "On motion by the [Plan Proponent] and after notice and hearing", this Court

"may approve a compromise or settlement".  FRBP 9019.  The Code commits the approval of

proposed compromises and settlements to the sound discretion of the Court.  *In re Continental*

*Investment Corp., 642 F.2d 1, 3 (1st Cir. 1981).*  "Discretion" denotes:

> [t]he absence of a hard and fast rule . . . .  When invoked as a guide to
> judicial action, it means a sound discretion, that is to say, a discretion exercised
> not arbitrarily or willfully, but with regard to what is right and equitable under the
> circumstances and the law, and directed by the reasonableness and conscience of
> the judge to a just result.

*Langes v. Green, 282 U.S. 531, 541 (1931).*

24.    The United States Supreme Court established the standard governing the approval

of compromises in Protective Committee for Independent Stockholders of TMT Trailer Ferry,

Inc. v. Anderson, 390 U.S. 414, 424-25 (1968) ("TMT Trailer").  It held that:

> There can be no informed and independent judgment as to whether a
> proposed compromise is fair and equitable until the bankruptcy judge has
> apprised himself of all facts necessary for an intelligent and objective opinion of
> the probabilities of ultimate success should the claim be litigated. Further, the
> judge should form an educated estimate regarding the complexity, expense, and
> likely duration of such litigation, the possible difficulties of collecting on any
> judgment which might be obtained, and all other factors relevant to a full and fair
> assessment of the wisdom of the proposed compromise. Basic to this process in
> every instance, of course, is the need to compare the terms of the compromise
> with the likely rewards of litigation.

25.    The United States Court of Appeals for the First Circuit (the "First Circuit")

requires this Court to:

> "[A]ssess and balance the value of the claim that is being compromised
> against the value to the estate of the acceptance of the compromise proposal."
> The specific factors which a bankruptcy court considers when making this
> determination include:  (i) the probability of success in the litigation being
> compromised;  (ii) the difficulties, if any, to be encountered in the matter of

collection;  (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it;  and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.

*Jeffrey, supra, at 185*.  In *Jeffrey*, the First Circuit ruled that this Court does not have to "conduct

an independent investigation into the reasonableness of the settlement . . . only [to] 'canvass the

issues and see whether the settlement falls below the lowest point in the range of

reasonableness.'"  *Jeffrey, supra at 185*.

26.     "In determining whether [a compromise or settlement] is right in law, reason, and

conscience, two principals should guide this Court: (a) compromises "are favored in

bankruptcy," and have become "a normal part of the reorganization process" and, (b)

compromises should be approved if they fall above the lowest point on the continuum of

reasonableness.  *9 Collier on Bankruptcy, ¶9019.03 at 9019-3 (15th ed. 1993); and Case v. Los

Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939).*

27.     In this matter, the proposed Settlement involves compromises with parties who

are also creditors of the Estates, which hold or claims to hold more than $2,000,000 in post-

petition secured claims, Superpriority Claims and Administrative Claims and pre-petition

unsecured claims totaling more than $13,000,000, that would be retained in the absence of the

Settlement.  It is difficult to define "success" in this context.  The Debtors believe that (i) they

could limit significantly the Superpriority and administrative claims being asserted by Turner,

(ii) they would prevail on some of the claims asserted against PSB and that (iii) they would

eventually establish their right to a significant portion of the DO Claims despite having to

compete with PSB, BFA and other creditors.  Turner and PSB disagree with the Debtors and

have announced their intention to vigorously defend themselves.  The first $1,250,000 (or more)

of the Net DO Proceeds would have to be paid to BFA in any event and the Estates would have

to share the first $960,000-1,000,000 with BFA, PSB and Turner under the existing Superpriority

Orders. None of this accounts for the administrative expense that the estate would have to bear in order to achieve any positive outcome.   As a result, any litigation success might well prove to be illusory.

28.     Despite the absence of collection issues, the complexity of the claims being resolved ranges widely.  The law relating to the Turner administrative claim seems straightforward, but the underlying factual issues are extremely complex.  The rights of debtors and trustees, directors and officers of debtor entities and creditors to the proceeds of DO Insurance Policies are serpentine.  Worst of all, the litigation would be extremely expensive, take years to resolve and might make the Estates administratively insolvent and prevent the payment of dividends to the Trade Creditors or any other unsecured creditor.

29.     Through the Settlement Agreement, the Moving Parties have expressed their conclusion that resolving the innumerable and difficult legal issues, and the avoidance of substantial legal expense, makes the settlement embodied therein valuable for all constituencies. This Court must give "proper deference to their reasonable views."  Having agreed to the Settlement which directly affects their business and financial interests after months of discussion, this Court should find that the Moving Parties consciously acted in a manner calculated to advance what they perceived to be their own best interests, and at the same time, the best interests of the bankruptcy estates.

30.     The Settlement fairly balances the rights of the Debtors, the Estates and those of the other Moving Parties.  None of the Moving Parties received what it wanted when the discussions began.  BFA, PSB and the Debtors' and Committee's Professionals agreed to carveout funds to pay the Trade Creditors.  The Moving Parties also agreed to make other important concessions to each other intended to give each Moving Party and other creditors a fair share of the Net Proceeds of the Litigation Assets.  The Moving Parties agreed to fund part of the

cost and expense of the prosecution of the DO Claims and the Chapter 5 Actions by allowing the Debtor's to use some of the Ending Cash and may provide more funding if necessary.  Finally, counsel to the Liquidating Trustee recognize that they will not be paid absent Litigation Asset recoveries.

31.    Since the Settlement has the support of the overwhelming majority of the creditors in this case, fairly balances the rights of the Debtors and their Estates and those of the other parties and falls well within the "range of reasonableness" in the opinion of counsel to the Moving Parties, this Court should approve the proposed Settlement.

WHEREFORE, the Debtors respectfully request this Court to:

A.    Enter the Proposed Protective Order accompanying this Motion without notice or hearing pending the further order or orders of this Court pursuant to Code Section 107;

B.    Enter the Proposed Approval Order after notice and hearing based on this Motion and its in camera review of the Settlement Agreement and the consideration of any objections filed by any creditor or party interest; and

C.    Grant the Moving Parties such further relief as may prove to be equitable and fair or lawful.

WHEREFORE, the parties respectfully request this Court to grant them the relief requested in this Motion and grant them such further relief as may be equitable and fair or lawful.

Respectfully submitted,

DATED:  August 9, 2013           /s/ William S. Gannon          
William S. Gannon, Esq., BNH 01222 (NH)

**ISAACSON STEEL, INC.**
**ISAACSON STRUCTURAL STEEL, INC.**

WILLIAM S. GANNON PLLC
889 Elm Street, 4th Floor
Manchester NH  03101
PH: 603-621-0833
FX: 603-621-0830

/s/ Daniel W. Sklar             
Daniel W. Sklar
Holly Kilibarda

**OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS**

Nixon Peabody LLP
900 Elm Street
Manchester, NH  03101
PH:  603-628-4000
FX:  603-628-4040

/s/ George J. Marcus            

George J. Marcus
Jennie L. Clegg
Andrew C. Helman

**NEW HAMPSHIRE BUSINESS FINANCE**
**AUTHORITY**

MARCUS, CLEGG & MISTRETTA, P.A.
One Canal Plaza, Suite 600
Portland, ME 04101
Telephone: (207) 828-8000

/s/ Gregory A. Moffett        
Gregory A. Moffett (BNH 1998)
Daniel P. Luker (BNH 1598)

**PASSUMPSIC SAVINGS BANK**

Preti Flaherty Beliveau & Pachios PLLP
P.O. Box 1318
Concord, NH 03302-1318
(603) 410-1525


/s/ D. Ethan Jeffery
Charles R. Bennett, Jr. (BNH 5498)
D. Ethan Jeffery (BNH 07185)

**TURNER CONSTRUCTION COMPANY, INC.**

Murphy & King, P.C.
One Beacon Street
Boston MA 02108
PH:  (617) 423-0400
dej@murphyking.com


CERTIFICATE OF SERVICE

I hereby certify that on this date I served the foregoing pleading on each person named below by causing it to be filed electronically via the CM/ECF filing system or mailed by first-class United States Mail, postage pre-paid, or in such other manner as may be indicated:

All Persons on the attached Service Lists (if any).


DATED:  August 9, 2013                    /s/ Mary Ann Joyce
                                          Mary Ann Joyce

14575260.2

**COMBINED APPEARANCES SERVICE LIST**
**In Re: Isaacson Steel, Inc., Chapter 11, Case No. 11-12415-JMD**
**In Re: Isaacson Structural Steel, Inc., Chapter 11, Case No. 11-12416-JMD**

Ann Marie Dirsa – **ECF**
Geraldine Karonis **- ECF**
for U.S. Trustee

Joshua Menard – ECF
Dan Luker - ECF
For Passumpsic Savings Bank

Edward C. Dial, Jr. – ECF
For Ford Motor Credit

Daniel Sklar – ECF
Holly Kilibarda – ECF
For Creditors' Committee

David Azarian – ECF
For American Aerial Services

David Anderson – ECF
For Cate Street Capital

Christopher Allwarden – ECF
Honor Heath - ECF
For PSNH

Kristen Harris – ECF
Jonathan Starble - ECF
For Infra-Metals Co.

David Chenelle – ECF
For JM Coull, Inc.

Steven M. Notinger – ECF
For Steven Griffin

Joseph Foster – ECF
For The Eli L. Isaacson Family Trust
RB Capital, LLC;
Myron Bowling Auctioneers,
Hilco Industrial, LLC

James LaMontagne – ECF
Lisa Snow Wade - ECF
For Isaacson Steel, Inc.
Isaacson Structural Steel, Inc.

Lisa Snow Wade – ECF
for Orr and Reno, P.A.

Richard Levine – ECF
Cori Palmer - ECF
For Colby Company
John Moriarty & Associates, Inc.

John R.  Harrington – ECF
For Wells Fargo Equipment Finance

D. Ethan Jeffrey - ECF
Charles R. Bennett – ECF
For Turner Construction

Stephen Sutton - ECF
For Turner Construction
Liberty Mutual Insurance Company

Matthew Johnson - ECF
For Northway Bank

Gina Fonte – ECF
For The Richmond Group

Peter Hermes – ECF
For John Moriarty & Assoc.

Mickey Long – ECF
For Prime Steel Erecting
Universal Steel Erectors, Inc.

George Marcus – ECF
For NH BFA

Rodney Stark – ECF
For D.J. Driscoll and Company

Lizabeth M. MacDonald - ECF
For City of Berlin

Mark Derby – ECF
For Presby Steel

David C. Green – ECF
For RBS Citizens

Kelly Ovitt Puc – ECF
Irvin Gordon - ECF
for Arnold P. Hanson, Jr.

Wanda Borges - ECF
for Bushwick Metals, LLC

Jamie N. Hage  - ECF
for Steven Griffin

Douglas B. Rosner – ECF
Peter N. Tamposi - ECF
for Tron Group

Peter C.L. Roth  - ECF
for NH Dept. of Env. Services

Ryan D. Sullivan – Ecf
for All Metals Industries, Inc.

Robert Wexler - email

Internal Revenue Service
Special Procedures Function
80 Daniel
PO Box 9502
Portsmouth  NH  03802

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia PA 19101-7346

State of New Hampshire
Dept. of Employment Security
Attn: Arnold Rocklin-Weare
32 South Main Street
Concord, NH 03301

14575260.2