UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re:<br><br>Isaacson Steel, Inc.,<br><br>          Debtor | Chapter 11<br>Case No. 11-12415-JMD |
| In re:<br><br>Isaacson Structural Steel, Inc.,<br><br>          Debtor | Chapter 11<br>Case No. 11-12416-JMD<br>Jointly Administered<br>**<u>Hearing: 8/22/13 at 10:00 a.m.</u>** |

**UNITED STATES TRUSTEE'S OBJECTION TO
JOINT MOTION FOR INTERIM PROTECTIVE ORDER AND
FINAL ORDER APPROVING GLOBAL SETTLEMENT AGREEMENT**

To the Honorable J. Michael Deasy, United States Bankruptcy Judge:

Pursuant to 28 U.S.C. § 586, 11 U.S.C. § 107, Fed. R. Bankr. Proc. 9018 and 9019,

William K. Harrington, the United States Trustee for Region 1 ("**United States Trustee**"),

submits this Objection to the *Debtors, Committees, New Hampshire Business Finance Authority,*

*Passumpsic Savings Bank's and Turner Construction, Inc.'s Joint Motion for Interim Protective*

*Order and Final Order Approving Global Settlement Agreement* ("**Motion to Seal and Approve**

**Settlement Agreement**") as follows:

### I.  <u>PRELIMINARY STATEMENT</u>

Public scrutiny of a debtor's conduct and transparency in the bankruptcy process is

essential to fostering confidence among creditors and parties in interest regarding the

fundamental fairness of the bankruptcy system.  The Motion to Seal and Approve Settlement

Agreement filed jointly by the Debtors' professionals[1] and certain select groups of the Debtors' largest creditors (the "**Settling Creditors**") seeking approval of a "secret" global settlement is an affront to bankruptcy system and, if approved, would unjustifiably undermine the confidence of creditors and parties in interest in the fairness of the bankruptcy system.

Here, the Debtors' professional advisors and the Settling Creditors (collectively the "**Parties**") have solicited and negotiated a global settlement or plan term sheet (the "**Plan Term Sheet**"), which unambiguously dictates the terms of a plan. If approved, the Plan Term Sheet would irrevocably lock up the terms of the plan without a single vote being cast and without even facial compliance with the solicitation and disclosure requirements contained in the Bankruptcy Code.

The proposed Plan Term Sheet contains terms which violate and recreate for the benefit of the Settling Creditors the priority scheme created by Congress in the Bankruptcy Code. The Plan Term Sheet resolves the purported claims of certain of the Settling Creditors without an opportunity for any other parties in interest to weigh in on such claims. Additionally, the Plan Term Sheet requires, prior to confirmation, the creation of a trust into which virtually all of the estates' remaining assets, the chapter 5 claims and the D&O claims, will be diverted or transferred. Ostensibly, the trust shall be controlled by a select group of creditors (the "**Liquidating Trustees**"), who will act prior to confirmation as the estate representatives, in contravention of the express provisions contained in 11 U.S.C. § 1104.

---

[1] As a threshold matter, it is unclear how this settlement was negotiated and filed without the approval of the estates' representatives. Upon information and belief, the Debtors, who are the legal representatives of the estates, have not seen or approved the global settlement or been involved in the negotiation of the agreement.

Furthermore, the Parties seek to shield the Plan Term Sheet from public scrutiny by seeking authority to seal its critical terms.  The Parties' request for approval of the protective order and approval of the global settlement is wholly inappropriate given the importance of transparency to the bankruptcy process; the statutory right of the public to have access to papers filed in a bankruptcy case; and the inherent due process rights of all creditors and parties in interest to notice, adequate disclosure and the opportunity to vote prior to the confirmation and approval of a plan in bankruptcy.

## II.  PROCEDURAL STATUS

1.      On June 22, 2011 ("**Petition Date**"), Isaacson Steel, Inc. and Isaacson Structural Steel, Inc. ("**Debtors**") filed skeletal voluntary chapter 11 petitions with the Court.  The Debtors' cases have not been substantively consolidated, but are being jointly administered by the Court.

2.      On June 30, 2011, the United States Trustee appointed an Official Committee of Unsecured Creditors ("**Committee**") in the above-captioned cases consisting of five members: The Eli Isaacson Family Trust; United Steel Erectors, Inc.; Charles Leonard Construction, Inc.; James F. Stearns Co., Inc.; and Namasco Corporation.

3.      The Debtors are not currently operating.  Substantially all of the Debtors' tangible assets have been sold.  Upon information and belief, the remaining assets generally consist of accounts receivable, chapter 5 actions against third parties, and interests in a directors' and officers' policy ("**D&O Policy**").

4.      Although these cases have been pending for over two years, the Debtors have failed to file a Plan or Disclosure Statement.

5.      On March 29, 2013, the United States Trustee filed a Motion for Entry of Order

Converting Cases to Chapter 7 ("**Motion to Convert**"), asserting that the Debtors' officers and directors have essentially abandoned their responsibilities as fiduciaries and  that a void exists in the management of the Debtors' estates.  The United States Trustee contends that the Debtors have failed to demonstrate any meaningful progress towards the successful completion of this case, and that the cases should be converted to chapter 7 so that a disinterested trustee may investigate and prosecute claims.

6.      The hearing on the United States Trustee's Motion to Convert is presently scheduled for a continued hearing on September 24, 2013.

7.      In response to the United States Trustee's Motion to Convert, the Debtors filed a series of adversary proceedings, including chapter 5 actions against the Debtors' present and/or former officers and directors, Arnold Hanson and Steven Griffin.

8.      On August 9, 2013, the present Motion to Seal and Approve Settlement Agreement was submitted to the Court by or on behalf the Debtors, the Committee, the New Hampshire Business Finance Authority ("**BFA**"), Passumpsic Savings Bank ("**Passumpsic**") and Turner Construction, Inc. ("**Turner**").

### III.      <u>APPLICABLE LEGAL STANDARDS</u>

#### A.  <u>Presumption of Public Access</u>

9.      Section 107 of the Bankruptcy Code "establishes a broad right of public access, subject only to limited exceptions set forth in the statute, to all papers filed in a bankruptcy case." *Gitto v. Worcester Telegram & Gazette Corp.* (*In re Gitto Global Corp.*), 422 F.3d 1, 7 (1st Cir. 2005).  It provides, in pertinent part:

> (a) Except as provided in subsections (b) and (c) and subject to section 112, a
> paper filed in a case under this title and the dockets of a bankruptcy court are

public records and open to examination by an entity at reasonable times without charge.

(b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
  (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
  (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

(c)(1) The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:
  (A) Any means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title.
  (B) Other information contained in a paper described in subparagraph (A)....

11 U.S.C. § 107.

10.    Bankruptcy Rule 9018 sets forth the procedure for requesting the protection of

information pursuant to 11 U.S.C. § 107 and provides:

On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation....

Fed. R. Bankr. Proc. 9018.

### B.   Compromise of Estate Claims

11.    Section 323 provides that the debtor-in-possession is the representative of the

estate.  *See* 11 U.S.C. § 323.  As legal representative of the estate, it is the debtor-in-possession

who is "vested with the power to settle the estate's claims."  *In re Smart World Tech., LLC*, 423

F.3d 166, 175 (2nd Cir. 2005).  "It is the debtor-in-possession who controls the estate's property,

including its legal claims, and it is the debtor-in-possession who has the legal obligation to

pursue claims or to settle them, based upon the best interests of the estate."  *Id.*

5

12.     Pursuant to Bankruptcy Rule 9019(a), the Bankruptcy Court has the authority to approve the proposed compromise of a claim.  *See* Fed. R. Bankr. P. 9019.  The Bankruptcy Court's task is "to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  *In re American Cartage, Inc.*, 656 F.3d 82, 91-92 (1st Cir. 2011).

13.     Under applicable First Circuit case law, the specific factors which a bankruptcy court should consider in ruling upon a motion to compromise include:

> (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.

*Jeffrey v. Desmond,* 70 F.3d 183, 185 (1st Cir. 1995).

## IV.     ARGUMENT

### A.  The Movants Have Not Demonstrated Grounds to Seal the Settlement Agreement Under 11 U.S.C. § 107(b).

14.     Section 107 codifies the longstanding common law presumption of public access to judicial documents.  *In re Gitto Global Corp.*, *supra*, 422 F.3d at 7.  Its coverage is "sweeping," and appropriately so, given the "special importance in the bankruptcy arena" of public scrutiny in "foster[ing] confidence among creditors regarding the fairness of the bankruptcy system."  *Id.* (quoting *In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999)). In order to remove the Settlement Agreement from the broad scope of 11 U.S.C. § 107(a), the movants must demonstrate that the information contained therein fits within one of the specific exceptions set forth in 11 U.S.C. § 107(b) or (c).  *In re FiberMark, Inc.,* 330 B.R. 480, 497 (Bankr. D. Vt. 2005)(holding that seal proponent has "the burden of proof to demonstrate grounds for an

exception under § 107(b)").  *See also In re Wyatt*, 368 B.R. 99 (Bankr. N.H. 2007)(motion to place pleadings under seal without cause denied as it would unduly affect other parties and creditors).

15.     The Motion must be denied because the movants have failed to demonstrate grounds to seal the Settlement Agreement under 11 U.S.C. § 107 or Fed. R. Bankr.P. 9018.  The information the movants seek to shield from public view is not "a trade secret or confidential research, development, or commercial information," 11 U.S.C. § 107(b)(1); "scandalous or defamatory," 11 U.S.C. § 107(b)(2); nor "would [it] create undue risk of identity theft or other unlawful injury," 11 U.S.C. § 107(c).  Instead, the movants argue that a protective order is warranted because the Settlement Agreement purportedly contains "work product and other research" (Motion, p. 2) consisting of the moving parties' "insight" and "evaluation of the outcomes of potential litigation."  Motion, p. 9.

16.     While the United States Trustee disputes the movants' characterization of the contents of the Settlement Agreement as privileged work product based on his review of the document, neither communications protected by the attorney-client privilege nor materials subject to the work-product doctrine fall within the Bankruptcy Code's research and commercial information exception to public access to bankruptcy court records.  *See In re FiberMark, Inc.*, 330 B.R. at 505 (disagreeing with *In re 50–Off Stores, Inc.*, 213 B.R. 646, 655 (Bankr. W.D. Tex. 1997)).  The very factors which First Circuit case law requires the Court to consider in approving any settlement agreement concern the parties' assessment of the strengths and weaknesses of the claims at issue, including: the probability of success, difficulties of collection, and complexity of litigation.  *See Jeffrey v. Desmond*, 70 F.3d at 185.  The "insights" the

movants seek to seal are the very considerations they are required to disclose.  Moreover, it is

unclear that any such information is contained in the Settlement Agreement.  Because no

grounds exist under 11 U.S.C. § 107(b) or (c) to protect the Settlement Agreement from public

disclosure, the movant's request to seal the document must be denied.

**B.  The Request to Approve the Proposed Settlement Agreement Must Be Denied Because the Settlement Agreement: (i)  Is Not Signed by the Debtors-in-Possession; (ii) Provides for the Appointment of a Panel of Interested Trustees in Violation of Section 1104(d); (iii) Transfers Substantially All of the Debtors' Remaining Assets and Dictates the Terms of the Debtors' Plan Without Appropriate Disclosures, Notice and Hearing and (iv) Is Unsupported by Sufficient Disclosures for the Court to Determine It Is Reasonable.**

**i.  The Debtors-in-Possession Have Not Signed the Settlement Agreement.**

17.    Although identified as among the purported movants, the Debtors have not signed

the Settlement Agreement.  Upon information and belief, and based on discussions with counsel,

the Debtors' failure to endorse the Agreement was intentional.  Indeed, upon information and

belief, no estate representative has even seen the Settlement Agreement.  The Debtors assert that

they did not sign the Settlement Agreement because any recovery under the D&O policy would

be barred by an "insured-versus-insured" exclusion.  The Motion to approve the Settlement

Agreement must be denied because the Debtors are the only parties with standing to seek

approval of the proposed compromise.

18.    In the absence of prior Court approval, only a trustee or debtor-in-possession may

settle claims on behalf of the bankruptcy estate.  *See* 11 U.S.C. § 323 (debtor-in-possession is

representative of estate); and *In re Smart World Tech., LLC*, 423 F.3d at 175 (As legal

representative of estate, it is debtor-in-possession who is "vested with the power to settle the

estate's claims.").  To the extent the Debtors are unable or unwilling to pursue claims on behalf

of the estate, the Court should grant the pending Motion to Convert the Debtors' cases to permit a disinterested chapter 7 trustee to do so, or in the alternative, appoint a chapter 11 trustee pursuant to 11 U.S.C. § 1112(b)(1).  *See c.f.  In re Molten Metal Tech., Inc.*  271 B.R. 711, 731 (Bankr. D. Mass. 2002) (recommending finding that insured-versus-insured exclusion did not apply to claims brought by chapter 11 bankruptcy trustee).

### ii.   The Purported Settlement Agreement Provides for the Appointment of a Panel of Interested Trustees in Violation of 11 U.S.C. § 1104(d).

19.     The proposed Settlement Agreement grants, prior to confirmation, the Committee, Passumpsic, and the BFA control over the Debtors' D&O claims and chapter 5 causes of action, the Debtors' sole remaining assets of any significant value.  The Settlement Agreement assigns the claims to a liquidating trust governed by a board of trustees comprised of designees appointed by, and beholden to those parties, entities that are not estate fiduciaries.  The Agreement grants the Liquidating Trustees final authority over the prosecution and any settlement or other resolution of the D&O claims.  These provisions, which cede control over the Debtors' management and reorganization to the Committee, Passumpsic, and the BFA, violate the Debtors' fiduciary duties to their respective estates; the Bankruptcy Code permits a debtor's business to be operated "only by a debtor or trustee."  *In re Tenney Village Co., Inc.,* 104 B.R. 562, 568 (Bankr. D. N.H. 1989).

20.     Further, prior to the confirmation of a chapter 11 plan, the authority to appoint a trustee rests solely with the United States Trustee, subject to the Court's approval.  *See* 11 U.S.C. § 1104(d).  *See also In re Plaza de Diego Shopping Ctr., Inc.*, 911 F.2d 820, 833 (1st Cir. 1990)(only United States Trustee may appoint trustee).  Where the Court authorizes the

appointment of a trustee, the Bankruptcy Code requires that the United States Trustee appoint "one disinterested person" to undertake that role.  11 U.S.C. § 1104(d).

21.     Prior to confirmation, the movants have no authority under the Bankruptcy Code to appoint a panel of trustees to manage the Debtors' litigation affairs, nor may the movants utilize the present Motion to avoid the requirements of 11 U.S.C. § 1104.  *See Official Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1311 (1st Cir.1993)("[S]ection 105(a) [does not] authorize courts to create substantive rights that are otherwise unavailable under the Code, or to expand the contractual obligations of parties.").  To the extent creditors contend that a trustee is required to prosecute claims on behalf of the estate, they must seek conversion of the case to chapter 7 under 11 U.S.C. § 1112, or the appointment of a single disinterested chapter 11 trustee appointed by the United States Trustee and approved by the Court pursuant to 11 U.S.C. § 1104.

> **iii.  The Proposed Settlement Agreement Provides for the Transfer of Substantially All of the Debtors' Remaining Assets and Dictates the Terms of the Debtors' Plan Without Appropriate Disclosures, Notice and Hearing.**

22.     The movants seek approval of a Settlement Agreement which will effect the transfer of substantially all of the Debtors' remaining assets and will dictate the terms of the Debtors' yet-to-be-filed plan of reorganization, on an expedited basis and without disclosing the actual Settlement Agreement to creditors.  Among other aspects, the proposed Settlement Agreement:

- transfers the Debtors' remaining litigation claims to a liquidating trust controlled by a panel of interested non-debtor trustees;

- dictates the manner in which litigation proceeds will be distributed if and when received;

- determines the priority, status, and amounts of payments to every creditor class;

- permits direct payments to Passumpsic and the BFA without further order of the Court; and

- permits a Committee-determined pool of ordinary trade creditors to be paid in advance of other general unsecured claims.

23.     Because this purported "Global" Settlement Agreement will affect all creditors of the estate and determine the course of the Debtors' plan of reorganization, it should be accompanied by the type of disclosure that would be required if the Settlement were embodied in a plan of reorganization under 11 U.S.C. § 1125.  Creditors should also be afforded the same notice and hearing to which they are entitled under Rule 2002(b).

### iv.  The Movants Have Failed to Demonstrate that the Settlement Is Reasonable.

24.     Even if governed by the disclosure standards of Rule 9019, rather than the more comprehensive requirements of 11 U.S.C. § 1125, the movants have failed to provide sufficient information for the Court or other parties in interest to determine whether the Settlement Agreement is in the best interests of the estate.  The movants have not provided adequate information for the Court to determine what the range of reasonable outcomes at issue is, and whether the proposed Settlement "falls below the lowest point in [that] range."  *In re American Cartage, Inc.*, 656 F.3d at 92.

25.     In evaluating the Settlement Agreement, the Court must consider (i) the probability of success in the litigation being compromised; (ii) the difficulties of collection;

11

(iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the interests of creditors and their reasonable views in the premise. *Jeffrey*, 70 F.3d at 185.  The Settlement Agreement proposes to compromise several distinct claims, objections, adversary proceedings, and third-party suits in multiple forums, without attempting a specific discussion of each.  The movants cite the *Jeffrey* factors applied in the First Circuit, but make no attempt to discuss their application to the disparate and varied controversies being settled.

26.     Even on a more global basis, the movants fail to allege what they believe the value of the "Litigation Assets" being transferred to be, nor do the movants describe the nature or value of the adversary proceedings to be dismissed with prejudice under the Settlement Agreement.  Rather than giving "proper deference to [creditors'] reasonable views in the premise," *Jeffrey*, 70 F.3d at 185, the movants have requested secrecy and a hearing on shortened notice.  Because the movants have failed to meet the burden of demonstrating that the Settlement Agreement is in the best interests of creditors and the estate, the Motion must be denied.

***

WHEREFORE, the United States Trustee objects to the *Debtors', Committees', New Hampshire Business Finance Authority, Passumpsic Savings Bank's and Turner Construction, Inc.'s Joint Motion for Interim Protective Order and Final Order Approving Global Settlement*

*Agreement* and respectfully requests the Motion be denied in its entirety.

<div style="margin-left:40%">

Respectfully submitted,

WILLIAM K. HARRINGTON,
UNITED STATES TRUSTEE

</div>

Dated: August 21, 2013         By:    /s/ Geraldine Karonis
                                      Geraldine Karonis BNH #01853
                                      Assistant United States Trustee
                                      Ann Marie Dirsa BNH# 06121
                                      Office of the United States Trustee
                                      1000 Elm Street, Suite 605
                                      Manchester, NH 03101
                                      (603) 666-7908

<div style="text-align:center">

<u>CERTIFICATE OF SERVICE</u>

</div>

I hereby certify that on this August 21, 2013, I caused to be served a copy of the foregoing by CM/ECF to:

Christopher J. Allwarden
Tawny L. Alvarez
William J. Amann
David A. Anderson
David P. Azarian
Charles R. Bennett, Jr.
Fred W. Bopp, III
Wanda Borges
David R. Chenelle
Mark P. Cornell
Eleanor Wm Dahar
Edward C. Dial, Jr.
Gina A. Fonte
Edmond J. Ford
Joseph A. Foster
Leonard A. Frisoli
William S. Gannon
Irvin D. Gordon
David C. Green
Jamie N. Hage
John R. Harrington

<div style="text-align:center">13</div>

Kristen S. Harris
Christopher D. Hawkins
Honor S. Heath
Peter G. Hermes
D. Ethan Jeffrey
Matthew R. Johnson
Holly Kilibarda
James S. LaMontagne
Richard L. Levine
Mickey Long
Daniel P. Luker
Lizabeth M. MacDonald
George J. Marcus
Joshua E. Menard
Nancy Michels
Gregory A. Moffett
Dennis L. Morgan
Deborah A. Notinger
Steven M. Notinger
Kelly L. Ovitt Puc
Cori Phillips Palmer
William B. Pribis
Daniel C. Proctor
Douglas B. Rosner
Peter C.L. Roth
Meyer Simon
Daniel W. Sklar
Jonathan M. Starble
Rodney L. Stark
Ryan D. Sullivan
Peter N. Tamposi
Lisa Snow Wade
Jack S. White

/s/ Geraldine Karonis
Geraldine Karonis

Dated: August 21, 2013

14