**2013 BNH 012**     Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                                                  Bk. No. 11-12415-JMD
                                                                                                        Bk. No. 11-12416-JMD
                                                                                                        Chapter 11
Isaacson Steel, Inc.
Isaacson Structural Steel, Inc.,
               Debtors

*William S. Gannon, Esq.*
*William S. Gannon PLLC*
*Manchester, New Hampshire*
*Attorney for Debtors*

*Daniel W. Sklar*
*Nixon Peabody LLP*
*Manchester, New Hampshire*
*Attorney for the Official Committee of Unsecured Creditors*

*George E. Marcus, Esq.*
*Marcus, Clegg & Mistretta, P.C.*
*Portland, Maine*
*Attorney for New Hampshire Business Finance Authority*

*D. Ethan Jeffery*
*Murphy & King, P.C.*
*Boston, Massachusetts*
*Attorney for Turner Construction, Inc.*

*Daniel P. Luker*
*Preti Flaherty Pachios & Beliveau, PLLP*
*Concord, New Hampshire*
*Attorney for Passumpsic Savings Bank*

## **MEMORANDUM OPINION**

**I. INTRODUCTION**

Debtors Isaacson Steel Inc. and Isaacson Structural Steel Inc. (the "Debtors") have entered into a settlement agreement with their largest creditors, Passumpsic Savings Bank ("Passumpsic), Turner Construction Company, Inc. ("Turner"), the New Hampshire Business Finance Authority (the "BFA"), and with the Official Committee of Unsecured Creditors (the "Committee") (collectively, the "Settlement Proponents"). The Motion to Approve Global Settlement Agreement (Doc. No. 1116) (the "Motion") was initially filed with a motion for a protective order intended to keep the entire agreement out of the public record. The Court held a preliminary hearing on August 22, 2013, and continued the hearing to allow the Settlement Proponents an opportunity to file a redacted copy of the Global Settlement Agreement (the "Settlement") and a Notice of Global Compromise and Settlement Disclosure Supplement (Doc. No. 1146) (the "Disclosure Supplement"). The Court held a final hearing on the Motion and the Disclosure Supplement on September 19, 2013. At that hearing, the Court deemed the Motion a request to transfer substantially all of the Debtors' assets pursuant to 11 U.S.C. § 363 and granted the Motion to the extent it requested final approval of the Settlement.

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a), and U.S. District Court for the District of New Hampshire Local Rule 77.4(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

**II. BACKGROUND**

On June 22, 2011, Isaacson Steel, Inc. and Isaacson Structural Steel, Inc. filed voluntary petitions for protection under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). (Doc. No. 1). The Debtors continue to operate as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. On June 30, 2011, the U.S. Trustee appointed the Official Committee of Unsecured Creditors. (Doc. No. 3). On July 8, 2011, the Court entered an order granting Debtors' motion for joint administration of the cases. (Doc. No. 33).

On February 29, 2012, the Debtors sold substantially all of their operating assets and ceased operations. The primary assets remaining in the Debtors' estates are the approximately fifty preference and/or fraudulent transfer actions filed by the Debtors (the "Chapter 5 Actions") and the Debtors' negligence/negligent misrepresentation claims against their former principals under the Directors and Officers Insurance Policy (the "D&O Claims"). The Debtors entered into a settlement with the Committee, Passumpsic, the BFA, and Turner in order to resolve some of the complex issues between and among the parties with respect to their claims against the estate and their ability to pursue claims against the Debtors' former principals under the D&O policy.

The Settlement proposes the creation of a liquidating trust, with three trustees, one each to be appointed by Passumpsic, the BFA, and the Committee. Upon approval of the Settlement, the Debtors will assign to the liquidating trust all of the D&O Claims, the Chapter 5 Actions, any other actions they have a right to bring, and all of their other property. Passumpsic will assign to the liquidating trust its D&O claim, and BFA will assign and transfer to the liquidating trust $50,000 of the recoveries from the D&O Claims, as a reduction of its first priority secured claim in the proceeds of the D&O claims. The liquidating trust is intended to serve as "the vehicle for

3

prosecution" of the Chapter 5 Claims and the D&O Claims and hopefully to allow for a consensual resolution of those claims with the insurance carriers.

The Settlement Proponents originally requested that the Court review the Settlement in camera, with only the United States Trustee (UST) being served an additional copy of the Settlement before a hearing on final approval. (See Doc. No. 1116). Several parties raised objections to the proposed procedure. The UST argued that keeping the Settlement off of the Court's docket prevented "[p]ublic scrutiny of a debtor's conduct and transparency," which undermined "confidence among creditors and parties in interest regarding the fundamental fairness of the bankruptcy system." (Doc. No. 1132). The UST was concerned that neither the Debtors nor their counsel had signed the agreement and argued that the appointment of trustees by creditors was inappropriate under 11 U.S.C. § 1104(d), which provides that only the UST can appoint a single, disinterested chapter 11 trustee. Id. Most importantly, the UST argued, the Settlement would lock the Debtors into the terms of a plan "without a single vote being cast and without even facial compliance with the solicitation and disclosure requirements" Id.

Steven Griffin ("Griffin"), the Debtors' former principal and a defendant in the D&O Claims, argued that the proposed procedure for approving the Settlement without an opportunity for parties in interest to review it and object was improper, and expressed his concern that the Settlement contained information about the D&O Claims, the Court's review of which would violate due process. (Doc. No. 1128). D.J. Driscoll & Co., PLLC ("Driscoll"), the Debtors' former accountant, filed a joinder in Griffin's objection. (Doc. No. 1129).

At the preliminary hearing on August 22, 2013 (the "Preliminary Hearing"), the Court raised its own concerns with the nature of the settlement, i.e., that the settlement appeared to be a *sub rosa* plan with no disclosure made to the creditors or other parties in interest and no

4

opportunity for those parties to object or vote. During the course of the hearing, the Settlement Proponents agreed to file with the Court and serve on all parties in interest a copy of the Settlement that was redacted, rather than requesting that the Court conduct the entire review and approval process in camera. At the conclusion of the hearing, the Court ordered the Settlement Proponents to file and serve on all creditors and parties in interest a "meaningful" disclosure about the Settlement that would tell parties in interest the basic terms of the Settlement, what it would mean for creditors, and other relevant information that would allow parties in interest to object to the approval.

  The Settlement Proponents filed the Disclosure Supplement on August 30, 2013, in order to "permit creditors and other interested parties in interest to make an informed decision regarding the merits of the proposed Global Settlement Agreement . . . ." (Doc. No. 1146). In it, the Settlement Proponents provide a summary of the Settlement, as well as attaching a copy of the redacted Settlement. The Disclosure Supplement discusses the intention of the Settlement, the likely recovery under the Chapter 5 Actions and the D&O Claims, the impact of the Settlement on plan confirmation and certain creditors, the remaining assets in the Debtors' estates, the remaining claims against the estates, the other claims being prosecuted under the D&O policy, proposed distributions under the Settlement, a liquidation analysis, and the best interests of creditors test under 11 U.S.C. § 1129(a)(7). Id.

  The three previous objections were renewed after the Disclosure was filed. First, Griffin objected, arguing that the Settlement Proponents and the liquidating trust needed to obtain relief from the automatic stay in his individual chapter 7 case before they could pursue the D&O Claims, but to date, only Passumpsic had obtained relief. Therefore, he argued, the Settlement would be acceptable if only the Settlement Proponents would follow the procedure and release

5

their claims against Griffin individually and against his estate in exchange for relief from stay to pursue the insurance proceeds. (Doc. No. 1168). Second, Driscoll renewed his objection, again joining in the UST and Griffin's original objections. (Doc. No. 1166).

Third, the UST filed a objection to the Settlement and to the Disclosure Supplement. (Doc. No. 1167). He argues that the Settlement should not be approved because the Debtors are still not parties to the Settlement, and he renews his objection to the appointment of trustees by the creditors. The UST argues that with respect to the transfer of the Debtors' assets and the "dictation" of plan terms without the opportunity for a vote, the Motion should be denied and the Settlement should not be approved because it is inappropriate under the Bankruptcy Code. Finally, the UST argues that even under the terms of Fed. R. Bankr. P. 9019, the Settlement Proponents have failed to provide adequate information for the Court to determine the range of reasonable outcomes and whether the Proposed Settlement falls below the lowest point in that range. Id.

The Court held a final hearing on the Settlement on September 19, 2013 (the "Final Hearing"). All of the Settlement Proponents, as well as Griffin, Driscoll, and the UST appeared. At the hearing, the Court heard from the Settlement Proponents about the need for the Settlement in order to achieve a recovery for creditors by getting all of the litigation into one place with a streamlined oversight and management process. The Debtors made an offer of proof that the Settlement would effectuate the transfer of substantially all of the Debtors' assets, and after the transfer, the Debtors' responsibilities would be only to pay quarterly fees to the UST and to file monthly operating reports with the Court and tax returns with the state and the Internal Revenue Service.

With respect to the litigation that was scheduled for October, which had been cited as a reason for approving the Settlement prior to the plan process, that litigation had been moved to December 2013 to allow for potential mediation between the parties and the insurance carrier. The Settlement Proponents argued, however, that although the litigation would not be spending the funds under the D&O policy, a delay of six to eight weeks to complete the plan process would result in a wasting of the policy and diminished recoveries for all creditors. The Settlement Proponents contended that the Settlement would provide for resources to prosecute the litigation in addition to the property of the Debtors.

The Court heard from Griffin and the UST with respect to their objections. While Griffin's objection focused mainly on why the Settlement Proponents had not obtained relief from the stay in his individual chapter 7, the UST had both procedural objections and substantive objections. The UST continued to argue that the Settlement provides for the improper appointment of a trustee.[1] The majority of the UST's arguments, however, were on procedural grounds. When asked whether the UST would object if this transfer was being done under the provisions of a confirmed chapter 11 plan of reorganization, the UST responded that if the Settlement was approved as part of a plan confirmation process, and creditors had a chance to vote, then the procedural issues would be eliminated, and that the UST was not opposed to expediting confirmation of a plan.

---

[1] The Court is unconvinced by this argument. The documents establishing the liquidating trust, as attached to the Disclosure Supplement as exhibit B, do not provide for a chapter 11 trustee, but rather discuss the management of an entity that will be acquiring the assets of the Debtors, not the management of the Debtors themselves.

7

At the conclusion of the Final Hearing, the Court approved the Settlement and asked the Settlement Proponents to submit a proposed order approving the Settlement, for the reasons stated on the record and this Court's memorandum opinion.

## III. DISCUSSION

Rule 9019 of the Federal Rules of Bankruptcy Procedure provides that: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor . . . and to any other entity as the court may direct." Fed. R. Bankr. P. 9019(a). Factors the court looks at in its decision whether to approve a settlement include: (1) the probability of success in the litigation; (2) potential difficulties in collection; (3) the complexities of litigation; and (4) the paramount interest of creditors. Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995).

At the outset, the Court finds that the Debtors need to be a party to the Settlement, as the UST argued in his objection to the Motion and the Disclosure Supplement. At the hearing, the Debtors' counsel represented that the Debtors would be signing the Settlement. Any approval of this Court is predicated on the Debtors becoming a party to the Settlement.

Here, the Court finds that after review of the Settlement and the actions proposed therein, the Settlement is in essence a transfer of the Debtors' remaining assets to a third party, the liquidating trust. Although the Motion is not styled as such, the Court will deem the Motion to be a motion to sell or transfer substantially all of the Debtors' assets outside of a plan of reorganization. Rather than focusing on form over substance, the Court looks to the terms of the Settlement. Those terms provide that there is a settlement, the approval of which will result in the Debtors transferring all of their assets to a liquidating trust controlled by creditors, in return

for which certain things will occur that benefit the estates, including the prosecution of the D&O Claims and a release of claims against the Debtors.

Where transactions that essentially restructured a debtor have been proposed before a plan of reorganization was confirmed, courts have considered whether creditors and other parties in interest have similar protections available to them as they would during the plan confirmation process. Courts have approved such transactions where there is a material reason that the debtor cannot wait to effectuate a transfer until after the plan of reorganization is confirmed. In <u>Public Service of New Hampshire</u>, this Court viewed a proposed reorganization through a settlement in light of the overall context of the case. It found the appropriate standard for approving a proposed transaction that essentially reorganized the debtor to be: "whether good cause has been shown to implement the transaction of this stage of the proceeding i.e., does it have valid business reasons supporting it and does it make good sense in the overall context of the reorganization process."  <u>In re Pub. Serv. of N.H.</u>, 90 B.R. 575, 581-82 (Bankr. D.N.H. 1988). The court found the relevant inquiry was: "whether the proposed transaction might improperly lock the estate into any particular plan mode prematurely, and without the protection afforded by the procedures surrounding a disclosure statement and confirmation hearing, in a plan of reorganization." <u>Id.</u>

Courts have wrestled with the tension between the need for negotiation with prospective funders of consensual plans and the need to maintain the protections of chapter 11. In <u>In re Crowthers McCall Pattern, Inc.</u>, the debtor and the creditors' committee filed a motion to allow the debtor to merge with another entity if a plan was confirmed. The parties were attempting to avoid complex and protracted litigation with various claim holders. 114 B.R. 877, 881 (Bankr.

S.D.N.Y. 1990). In order to approve the agreement, the bankruptcy court set forth a list of protections from the plan confirmation process that creditors must be afforded. Those protections are:

> (1) The right of creditors to receive a disclosure statement;
>
> (2) The power of creditors holding claims in an impaired class to vote;
>
> (3) The entitlement of dissenting creditors and equity interest holders to a return equal to or greater than that which they would receive in a liquidation pursuant to chapter 7;
>
> (4) The absolute priority rule; and
>
> (5) The ability of all parties-in-interest to be heard at a confirmation hearing as to matters affecting confirmation, including good faith, continuance of management, and feasibility.

Id.

Here, the Court finds that, in light of the Debtors' previous sale of their operating assets and cessation of business operations, any plan of reorganization that would be proposed would of necessity be a liquidating plan. In fact, the question is not whether the Debtors will liquidate, but rather when and how they will do so. The terms of the Settlement are, in effect, a plan for liquidating the Debtors. Thus, it is highly likely that a liquidating plan would have terms substantially similar, if not identical, to those in the Settlement.

The Court finds the terms of the Settlement to be reasonable and to provide an increased likelihood of greater recoveries for holders of administrative claims and, due to the carve out, for unsecured creditors. Therefore, the inquiry turns to whether, under Rule 9019, the Settlement is within the range of reasonably likely outcomes and would be in the best interests of creditors and the estate. The Court is convinced, on this record, that the settlement is likely to result in the largest recovery for the benefit of the most creditors. Although the proposed recovery for

unsecured creditors is not large, it does not appear that there is any reasonable likelihood of a greater recovery for unsecured creditors in this case. The Settlement also provides a greater recovery than would be achievable under a liquidation. The most important factor is the fact that the settlement will streamline and coordinate the claims against the directors and officers. Such coordination not only increases the likelihood of a settlement, but also decreases the litigation expense by the insurance carriers under the terms of the D & O liability insurance policy, which is a so-called wasting policy. While the record is fairly thin as to which of the administrative claims could be approved, it is sufficient to satisfy the Court that the recovery falls within the range of reasonably likely outcomes. Whether the administrative claims are overstated, the relevant question is to what extent the claims would need to be overstated to allow for any greater amount of money flowing to the unsecured creditors or any other parties. The Court finds that the discount agreed to by the Settlement Proponents with respect to the administrative claims is reasonable, and the carve-out for unsecured creditors provides a recovery that is at least equal to, and likely greater than, recoveries in a chapter 7 liquidation.

    Having found that the Settlement is reasonable on its own terms, the Court turns to the standard set forth by PSNH and McCall Pattern, namely whether the Settlement, at this point in the case, improperly locks the Debtors into plan provisions without affording creditors and other parties in interest appropriate disclosure as to the terms of the transfer and the opportunity to object and be heard on the approval of the Settlement.

    The Court finds that the Settlement, and its proposed transfer, are appropriate at this point in the case. The case has been pending for more than two years, and the Debtors ceased operations more than a year and a half ago. As previously stated, the question is not whether the

11

Debtors liquidate, but when and how they do so. Yet the issue is not whether the Plan's provisions are determined by the Settlement, but whether it is appropriate to approve the Settlement before the Plan is confirmed. Even the Settlement Proponents do not argue that the Settlement locks the Debtors into plan provisions. The Disclosure Statement and Plan filed in this case incorporate the terms of the Settlement.

The Court is still troubled by the question of whether there is an imminent reason to approve the Settlement prior to the plan process. However, the Settlement Proponents made a case at the hearing that if the plan confirmation process pushes the pending D&O litigation into the next calendar year, there will be substantial waste under the D&O policy. The Court finds that based on the record and the Proponents' arguments, it is in the best interests of the estates and the creditors to pursue mediation in a timely fashion and to avoid substantial delay and additional expenses in the litigation of the Chapter 5 Actions and the D&O Claims.

Having found that the approval of the Settlement is reasonable on its own terms and necessitated by the potential delay of litigation and the ensuing costs to the estates and wasting of the D&O Policy, the Court turns to the list of protections for creditors and parties in interest set forth by McCall Pattern.

    1.    Receipt of Disclosure Statement

11 U.S.C. § 1125 requires that debtors or plan proponents provide to creditors and parties in interest a disclosure containing adequate information to allow the holder of a claim to make an informed judgment about the plan. Here, the Creditors received the Disclosure Supplement, which laid out the relevant provisions of the Settlement, as well as the history of the Debtors, the reasons for the Settlement, the proposed recovery of the different classes under the Settlement,

the impact of the Settlement on the chapter 11 plan, and a proposed liquidation analysis. After the receipt of the Supplement, the only creditors who appeared were those who had previously objected. The Court finds that the creditors received a disclosure that provided sufficient information to allow creditors and parties in interest to determine whether they were impacted under the Settlement and whether they wished to object to the Settlement.

    2.    <u>Right to Vote</u>

11 U.S.C. § 1126 provides that the holder of a claim or interest may accept or reject a plan. Here, creditors did not have the right to vote, but they had the right to appear at the first and second hearings and to file objections to the Motion and the proposed approval of the Settlement. Some parties have done so, including Griffin and Driscoll. Additionally, the Settlement Proponents include creditors from several different classes: a secured creditor, and administrative creditor, a priority creditor, and the Committee, representing the unsecured creditors.

    3.    <u>Best Interests Test</u>

11 U.S.C. § 1129(a)(7) provides that in the event of a rejecting class, the holders of claims in that class must "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date . . . ." § 1129(a)(7)(A)(ii). The Settlement Proponents stated in the Disclosure Supplement that "if the Settlement should not be approved by the Court, the Settling Parties doubt that Administrative Claims would be paid in full. It is extremely unlikely that Priority Tax

13

and Nonpriority Unsecured Creditors would receive any Distribution on account of their Allowed Claims in a liquidation or a Chapter 7 proceeding." (Doc. No. 1146 at 10).

Even the UST acknowledged that the Settlement could result in a greater recovery than a liquidation under chapter 7. At the hearing, when questioned about the treatment of the D&O Claims if the cases were converted to chapter 7, the UST noted that he was unsure as to the recovery by a trustee and even whether the trustee would have standing to pursue the claims belonging to the estate, concluding that he would not want the estates to lose the opportunity to recover under the insurance policy.

Here, the Court finds that the Settlement will result in creditors receiving more than they would likely receive in a liquidation. Given the amount of the administrative claims, the Court believes that the case is administratively insolvent if there is a straight liquidation such as a liquidation under chapter 7.

4. Absolute Priority Rule

11 U.S.C. § 1129(b)(2) requires that in order for a chapter 11 to be fair and equitable with respect to a class of unsecured creditors when that class has not accepted a plan, "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property." § 1129(b)(2)(B)(ii).

Here, no creditor who is junior to the unsecured claimholders is receiving anything, and so the Court find this provision is satisfied.

14

### 5. Ability to be heard at a confirmation hearing

Under chapter 11, creditors have a right to be heard at a confirmation hearing with respect to matters affecting confirmation, such as the continuation of management, see § 1129(a)(5)(A)(ii), and the feasibility of the plan, see § 1129(a)(11). Here, any creditor or party in interest who wished to be heard at the hearing on the approval of the Settlement was heard by the Court. Both Griffin and Driscoll appeared at the hearing after filing their objections and were heard. The UST also appeared at the hearing and was heard.

Further, with respect to the continuation of management, because this is an agreement under which the Debtors will liquidate, there is no need to disclose the management after transfer of substantially all of the Debtors' assets, as there will be no management necessary. With respect to feasibility, the Court finds that the Settlement is likely more feasible than the entities liquidating because the estate does not have sufficient assets to fund the litigation necessary to pursue the claims and achieve substantial recoveries. In light of the substantial administrative claims in this case, it is problematic for any chapter 7 trustee to pursue such claims absent a carve-out for the estate. The Settlement provides for such a carve-out. Under the Settlement, the liquidating trust will receive the resources of not only the assets transferred from the Debtors, but also the resources and in-kind contributions from the other Settlement Proponents. For example, by assigning to the liquidating trust its claim against Griffin, Passumpsic is essentially making a contribution in-kind of its work done to date on the D&O claims.

Thus, the Court finds that having gone through the protections afforded to creditors in a confirmation process, the creditors in this case have had the functional equivalent to a confirmation process in this case under this procedure. The only creditors and/or parties in

interest who have chosen to show up or object are those parties who appeared at the Final Hearing, who were the parties present at the Preliminary Hearing.  For the reasons set forth on the record at the hearing on September 19, 2013, and in this memorandum opinion, the Court approves the Settlement as set forth in the Motion and the Settlement Disclosure Supplement, having deemed it a transfer pursuant to 11 U.S.C. § 363.

**IV.  CONCLUSION**

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.

Date:   September 25, 2013              /s/ J. Michael Deasy
                                        J. Michael Deasy
                                        Bankruptcy Judge