UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re:<br>Isaacson Steel, Inc.,<br>　　　Debtor | Chapter 11<br>Case No. 11-12415-JMD |
| In re:<br>Isaacson Structural Steel, Inc.,<br>　　　Debtor | Chapter 11<br>Case No. 11-12416-JMD<br>Jointly Administered |

**UNITED STATES TRUSTEE'S MOTION TO RECONSIDER ORDER
APPROVING GLOBAL SETTLEMENT AGREEMENT AND STIPULATION**

To the Honorable J. Michael Deasy, United States Bankruptcy Judge:

Pursuant to 28 U.S.C. § 586, 11 U.S.C. § 107, and Fed. R. Bankr. Proc. 9024, William K. Harrington, the United States Trustee for Region 1 ("**United States Trustee**"), respectfully moves for reconsideration of the Court's September 25, 2013 Order ("**September 25 Order**") approving the "Global Compromise and Settlement Disclosure Supplement" filed on August 30, 2013 [Court Docket No. 1146] also referred to in the Notice of Hearing on said Compromise as the "Joint Motion for Interim Protective Order and Final Order Approving Global Settlement [Court Docket No. 1116]."   In support of this Motion, the United States Trustee respectfully submits:

## I.　　PRELIMINARY STATEMENT

The United States Trustee respectfully moves for reconsideration of the Court's September 25, 2013 Order so that the Court and parties may consider significant legal issues not previously addressed in approving the Global Settlement Agreement.  The Global Settlement Agreement, as approved, results in the irrevocable transfer of the Debtors' chapter 5 actions to a trust that likely lacks legal standing to pursue them, nullifying or unjustifiably jeopardizing any recovery on those claims.  These claims are unique to a trustee (debtor-in-possession) in bankruptcy and arguably may

only be assigned to "a representative of the estate" under a plan pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code.  Further, the transfer of the Debtors' assets - estate property - outside the bankruptcy estate to a non-debtor third party and potentially beyond the jurisdiction of the Court, without any mechanism to return the proceeds of the causes of action - estate property - to the estate for distribution, renders the Debtors with no means to effectuate a plan.  Though no plan may be feasible here in light of the foregoing, because the Global Settlement Agreement would preempt or dictate the terms of the Debtors' chapter 11 plan, the provisions of the Agreement exceed the scope of 11 U.S.C. § 363(b) and may not be approved outside the plan confirmation process.

## II.     PROCEDURAL STATUS

1. On June 22, 2011 ("**Petition Date**"), Isaacson Steel, Inc. and Isaacson Structural Steel, Inc. ("**Debtors**") filed skeletal voluntary chapter 11 petitions with the Court.  The Debtors' cases have not been substantively consolidated, but are being jointly administered by the Court.

2. On June 30, 2011, the United States Trustee appointed an Official Committee of Unsecured Creditors ("**Committee**") in the above-captioned cases consisting of five members: The Eli Isaacson Family Trust; United Steel Erectors, Inc.; Charles Leonard Construction, Inc.; James F. Stearns Co., Inc.; and Namasco Corporation.

3. The Debtors are not currently operating.  Substantially all of the Debtors' tangible assets have been sold.  Upon information and belief, the remaining assets generally consist of accounts receivable, chapter 5 actions against third parties, and interests in a directors' and officers' policy ("**D&O Policy**").

4. On March 29, 2013, the United States Trustee filed a Motion for Entry of Order Converting Cases to Chapter 7 ("**Motion to Convert**"), asserting that the Debtors' officers and directors have essentially abandoned their responsibilities as fiduciaries and that a void exists in the management of the Debtors' estates.  The United States Trustee contends that the Debtors have

failed to demonstrate any meaningful progress towards the successful completion of this case, and that the cases should be converted to chapter 7 so that a disinterested trustee may investigate and prosecute claims.

5. In response to the United States Trustee's Motion to Convert, the Debtors' professionals filed a series of adversary proceedings, including chapter 5 actions against creditors as well as the Debtors' present and/or former officers and directors, Arnold Hanson and Steven Griffin, and their spouses.

6. The chapter 5 claims seek the recovery of $6,460,000. The Debtors estimate the maximum recovery through the chapter 5 actions will be $1,750,000.

7. On August 9, 2013, the Official Committee of Unsecured Creditors filed a Motion to Seal and Approve Settlement Agreement purportedly on by or on behalf the Debtors, the Committee, the New Hampshire Business Finance Authority ("**BFA**"), Passumpsic Savings Bank ("**Passumpsic**") and Turner Construction, Inc. ("**Turner**")(collectively, the "**Settling Parties**"). The Settlement Agreement called for all of the Debtors' remaining assets to be transferred to three unnamed trustees who would liquidate the Debtors' remaining assets. The funds once collected would be disbursed pursuant to a fairly complicated carveout agreement with payments to the attorneys for handling the D & O claims and chapter 5 actions, and to certain secured and chapter 11 administrative creditors, with the possibility of up to $300,000 being "gifted" to unsecured creditors.

8. On August 22, 2013, after hearing the objections of the United States Trustee, officer and creditor Steven Griffin, and interested parties D.J. Driscoll & Company, PLLC and David Driscoll, CPA, the Court indicated it would not hear the Global Settlement unless all creditors and interested parties, including administrative creditors, received notice of a hearing with an opportunity to object to the Global Settlement, along with a "settlement document disclosure" to

3

afford creditors and interested parties with additional information in support of the settlement.

9. On August 30, 2013, the Debtors filed the "Global Compromise and Settlement Disclosure Supplement" along with the (redacted) "Global Settlement Agreement and Stipulation." The document did not bear the signature of either the Debtors or their counsel of record, William Gannon, Esq.

10. The day before the hearing on the Global Settlement Agreement, on September 18, 2013, the Debtors filed a plan and disclosure statement, along with a motion for a combined hearing. The Debtors later filed an amended plan ("**Plan**") and amended disclosure statement ("**Disclosure Statement**"). A hearing on the Debtors' Amended Plan and Amended Disclosure Statement has been scheduled for October 28, 2013.

11. On September 19, 2013, after hearing the objections of the United States Trustee, officer and creditor Steven Griffin, and interested parties D.J. Driscoll & Company, PLLC and David Driscoll, CPA, the Court approved the Global Settlement and ordered that the parties submit a proposed order by September 24, 2013.

12. The United States Trustee notified counsel to the Debtors and the Settling Parties that he could not assent to the proposed order as circulated, and also raised for the Debtors' consideration the issue of the liquidating trustees' standing to pursue the chapter 5 actions being transferred. The United States Trustee filed an objection (Court Docket No. 1180) to the proposed order citing *Fleet Nat'l Bank v. Doorcrafters (In re North Atlantic Millwork Corp.)*, 155 B.R. 271, 281 (Bankr. D. Mass. 1993)(holding that creditor lacked standing to pursue preference claim transferred outside of plan of reorganization).

13. On September 25, 2013, the Court issued its Memorandum Opinion and Order approving the Global Settlement Agreement (Court Docket Nos. 1185 and 1186).

4

### III. APPLICABLE LEGAL STANDARDS

14. Motions for reconsideration under Federal Rule of Civil Procedure 59(e), made applicable to these proceedings by Bankruptcy Rule 9024, "are entertained by courts if they seek to correct manifest errors of law of facts, present newly discovered evidence, or when there is an intervening change in the law." *D'Abre v. Dyke (In re Dyke)*, 2004 BNH 014, 016 (citing *Jorge Rivera Surillo & Co. v. Falconer Glass Indus., Inc.*, 37 F.3d 25, 29 (1st Cir.1994)). *See also Federal Deposit Ins. Corp.* v. *World Univ., Inc.*, 978 F. 2d 10, 16 (1st Cir. 1992).

### IV. ARGUMENT

**A. The Court Should Reconsider Its Order Approving the Global Settlement Agreement Because the Debtors May Not Transfer the Chapter 5 Claims Outside of a Plan of Reorganization.**

15. The United States Trustee respectfully moves for reconsideration of the Court's September 25, 2013 Order so that the Court and parties may consider significant legal issues regarding the liquidating trust's standing to prosecute the estates' chapter 5 claims not previously addressed in approving the Global Settlement Agreement. The Court's approval of the Global Settlement Agreement constitutes a manifest error of law warranting reconsideration under Bankruptcy Rule 9024, because it results in the irrevocable transfer of the Debtors' chapter 5 actions to a trust that may lack legal standing to pursue them, nullifying or unjustifiably jeopardizing any recovery on those claims.

16. As its Memorandum Opinion makes clear, the Court's ruling approving the Global Settlement Agreement was based on its understanding that, upon approval of the Settlement, all of the Debtors' causes of actions would be assigned to the liquidating trust ("**Liquidating Trust**") which would "serve as 'the vehicle for prosecution' of the Chapter 5 Claims and the D&O Claims." Memorandum Opinion, pp. 3-4. The Court's Order presupposes that the trustees of the Liquidating Trust ("**Liquidating Trustees**") have standing to prosecute the Debtors' causes of action, including

the chapter 5 claims which seek the recovery of $6,460,000, and which the Debtors value at $1,750,000. The Global Settlement Agreement is premised entirely upon two sources of recovery for distribution to creditors: a "maximum likely value" of $4,500,000 from the D & O claims and a "maximum likely value" of $1,750,000 from chapter 5 causes of actions:

**D&O Claims**

| | |
|---|---|
| Maximum Likely Value of D&O Claims | $ 4,500,000 |
| Secured Claims | |
| BFA | $ (1,250,000) |
| Competing Claims | |
| PSB | $(10,000,000) |
| Inframetals Moriarity | $3,500,00 |
| Value Available to Unsecured Creditors | $ 0 |

**Chapter 5 Causes of Action**

| | |
|---|---|
| Maximum Likely Value of Chapter 5 Causes of Action | $1,750,000 |
| Super-Priority Claims | $(1,000,000) |
| Administrative Claims | |
| Estate Professionals | $375,000[4] |
| Turner | $(2,362,165) |

---

[4] Assumes the BFA has been paid in full from the proceeds of the D&O Claims and that the Estate Professionals have been paid in full from distributions to super-priority claims.
W:\Clients\ISSI\BANKRUPTCY\DRAFTS\00041007.DOC                                                                                                       3

Global Settlement Agreement, Court Docket No. 1146, at p. 3.

  17. The Court cites in its Order the arguments made at the hearing "about the need for the Settlement in order to achieve a recovery for creditors by getting all of the litigation into one place with a streamlined oversight and management process;" *id.* at p. 4; and the Debtors' "offer of proof that the Settlement would effectuate the transfer of substantially all of the Debtors' assets, and after the transfer the Debtors' responsibilities would be only to pay quarterly fees to the UST and to file monthly operating reports with the Court and tax returns with the state and the Internal Revenue Service." *Id.* at p. 6. The Court found "that based on the record and the Proponents'

arguments, it is in the best interests of the estates and creditors to pursue mediation in a timely fashion and to avoid substantial delay and additional expenses in the litigation of the Chapter 5 Actions and the D&O Claims." *Id.* at p. 12.

18.     The Debtors and the Settling Parties also presumed that the Liquidating Trustees would have standing to pursue, and would immediately undertake prosecution of, the chapter 5 actions upon the Court's approval of the Settlement Agreement.  However, the Debtor's disclosures in this regard were misleading because they failed to advise the Court, creditors and other parties in interest of the Liquidating Trust's likely lack of standing to prosecute such claims, nullifying or unjustifiably jeopardizing any recovery on those claims.  The Debtors described the effect of the approval of the Settlement as follows:

> **C.     Settlement Impact on Plan Confirmation and Certain Creditors.**
>
> **1.**     Upon Court approval of the Settlement, the Liquidating Trust will be established immediately by the execution of a document in substantially the form as that attached as <u>Exhibit B</u>.  PSB will then assign and transfer to the Liquidating Trust its D&O Claim,[5] which is currently scheduled for trial in October 2013, in exchange for a release of the Debtor's pending lawsuit against PSB.[6]  Debtor will assign to the Liquidating Trust (i) all of its D&O Claims,[7] (ii) the Chapter 5 Actions,[8] and (iii) its rights/claims against the Middletown School District and any other entities (together, the "Other Actions")[9] and (iv) all of its other property, exclusive of cash necessary to pay the Debtor's accountant and any federal income tax liability.  BFA by way of reduction of its first priority secured claim in the proceeds of the DO Claims will assign and transfer to the Liquidating Trust $50,000 of recoveries that would otherwise be paid to BFA.[10]
>
> **2.**     The Liquidating Trust will be the vehicle for prosecution of the Chapter 5 Causes of Action and the DO Claims.  It will be governed by three (3) trustees (the "Trustees"), as appointed by PSB, BFA, and the Committee, with decisions to be made by Majority Vote.  The Trustees will employ Attorneys Peter G. Callaghan, George J. Marcus, and William S. Gannon to prosecute the litigation of the D&O Claims, and will employ Attorneys James LaMontagne and Peter Tamposi to continue to prosecute the Chapter 5 Actions.  The Trustees themselves will serve without compensation, but will be reimbursed for out-of-pocket costs incurred in their service on behalf of the Liquidating Trust.  Settlement of any of the D&O Claims

Global Compromise and Settlement Disclosure Supplement (Court Docket No. 1146)("**Disclosure Supplement**"), pp. 4-5.  The terms of the Liquidating Trust Agreement attached to the Disclosure Supplement provide for the Debtors' causes of action to be transferred to the Liquidating Trust and for prosecution of the claims by the Liquidating Trustees:

7

1.2     Transfer of Assets and Rights to the Isaacson Steel Liquidating Trust and the Liquidating Trustees.

(a) Upon the entry of a final order of the Bankruptcy Court approving the GSA, and the appointment of the Liquidating Trustees, the Parties shall cause to be transferred, assigned and delivered to the Trust all of their right, title, and interest in and to the D&O Claims and the Chapter 5 Causes of Action (the "**Transfer**"). In addition, the Estate shall transfer to the Trust the sum of $_____ representing cash assets of the Estate derived from the prosecution by the Estate of Chapter 5 Causes of Action and other claims prior to the date of this Agreement (the "**Initial Cash Transfer**"). Each of such transfers shall be free and clear of all liens, claims, encumbrances and interests of any person or entity.

(b) Upon and after such Transfer, the Trustees shall administer, prosecute, liquidate and distribute the proceeds of the D&O Claims, and the Chapter 5 Causes of Action in accordance with the terms and conditions of this Agreement and the GSA.

(c) Upon and after such Transfer, the Parties shall (i) cause to be delivered to the Trustees any and all documents or other information in their possession, that is, or may be, useful in connection with the prosecution of the D&O Claims and the Chapter 5 Causes of Action (including those maintained in electronic format and original documents), and (ii) shall provide access at reasonable times and under reasonable conditions to the Trustees as to all employees or agents of the Parties with knowledge of matters relevant to the D&O Claims and the Chapter 5 Causes of Action.

1.3     Title to D&O Claims and Chapter 5 Causes of Action.

Upon the Transfer of the D&O Claims and the Chapter 5 Causes of Action, the Liquidating Trustees shall succeed to all of the Parties' right, title and interest in and to the D&O Claims and the Chapter 5 Causes of Action, and the Parties, separately or individually, shall have no any further interest in or with respect to the same.

Liquidating Trust Agreement, p. 3.

19.     After the hearing on the motion to approve the Global Settlement Agreement, the United States Trustee raised for the Debtors' consideration the issue of the Liquidating Trustees' standing to pursue the chapter 5 actions being transferred. The United States Trustee filed an Objection to the proposed Order (Court Docket No. 1180) approving the Global Settlement Agreement, citing *Fleet Nat'l Bank v. Doorcrafters (In re North Atlantic Millwork Corp.)*, 155 B.R. 271, 281 (Bankr. D. Mass. 1993)(holding that creditor lacked standing to pursue preference claims as the assignment of these claims could only be accomplished under Section 1123(b)(3)(B) in a plan of reorganization). The United States Trustee also raised issues that the proposed Order submitted

8

by the Debtors included relief not sought in the original Global Settlement Agreement.

20. Sections 547 and 550(a) of the Bankruptcy Code grant the bankruptcy trustee or debtor-in-possession the authority to bring actions to avoid preferential transfers and recover property transferred for the benefit of the estate. *See* 11 U.S.C. §§ 547 and 550. The power to bring such actions "is unique to the trustee (or debtor in possession) in bankruptcy, and may not be assigned." *Zahn v. Yucaipa Capital Fund*, 218 B.R. 656, 662 -663 (Bankr. D. R.I. 1998). *See also In re North Atlantic Millwork Corp.*, 155 B.R. at 281 ("section 547 of the Bankruptcy Code only gives trustees and debtors-in-possession…the power to avoid preferential transfers."); *In re Conley,* 159 B.R. 323, 324 (Bankr. D. Idaho 1993)("Sections 547 and 548 limit standing to assert actions under their respective sections to the trustee. The trustee is otherwise prohibited from selling or assigning his right to bring an avoidance action.").

21. Section 1123(b)(3)(B) sets forth a "limited exception" to this general rule, *In re Conley*, 159 B.R. at 324, permitting a chapter 11 plan to "provide for ... the retention and enforcement…by a representative of the estate appointed for such purpose, of any ... claim or interest" belonging to the debtor or the estate. 11 U.S.C. § 1123(b)(3)(B). Absent the appointment of another entity to bring preference actions in a plan of reorganization, there is no statutory authority for a third party to bring preference claims. *In re North Atlantic Millwork Corp.,* 155 B.R. at 281.

22. Neither a sale motion nor a motion to approve a settlement agreement are the functional equivalent of an adequate disclosure statement and plan for the purposes of 11 U.S.C. § 1123(b)(3)(B). *See North Atlantic Millworks,* 155 B.R. at 283. Section 1123(b)(3)(B) "simply does not apply in the absence of a Chapter 11 plan of reorganization." *Id.* at 283. Where "a Chapter 11 plan of reorganization was never submitted to the vote of all creditors, … it can hardly be said that failure to object to a sale is the same as an overwhelming endorsement of a plan of

reorganization." *Id. See also Consol. Pet Foods, Inc. v. Millard Refrigerated Servs., Inc. (In re S & D Foods, Inc.),* 110 B.R. 34, 36 (Bankr. D. Colo.1990)(debtor and purchaser lacked standing despite court's order approving sale); *Texas Gen. Petroleum Corp. v. Evans (In re Texas Gen. Petroleum Corp.),* 58 B.R. 357, 358 (Bankr. S.D. Tex. 1986)(trustee's assignment of avoidance powers ineffective to confer standing despite court approval of assignment).

23. The Global Settlement Agreement when read with the Disclosure Supplement and the Liquidating Trust Agreement impermissibly transfers the Debtors' remaining litigation claims to a Liquidating Trust controlled by the Liquidating Trustees, non-debtor entities, prior to confirmation. Outside of a plan of reorganization, however, the Debtors lack the authority to assign, and the Liquidating Trustees likely have no standing to pursue, the estates' chapter 5 actions. The Debtors do not address the issue of the Liquidating Trustees' standing in their Disclosure Supplement. The Disclosure was therefore inadequate to alert creditors to this potential risk, which could nullify or unjustifiably jeopardize any recovery on these claims. The approval of the Global Settlement Agreement needlessly jeopardizes any potential recovery under the chapter 5 causes of action by providing defendants with a potential affirmative defense to such claims.

**B. The Court Should Reconsider Its Order Because Approval of the Global Settlement Agreement Exceeds the Scope of the Court's Statutory Authority under 11 U.S.C. § 363(b).**

24. The Court committed a manifest error of law by deeming the motion to approve the Global Settlement Agreement to be a motion arising under 11 U.S.C. § 363(b) and by authorizing the Global Settlement Agreement under that provision of the Bankruptcy Code. The Global Settlement Agreement does not solely concern the use, sale or lease of estate property under 11 U.S.C. § 363(b), but is "in effect, a plan for liquidating the Debtors." Memorandum Opinion, p. 10. "Even the Settlement Proponents do not argue that the Settlement locks the Debtors into plan

10

provisions." *Id.* at p. 12.[1]  Because the Debtors seek authority not simply to transfer estate property, but to dictate the actual terms of a plan, the Global Settlement Agreement exceeds the scope of 11 U.S.C. § 363 and may not be approved outside the plan confirmation process.

25.     While the Court "deemed the Motion a request to transfer substantially all of the Debtors' assets pursuant to 11 U.S.C. § 363" (Memorandum Opinion, p. 2), 11 U.S.C. § 363 does not provide the Court with the statutory authority to "short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan *sub rosa* in connection with a sale of assets." *PBGC v. Braniff Airways Inc. (In re Braniff Airways Inc.)*, 700 F.2d 935, 940 (5th Cir. 1983).

26.     In *Braniff*, the Fifth Circuit rejected a proposed transfer agreement because, as here, the terms of agreement attempted to "dictat[e] some of the terms of any future reorganization plan." *Id.* The subsequent reorganization plan "would have to allocate the [proceeds of the sale] according to the terms of the [transfer] agreement or forfeit a valuable asset." *Id.* There is no question but that the Global Settlement Agreement would resolve the purported claims of certain of the Settling Parties, would determine the allocation and distribution of assets among the various creditor classes, and would irrevocably lock up the terms of the plan without a single vote being cast. "[S]uch an action is not comprised by the term 'use, sell, or lease,' and it thwarts the Code's carefully crafted scheme for creditor enfranchisement where plans of reorganization are concerned." *Braniff*, 700 F.2d at 940. *See also In re Westpoint Stevens Inc.*, 333 B.R. 30, 52 (S.D.N.Y. 2005), *rev'd on other grounds*, 600 F.3d 231 (2d Cir. 2010)("Where it is clear that the terms of a section 363(b) sale would preempt or dictate the terms of a Chapter 11 plan, the proposed sale is beyond the scope of

---

[1] The Settling Parties' execution of the Global Settlement Agreement prior to the drafting and filing of a disclosure statement could be a factor in any subsequent plan approval. Some courts have held that votes submitted by creditors who signed a post-petition lock-up agreement prior to approval and circulation of a disclosure statement in violation of 11 U.S.C. § 1125 should be designated under 11 U.S.C. § 1126(e). *See, e.g., In re NII Holdings, Inc.*, 288 B.R. 356 (Bankr. D. Del. 2002); and *In re Stations Holding Co. Inc.*, 2004 WL 1857116 (Bankr. D. Del. Aug. 18, 2004).

11

section 363(b) and should not be approved under that section."); and *Motorola Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 467 (2d Cir. 2007)(The "trustee is prohibited from such use, sale or lease if it would amount to a *sub rosa* plan of reorganization.").

27. The cases cited by the Court in approving the Global Settlement Agreement, *In re Pub. Serv. of N.H.*, 90 B.R. 575 (Bankr. D. N.H. 1988) and *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877 (Bankr. S.D. N.Y. 1990), do not hold the contrary.  Neither the *PSNH* Court nor the *Crowthers McCall Pattern* Court extended 11 U.S.C. § 363 to approve an agreement which would define the terms of a debtor's plan and dictate the distributions to be made to all creditors of the bankruptcy estate, as the Global Settlement Agreement does here.

28. Indeed, in reviewing the statutory and judicial standards applicable to the transaction in that case, the *Crowthers McCall Pattern* Court expressly stated that, "A transaction which would effect a lock-up of the terms of a plan will not be permitted."  *Crowthers McCall Pattern*, 114 B.R. at 885 (citing *Braniff*, 700 F.2d 935; *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 983 (Bankr. N.D. N.Y. 1988); and *PSNH*, 90 B.R. at 581)).  That Court went on to describe the types of transactions which may be approved as follows:  "where a transaction would free assets for distribution…and circumvent no Chapter 11 right, it may be approved as a necessary step toward, or building block of, a plan of reorganization."  *Id.* (citations omitted).

29. The Court should reconsider and vacate its September 25, 2013 Order because the Global Settlement Agreement goes far beyond the transfer of estate assets under 11 U.S.C. § 363 and beyond what the *PSNH* and *Crowthers McCall Pattern* cases cited with approval would permit.  As the Court acknowledges, the Global Settlement Agreement dictates the very terms of the Debtors' chapter 11 plan itself.  In entertaining the Debtors' Motion to approve the Global Settlement Agreement, the Court divested creditors of their right to due process as it denied their

right to vote on a plan of reorganization granted to them under 11 U.S.C. § 1129, while imposing the additional burden upon creditors to hire counsel to appear and object as their only means of challenging the "plan terms" dictated by the Agreement. The Agreement does not merely comprise a "necessary step toward, or building block of, a plan of reorganization;" *Crowthers McCall* Pattern, 114 B.R. at 885; but rather impermissibly "effect[s] a lock-up of the terms of a plan" in circumvention of the confirmation process established by the Bankruptcy Code. *Id.*

C. **The Court Should Reconsider Its Order Because Approval of the Global Settlement Agreement Deprives the Debtors of the Means to Effectuate a Plan.**

30. In approving the Global Settlement Agreement, the Court dismissed arguments that the Settlement provides for the improper appointment of a trustee, finding instead that the documents establishing the Liquidating Trust "discuss the management of an entity that will be acquiring the assets of the Debtors, not the management of the Debtors themselves." Memorandum Opinion, p. 7 n.1. The Court construed the motion as a request to transfer substantially all of the Debtors' assets to the Liquidating Trust, a non-Debtor entity.

31. The Court committed a manifest error of law in approving the Global Settlement Agreement because the transfer of the Debtors' assets outside of the estate will deprive the Debtors of the means to effectuate a plan. *See Rosenberg Real Estate Equity Fund IIII v. Air Beds, Inc. (In re Air Beds, Inc.)*, 92 B.R. 419, 423 (9th Cir. BAP 1988)("In a liquidating Chapter 11 where the debtor has ceased operations … ordinarily all property will be necessary for an effective reorganization...If distribution of assets occurs before confirmation, there will exist no means by which a plan may be implemented, in contravention of 11 U.S.C. § 1123(a)(5).")(citing *In re Conroe Forge & Mfg. Corp.*, 82 B.R. 781, 785 (Bankr. W.D. Pa. 1988)). Although deemed by the Court to be a motion to sell, the Debtors have not received any funds in exchange for the transfer of their remaining assets to the Liquidating Trustees. Thus, upon the transfer of the Debtors' assets to

the Trust, there will be no remaining property for the Debtors to distribute under a plan.[2] In its Opinion, the Court found that significantly all of the Debtor's remaining assets were irrevocably transferred to a non-debtor third party. Thus, it is unclear as to what, if any, jurisdiction the Court has over such assets post-transfer. Once transferred, the Bankruptcy Court will no longer have jurisdiction over the assets, which cease to be estate property.

32. While the Debtors indicate that the Settling Parties intend to "create a pool of funds for Unsecured Creditors" (Disclosure Supplement, p. 2) premised on "significant net recoveries from the prosecution of the D&O claims and the Chapter 5 Actions" (Disclosure Supplement, p. 5), the Global Settlement Agreement itself provides no mechanism for the proceeds of the D&O claims and chapter 5 actions to be transferred back to the estate or distributed to creditors. Moreover, it is unclear whether the Court retains jurisdiction over the assets post-transfer. *See e.g. In re Hall's Motor Transit Co.,* 889 F.2d 520, 522 (3d Cir.1989)("The bankruptcy court's jurisdiction does not follow the property, but rather, it lapses when the property leaves the debtor's estate."); and *Saul Ewing Remick & Saul v. Provident Sav. Bank,* 190 B.R. 771, 776 (D. Del. 1996)("[A] court has 'related to' jurisdiction over property only when the property is part of the bankruptcy estate."). The approval of the Global Settlement Agreement thus leaves the Debtors with no means of implementing a plan.

WHEREFORE, the United States Trustee respectfully requests that the Court:

    a.    reconsider and/or vacate its September 25, 2013 Order approving the Global Settlement Agreement; and

---

[2] The execution and approval of the Global Settlement Agreement also renders uncertain the Debtors' ability to obtain sufficient votes to confirm the plan. *See, e.g., In re NII Holdings, Inc.*, 288 B.R. 356 (Bankr. D. Del. 2002)(court designated votes solicited in violation of 11 U.S.C. § 1125(b)); and *In re Stations Holding Co. Inc.*, 2004 WL 1857116 (Bankr. D. Del. Aug. 18, 2004)(court designated votes of parties to lock-up agreements solicited in violation of 11 U.S.C. § 1125(b)).

  b. grant such further relief as may be just.

           Respectfully submitted,

           WILLIAM K. HARRINGTON,
           UNITED STATES TRUSTEE


        By: /s/ Geraldine Karonis
           Geraldine Karonis BNH #01853
           Assistant United States Trustee
           Ann Marie Dirsa BNH# 06121
           Office of the United States Trustee
           1000 Elm Street, Suite 605
           Manchester, NH 03101
           (603) 666-7908
Dated: October 9, 2013


## CERTIFICATE OF SERVICE

 I hereby certify that on this date, I caused to be served a copy of the foregoing Motion to Reconsider Order Approving Global Settlement Agreement and Stipulation by CM/ECF to:

 Christopher J. Allwarden
 Tawny L. Alvarez
 William J. Amann
 David A. Anderson
 David P. Azarian
 Charles R. Bennett, Jr.
 Fred W. Bopp, III
 Wanda Borges
 David R. Chenelle
 Mark P. Cornell
 Eleanor Wm Dahar
 Edward C. Dial, Jr.
 Gina A. Fonte
 Edmond J. Ford
 Joseph A. Foster
 Leonard A. Frisoli
 William S. Gannon
 Irvin D. Gordon
 David C. Green
 Jamie N. Hage
 John R. Harrington
 Kristen S. Harris
 Christopher D. Hawkins
 Honor S. Heath

Peter G. Hermes
D. Ethan Jeffrey
Matthew R. Johnson
Holly Kilibarda
James S. LaMontagne
Richard L. Levine
Mickey Long
Daniel P. Luker
Lizabeth M. MacDonald
George J. Marcus
Joshua E. Menard
Nancy Michels
Gregory A. Moffett
Dennis L. Morgan
Deborah A. Notinger
Steven M. Notinger
Kelly L. Ovitt Puc
Cori Phillips Palmer
William B. Pribis
Daniel C. Proctor
Douglas B. Rosner
Peter C.L. Roth
Meyer Simon
Daniel W. Sklar
Jonathan M. Starble
Rodney L. Stark
Ryan D. Sullivan
Peter N. Tamposi
Lisa Snow Wade
Jack S. White

/s/ Geraldine Karonis
Geraldine Karonis

Dated: October 9, 2013