UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re:<br>Isaacson Steel, Inc.,<br>    Debtor | Chapter 11<br>Case No. 11-12415-JMD |
| In re:<br>Isaacson Structural Steel, Inc.,<br>    Debtor | Chapter 11<br>Case No. 11-12416-JMD<br>Jointly Administered |

**Hrg: 10/28/13 at 9:00 a.m.**

**UNITED STATES TRUSTEE'S OBJECTION TO THE DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT DATED SEPTEMBER 25, 2013**

To the Honorable J. Michael Deasy, United States Bankruptcy Judge:

Pursuant to 28 U.S.C. § 586(a)(3)(B) and 11 U.S.C. § 1125, William K. Harrington, the United States Trustee for Region 1 ("**United States Trustee**"), objects to the Adequacy of the Debtors' First Amended Disclosure Statement Dated September 25, 2013 Pertaining to the First Amended Joint Plan of Reorganization of Even Date ("**Disclosure Statement**") filed by Isaacson Steel, Inc. and Isaacson Structural Steel, Inc. ("**Debtors**") in support of the First Amended Joint Plan of Reorganization for Isaacson Steel, Inc., and Isaacson Structural Steel, Inc. Dated September 25, 2013 ("**Plan**") as follows:

### I. PRELIMINARY STATEMENT

The United States Trustee objects to the approval of the adequacy of the Debtors' Disclosure Statement under 11 U.S.C. § 1125 on the grounds that the Disclosure Statement fails to provide adequate information and, as currently drafted, is misleading to creditors. The Debtors fail to address significant legal issues in their Disclosure Statement regarding the Debtors' ability to effectuate a plan in light of the transfer of the Debtors' chapter 5 actions and D&O claims, the

Debtors' sole remaining assets, outside the bankruptcy estate to a non-debtor third party and potentially beyond the jurisdiction of the Court, without any mechanism to return the proceeds of the causes of action to the estate for distribution.

Indeed, the Disclosure Statement fails to properly acknowledge that the Court's approval of the Global Settlement Agreement resulted in the immediate transfer of substantially all of the Debtors' remaining assets to the Liquidating Trust, a non-debtor third party. As this Court noted in its Memorandum Opinion dated September 25, 2013 "the Debtors made an offer of proof that the Settlement would effectuate the transfer of substantially all of the Debtors' assets, and after the transfer, the Debtors' responsibilities would be only to pay quarterly fees to the UST, to file monthly operating reports with the Court and tax returns with the state and Internal Revenue Service."

The Plan before the Court appears to contain provisions which call upon the Debtors to do far more than file operating reports and tax returns, and pay quarterly fees. The proposed Plan contains provisions which govern the payment and subordination of claims, create the liquidating trust, release claims and causes of action, and interpret contractual provisions in insurance policies. In last two days the Debtors filed a Motion to Modify the Plan in an apparent attempt to solve the problems created by transfer of the assets pursuant to the Order approving the Global Settlement Agreement. Now that the assets have already been transferred to the Liquidating Trust by the Court's Order, it is not clear what jurisdiction the Court has over the transferred assets. In light of the same, the Debtors' Disclosure Statement should be denied approval.

In addition to these issues, the United States Trustee notes that the Debtors' Plan also causes a *de facto* substantive consolidation of the two estates without any discussion whatsoever. Unsecured creditors are not told when they can receive the *de minimis* projected maximum dividend of 1.8%, when, if ever, or from whom. Moreover, neither the Disclosure Statement nor the Plan

addresses how the payment of chapter 11 administrative tax claims and pre-petition tax claims asserted against the estates will be made and when.

## II. PROCEDURAL STATUS

1. On June 22, 2011 ("**Petition Date**"), Isaacson Steel, Inc. and Isaacson Structural Steel, Inc. ("**Debtors**") filed skeletal voluntary chapter 11 petitions with the Court. The Debtors' cases have not been substantively consolidated, but are being jointly administered by the Court.

2. On June 30, 2011, the United States Trustee appointed an Official Committee of Unsecured Creditors ("**Committee**") in the above-captioned cases consisting of five members: The Eli Isaacson Family Trust; United Steel Erectors, Inc.; Charles Leonard Construction, Inc.; James F. Stearns Co., Inc.; and Namasco Corporation.

3. The Debtors are not currently operating. Substantially all of the Debtors' tangible assets have been sold. Upon information and belief, the remaining assets generally consist of accounts receivable, chapter 5 actions against third parties, and interests in a directors' and officers' policy ("**D&O Policy**").

4. On March 29, 2013, the United States Trustee filed a Motion for Entry of Order Converting Cases to Chapter 7 ("**Motion to Convert**"), asserting that the Debtors' officers and directors have essentially abandoned their responsibilities as fiduciaries and that a void exists in the management of the Debtors' estates. The United States Trustee alleged that the Debtors have failed to demonstrate any meaningful progress towards the successful completion of this case, and that the cases should be converted to chapter 7 so that a disinterested trustee may investigate and prosecute claims. That Motion remains pending.

5. In response to the United States Trustee's Motion to Convert, the Debtors' professionals filed a series of adversary proceedings, including chapter 5 actions against creditors as

3

well as the Debtors' present and/or former officers and directors, Arnold Hanson and Steven Griffin, and their spouses.

6. The chapter 5 claims seek the recovery of $6,460,000. The Debtors estimate the maximum recovery through the chapter 5 actions will be $1,750,000.

7. On August 9, 2013, the Official Committee of Unsecured Creditors filed a Motion to Seal and Approve Settlement Agreement purportedly on by or on behalf the Debtors, the Committee, the New Hampshire Business Finance Authority ("**BFA**"), Passumpsic Savings Bank ("**Passumpsic**") and Turner Construction, Inc. ("**Turner**")(collectively, the "**Settling Parties**"). The Settlement Agreement called for all of the Debtors' remaining assets to be transferred to three unnamed trustees who would liquidate the Debtors' remaining assets.

8. On August 22, 2013, after hearing the objections of the United States Trustee, officer and creditor Steven Griffin, and interested parties D.J. Driscoll & Company, PLLC and David Driscoll, CPA, the Court indicated it would not hear the Global Settlement unless all creditors and interested parties, including administrative creditors, received notice of a hearing with an opportunity to object to the Global Settlement, along with a "settlement document disclosure" to afford creditors and interested parties with additional information in support of the settlement.

9. On August 30, 2013, the Debtors filed the "Global Compromise and Settlement Disclosure Supplement" along with the (redacted) "Global Settlement Agreement and Stipulation." The document did not bear the signature of either the Debtors or their counsel of record, William Gannon, Esq.

10. The day before the hearing on the Global Settlement Agreement, on September 18, 2013, the Debtors filed a plan and disclosure statement, along with a motion for a combined hearing thereon.

11. On September 19, 2013, after hearing the objections of the United States Trustee,

4

officer and creditor Steven Griffin, and interested parties D.J. Driscoll & Company, PLLC and David Driscoll, CPA, the Court indicated it would approve the Global Settlement, and ordered that the parties submit a proposed order approving same by September 24, 2013.

12. The Debtors submitted a proposed Order approving the Global Settlement to which an Objection was filed by the United States Trustee. The Debtors also filed a First Amended Joint Plan of Reorganization and First Amended Disclosure Statement on September 25, 2013 (Court Docket Nos. 1183 and 1184).

13. On September 25, 2013, the Court issued its Memorandum Opinion and Order approving the Global Settlement Agreement (Court Docket Nos. 1185 and 1186).

14. On October 9, 2013 the United States Trustee filed an Ex Parte Motion to Reconsider the Court's Order approving the Global Settlement Agreement. *See* Court Docket No. 1221. That matter remains pending.

15. On October 18, 2013, the Debtors filed a Motion to Modify the First Amended Plan of Reorganization. The Motion's title indicated it was assented to by the United States Trustee even though the United States Trustee had never seen the document or been asked to assent to same. After the United States Trustee advised Debtors' counsel that a motion to strike the pleading would be filed, Debtors' counsel withdrew the Motion to Modify and refiled same without the reference to the United States Trustee's assent. *See* Court Docket Nos. 1224, 1225, 1226.

### III. APPLICABLE LEGAL STANDARDS

16. Pursuant to 11 U.S.C. § 1125(b), a plan proponent may not solicit an acceptance or rejection of a chapter 11 plan until he transmits to claim holders a disclosure statement which contains "adequate information." 11 U.S.C. § 1125(b). Adequate information is defined as

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of

5

claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan….

11 U.S.C. § 1125(a)(1).  *See also In re Ferretti*, 128 B.R. 16 (Bankr. D.N.H. 1991).

### IV.  ARGUMENT

**A.  The Disclosure Statement Fails to Adequately Address the Potential Effect the Transfer of the Debtors' Remaining Assets Outside of the Estate Will Have on the Debtors' Ability to Implement the Plan.**

17.  Neither the Debtors' Disclosure Statement nor Plan bear the signature of an officer or director of either of the Debtors.  It is not clear that the Debtors' officers or directors have authorized the filing of these documents.

18.  In any event, upon approval of the Global Settlement Agreement on September 25, 2013, the Debtors' sole remaining assets were assigned to a liquidating trust ("**Liquidating Trust**"), an entity controlled and managed by three non-Debtor trustees ("**Liquidating Trustees**").  The terms of the Liquidating Trust Agreement provide that the Debtors' causes of action will be prosecuted by the Liquidating Trustees, and that the Debtors "shall have no [] further interest in or with respect to the same":

> 1.2  **Transfer of Assets and Rights to the Isaacson Steel Liquidating Trust and the Liquidating Trustees.**
>
> (a) Upon the entry of a final order of the Bankruptcy Court approving the GSA, and the appointment of the Liquidating Trustees, the Parties shall cause to be transferred, assigned and delivered to the Trust all of their right, title, and interest in and to the D&O Claims and the Chapter 5 Causes of Action (the "**Transfer**"). In addition, the Estate shall transfer to the Trust the sum of $_____ representing cash assets of the Estate derived from the prosecution by the Estate of Chapter 5 Causes of Action and other claims prior to the date of this Agreement (the "**Initial Cash Transfer**"). Each of such transfers shall be free and clear of all liens, claims, encumbrances and interests of any person or entity.
>
> (b) Upon and after such Transfer, the Trustees shall administer, prosecute, liquidate and distribute the proceeds of the D&O Claims, and the Chapter 5 Causes of Action in accordance with the terms and conditions of this Agreement and the GSA.
>
> (c) Upon and after such Transfer, the Parties shall (i) cause to be delivered to the Trustees any and all documents or other information in their possession, that is, or may be, useful in connection with the prosecution of the D&O Claims and the Chapter 5 Causes of Action (including those maintained in electronic format and original documents). and (ii) shall provide access at reasonable times and under reasonable conditions to the Trustees as to all employees or agents of the Parties with knowledge of matters relevant to the D&O Claims and the Chapter 5 Causes of Action.
>
> 1.3  **Title to D&O Claims and Chapter 5 Causes of Action.**
>
> Upon the Transfer of the D&O Claims and the Chapter 5 Causes of Action, the Liquidating Trustees shall succeed to all of the Parties' right, title and interest in and to the D&O Claims and the Chapter 5 Causes of Action, and the Parties, separately or individually, shall have no any further interest in or with respect to the same.

Liquidating Trust Agreement, p. 3.  The Debtors did not receive any funds in exchange for the transfer of their remaining assets to the Liquidating Trustees.

19. The Disclosure Statement fails to advise creditors that the assets upon which the entire Plan is premised have already been conveyed out to a non-Debtor Liquidating Trust. The Disclosure Statement does not adequately address the legal impact the transfer of the Debtors' assets has on the Debtors' ability to effectuate a plan. While the Plan is premised upon the Debtors' belief that "[i[n essence, the Trust will become responsible for the implementation of the Plan," (Disclosure Statement, p. 8), the Liquidating Trustees likely have no standing to pursue the Debtors' chapter 5 actions.[1] Moreover, the Global Settlement Agreement itself provides no mechanism for the proceeds of the D&O claims and chapter 5 actions to be transferred back to the estate or distributed to creditors. Thus, there remains no property for the Debtors to distribute under a plan. It is unclear what, if any, jurisdiction the Court has over such assets, which ceased to be estate property post-transfer. *See e.g. In re Hall's Motor Transit Co.,* 889 F.2d 520, 522 (3d Cir. 1989)("The bankruptcy court's jurisdiction does not follow the property, but rather, it lapses when the property leaves the debtor's estate."); and *Saul Ewing Remick & Saul v. Provident Sav. Bank,* 190 B.R. 771, 776 (D. Del. 1996)("[A] court has 'related to' jurisdiction over property only when the property is part of the bankruptcy estate.").

20. Because the Debtors do not address these significant legal issues in the Disclosure Statement, the Disclosure Statement fails to provide information of a kind and in sufficient detail to

---

[1] The power to bring actions to avoid preferential transfers and recover property transferred for the benefit of the estate under 11 U.S.C. §§ 547 and 550 "is unique to the trustee (or debtor in possession) in bankruptcy, and may not be assigned." *Zahn v. Yucaipa Capital Fund*, 218 B.R. 656, 662 -663 (Bankr. D. R.I. 1998). *See also In re North Atlantic Millwork Corp.*, 155 B.R. at 281 ("section 547 of the Bankruptcy Code only gives trustees and debtors-in-possession…the power to avoid preferential transfers."); *In re Conley,* 159 B.R. 323, 324 (Bankr. D. Idaho 1993)("Sections 547 and 548 limit standing to assert actions under their respective sections to the trustee. The trustee is otherwise prohibited from selling or assigning his right to bring an avoidance action."); *Consol. Pet Foods, Inc. v. Millard Refrigerated Servs., Inc. (In re S & D Foods, Inc.),* 110 B.R. 34, 36 (Bankr. D. Colo.1990)(debtor and purchaser lacked standing despite court's order approving sale); and *Texas Gen. Petroleum Corp. v. Evans (In re Texas Gen. Petroleum Corp.),* 58 B.R. 357, 358 (Bankr. S.D. Tex. 1986)(trustee's assignment of avoidance powers ineffective to confer standing despite court approval of assignment).

permit creditors to make an informed judgment about the Plan, as required by 11 U.S.C. § 1125.

**B.    The Debtors' Disclosure Statement and Plan Effect a *De Facto* Substantive Consolidation of the Cases Without Any Discussion Whatsoever.**

21.    As the Debtors note fairly prominently, the Debtors have kept separate books of account and financial records during the case. "No basis existed for substantive consolidation – treating the Debtors as one – in the Debtor's opinions." Disclosure Statement at p. 11. Assuming *arguendo* that the Debtors have any remaining assets with which to formulate a Plan, the assets are held separately by each Debtor's estate. There is no request in the Plan or Disclosure Statement for the substantive consolidation or merger of the two estates. There is no information provided to enable creditors to determine whether the merger or consolidation prejudices them. There is no disclosure of the assets held by each Debtor, and the liabilities asserted against each. Yet it's clear that the Plan treats the two cases as if they have already been consolidated, or are being substantively consolidated through the Plan. There is no disclosure of the tax consequences, if any, for the Debtors' estates if they were to be substantively consolidated.

**C.    The Debtors' Disclosure Statement Does Not Tell Unsecured Creditors What They Will Receive, From Whom, and When.**

22.    The Debtors' Plan provides for a maximum of $300,000 to be paid to unsecured creditors with allowed claims, with allowed claims excluding insider claims and any unsecured claims of BFA, Turner and Passumpsic Savings Bank. The Plan assumes the Debtors still own assets and that they have not been transferred to the Liquidating Trust. Nowhere do the Debtors advise the creditors what the maximum dividend unsecured creditors may expect, and when they may receive it, as this Court has stated:

> "A proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution."

*In re Ferretti*, 128 B.R. at 19. The United States Trustee estimates that the maximum dividend to creditors may be at best 1.8% ($300,000 divided by $15,800,000 of allowed claims excepting insider claims, Turner, BFA and PSB claims).

23. Moreover, neither the Plan nor the Disclosure Statement as filed tell the creditors who will serve as the three trustees of the Liquidating Trust.[2] Who will be signing any dividend check to creditors – the Liquidating Trustees or the Debtors? (The Plan says "cash payments made pursuant to the Plan" will be made by the means agreed to by "the Debtor" and the holder of the claims and in such manner as "the Debtor shall reasonably determine." *See* § 8.7 of Plan, at p. 11.) Creditors are not told if these unidentified trustees have any experience in serving in similar capacities, or whether they will be bonded. Creditors are not told that a maximum dividend of 1.8% could be made - if at all - years from now.

    **D.**     **The Debtors' Disclosure Statement May Mischaracterize the Claims of Some Creditors; Fails to Disclose That Some Creditors with Allowed Claims May Receive No Dividend; And Allows Some Claims That Arguably Should be Disallowed.**

24. Attached as Exhibit C to the Disclosure Statement is a Chart ("**the Chart**") of the claims purportedly asserted against the Debtors' estates. For reasons not known, the Chart characterizes *all* claims as disputed, unliquidated or contingent except the PSB claims, the BFA claims, the superpriority claims and the allowed and pending administrative claims. The Debtors' Schedules filed with this Court list few, if any, claims as disputed, unliquidated or disputed. To the extent the Chart mischaracterizes whether the claim is or will not be allowed, and therefore, ineligible to participate in voting or in distribution of a dividend, it is misleading.

---

[2] The Debtors filed a Motion to Modify Plan on October 18, 2013 and in a redlined version of the Trust, the three proposed trustees are identified. *See* Court Docket No. 1225.

25. The Chart includes as many as nine separate claims of the Commonwealth of Massachusetts Department of Revenue exceeding $200,000, and few, if any, are treated as allowed claims. The Debtors appear to concede that the Commonwealth of Massachusetts may have a post petition sales tax claim of $520,000 as well as a pre petition sales tax claims attributable to the Liberty Mutual Project. Disclosure Statement, p. 22. The Debtors state that the sales tax claims asserted by the Department of Revenue will be paid by Turner. Disclosure Statement, p. 7. Based upon the information in the Chart, it is not clear whether the Debtors' estates are accepting any responsibility for the allowed administrative or priority claims of the Commonwealth of Massachusetts. The Debtors should provide a worst-case scenario in the event these claims are allowed. How will these be paid, by whom and when?

26. The Debtors' Chart includes claims of the State of Vermont and the State of Maine as well but these claims also are not being paid in accordance with the Plan. The Debtors don't say whether these claims are merely disputed and if allowed will be paid, or whether these claims are being bypassed from the "Gift Pool", a Fund clearly earmarked solely for unsecured creditors.[3] The Debtors do indicate that Administrative and Priority Claims will be paid "in full upon the later of the Effective Date and the date which is thirty (30) days after the date upon which such Administrative Claims becomes an Allowed Administrative Claim." Disclosure Statement, p. 7. The Debtors further indicate that because they have no other funding, "any other Allowed Administrative or Priority Claims will have to be paid from the waterfall as well." *Id.* It is not at

---

[3] The carve-out "Gift Fund" provided for in the Plan is funded not just by secured creditors' claims but also by asserted (but as yet unfiled) administrative claims of Turner as well as the professionals. Thus, the facts of this case are distinct from those in the *SPM* case so often cited when carve-outs are discussed: *In re SPM Mfg. Corp.*, 984 F. 2d 1305 (1st Cir. 1993).

all apparent whether there are other chapter 11 administrative claims other than the professionals, Turner, and the Commonwealth of Massachusetts. The Debtors' most recently filed operating reports for the month of August, 2013 reflect no unpaid chapter 11 payables outstanding.

27. The Debtors do not indicate how much cash is on hand now to pay any of the administrative or priority claims asserted against the estate and whether the estate has sufficient funds on hand to pay the asserted administrative tax claims. All the Debtors say is that "the Debtor[] has very little cash on hand. The cash is earmarked to pay the fixed fees of Verdolino & Lowey for preparing and filing the Debtors' Federal and State Income Tax Returns and maintaining the Debtors' records…. Any remaining cash will be transferred to the Trust and used to pay or defray the costs of prosecuting the Causes of Action." Disclosure Statement, p. 16.

28. The Debtors' most recent operating reports filed for the month of August, 2013 show the following:

| Debtor | Aug. 2013 Cash Balances from Operating Report |
|---|---|
| Isaacson Steel, Inc. | $20,219 Citizens DIP Account |
| Isaacson Structural Steel, Inc. | $157,188 Citizens DIP Account |
| Isaacson Structural Steel, Inc. | $152,639 Orr & Reno Closing Escrow Account |

The Debtors should be required to disclose in the Disclosure Statement the total administrative claims pending against the estate and the amount of cash on hand. Creditors and interested parties should not have to review each and every pleading on the docket to learn this basic information.

29. The Debtors' Chart may omit treatment of some of the claims found on the Debtors' Schedule D as originally filed. Examples of creditors that appear to be omitted from the Chart are Capital Lease – Go West Equipment. The Plan also proposes to allow some secured claims that may or may not have established deficiency claims, such as the BMW Bank of North America claims exceeding $80,000 and Lexus Financial for over $38,000 for cars whose leases or loans were

11

assumed by insiders.   With respect to two BMWs and a GMC Acadia, those cars were the subject of a Debtors' Notice of Abandonment filed on April 18, 2012 wherein it was stated that the vehicle payments were to be taken over by insiders and/or employees of the Debtors.  *See* Court Paper 791.  The Debtors should disclose the basis for these creditors' claims to share in the unsecured dividend pool, such as it is – where the insiders have taken over the lease or loan payments and no deficiency claim has been established.

      E.      **The Debtors' Plan Misstates That the Debtors Will Receive a Discharge at Confirmation.**

30. Section 8.8 of the Debtors' Plan states that "the Debtor shall, as of the Confirmation Date, have the full benefit of the discharge provided by Bankruptcy Code Section 1141(d)…." Plan at p. 11.   This statement is legally incorrect.  Section 1141(d)(3) of Title 11 provides that a discharge is not available if –

"(A) the plan provides for the liquidation of all or substantially of the property of the estate;

(B) the debtor does not engage in business after consummation of the plan; and

(C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title."

11 U.S.C. § 1141(d)(3).  These Debtors have already transferred all of their assets to the Liquidating Trust.  They acknowledge they are no longer in business.  Because they are each corporations, they are ineligible for a discharge in chapter 7 as a matter of law.  Therefore, these Debtors are ineligible for a discharge pursuant to the provisions of 11 U.S.C. § 1141(d)(3).

      F.      **The Debtors' Plan and Disclosure Statement are Inconsistent in their Treatment of Post Petition Claims.**

31. The Debtors' Disclosure Statement and Plan are inconsistent in terms of when chapter 11 administrative claims must be filed.  The Debtors' Disclosure Statement states on page 24 that professionals holding Administrative Claims must file a written Notice of Estimated

Administrative Claim at least 5 days before the Confirmation Hearing. The Plan provides that administrative claims shall be barred unless it is the subject of a proof of claim filed with the Bankruptcy Court on or before the Post-Petition Bar Date. On information and belief there has been no Post Petition Claims Bar Date Set. Unless an administrative creditor was given notice of a bar date, it appears inequitable to enforce such a provision. Indeed, Turner has not filed an Administrative Claim but the Debtors recognize its administrative claim(s) as falling somewhere between $1.6 million and $2.6 million. *See* Court Docket No. 1184, p. 22.

### G. There are Material Discrepancies Between the Plan and Disclosure Statement in Terms of Responsibility for Post-Confirmation Actions.

32. The Debtors' Plan provides that the case will be closed "on Motion of the Debtor." Plan, § 8.13 at p. 12. The Plan assumes that objections to claims will be filed only by the Debtor. Plan, § 8.5 at p.10. The Disclosure Statement indicates the Debtors will "dissolve themselves in accordance with applicable state law" after confirmation. Disclosure Statement, Article XIV C at p. 21.[4] When there is an inconsistency between the two, the Plan states that it is the controlling document. Plan, § 8.29 at p. 13. Again, assuming the assets have not been irrevocably conveyed out of the estate, who will be responsible for filing objections to claims? Who will be responsible for determining the amount of and issuance of dividend checks? Who will be filing the post confirmation operating reports and paying the quarterly fees? Who will be responsible for preparing and filing the Application for Final Decree?

33. The Debtors' Plan and Disclosure Statement contain material discrepancies with respect to these basic provisions, and therefore the United States Trustee objects to the issuance of an Order determining the Debtors' Disclosure Statement to be adequate.

---

[4] According to the New Hampshire Secretary of State website, both Debtors were administratively dissolved on August 30, 2013. *See* https://www.sos.nh.gov/corporate/soskb/Corp.asp?349668

WHEREFORE, the United States Trustee respectfully requests that the Court deny approval of the Adequacy of the Debtors' Disclosure Statement, and grant such further relief as may be just.

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By:  /s/ Geraldine Karonis
Geraldine Karonis BNH #01853
Assistant United States Trustee
Ann Marie Dirsa BNH# 06121
Office of the United States Trustee
1000 Elm Street, Suite 605
Manchester, NH 03101
(603) 666-7908

Dated: October 21, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused to be served a copy of the foregoing Objection to Adequacy of Debtors' First Amended Disclosure Statement by CM/ECF to:

- Christopher J. Allwarden
- Tawny L. Alvarez
- William J. Amann
- David A. Anderson
- David P. Azarian
- Charles R. Bennett, Jr.
- Fred W. Bopp, III
- Wanda Borges
- David R. Chenelle
- Mark P. Cornell
- Eleanor Wm Dahar
- Edward C. Dial, Jr.
- Gina A. Fonte
- Edmond J. Ford
- Joseph A. Foster
- Leonard A. Frisoli
- William S. Gannon
- Irvin D. Gordon
- David C. Green
- Jamie N. Hage

John R. Harrington
Kristen S. Harris
Christopher D. Hawkins
Honor S. Heath
Peter G. Hermes
D. Ethan Jeffrey
Matthew R. Johnson
Holly Kilibarda
James S. LaMontagne
Richard L. Levine
Mickey Long
Daniel P. Luker
Lizabeth M. MacDonald
George J. Marcus
Joshua E. Menard
Nancy Michels
Gregory A. Moffett
Dennis L. Morgan
Stephen Murphy
Deborah A. Notinger
Steven M. Notinger
John O'Donnell
Kelly L. Ovitt Puc
Cori Phillips Palmer
William B. Pribis
Daniel C. Proctor
Douglas B. Rosner
Peter C.L. Roth
Meyer Simon
Daniel W. Sklar
Jonathan M. Starble
Rodney L. Stark
Ryan D. Sullivan
Peter N. Tamposi
Lisa Snow Wade
Jack S. White

                                /s/ Geraldine Karonis
                                Geraldine Karonis

Dated: October 21, 2013