UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| ISAACSON STEEL, INC. ) | Case No.: 11-12415-JMD |
| ISAACSON STRUCTURAL STEEL, INC. ) | Case No.: 11-12416-JMD |
| ) | |
| Debtors ) | Jointly Administered |
| ) | |

**OBJECTION BY COMMISSIONER OF MASSACHUSETTS DEPARTMENT OF REVENUE TO CONFIRMATION OF DEBTORS' PLAN OF REORGANIZATION**

TO THE HONORABLE J. MICHAEL DEASY, UNITED STATES BANKRUPTCY JUDGE:

NOW COMES Amy A. Pitter, as she is Commissioner of the Massachusetts Department of Revenue (hereinafter, "MDOR"), a creditor and party in interest in the above-captioned matters, and pursuant to, *inter alia*, the provisions of 11 U.S.C. §§ 1128 and 1129, and in accordance with Federal Rules of Bankruptcy Procedure Rule 3020, objects to the confirmation of the debtor's *First Amended Plan of Reorganization Dated September 25, 2013, as Modified October 18, 2013* (hereinafter, the "Plan"). In support thereof, MDOR states the following:

I.  PROCEDURAL BACKGROUND

1.  On June 22, 2011, the debtors, Isaacson Steel, Inc. and Isaacson Structural Steel, Inc. (hereinafter, the "Debtors"), each filed a voluntary petition

for relief under Chapter 11 of the United States Bankruptcy Code (the "Petition Date").

2.     Since the Order for Relief, the Debtors have continued to conduct the affairs of the estate as debtor-in-possession, and consequently it has held the powers and obligations of a trustee, except as otherwise expressly limited by the terms of the Bankruptcy Code.

3.     On August 9, 2013 the Official Committee of Unsecured Creditors (the "Committee") filed a Motion to Approve a Global Settlement Agreement ("GSA") by and between the Committee, the New Hampshire Business Finance Authority, Passumpic Savings Bank, and Turner Construction (collectively, the "Settling Parties").

4.     On September 25, 2013 the Debtors filed Debtors' First Amended Disclosure Statement ("Disclosure Statement") and First Amended Joint Plan of Reorganization.  The Court has set a hearing date on the adequacy of the Disclosure Statement and confirmation of the Plan for October 28, 2013 at 9:00 a.m.  The objection deadline pertaining to the plan is October 21, 2013, at 4:30 p.m.  Consequently, this objection is timely made.

5.     On October 18, 2013, the Debtors' filed a Motion to Modify Plan which included red-lined version of the Amended Plan entitled "First Amended Joint Plan for Reorganization for Isaacson Steel, Inc. and Isaacson Structural Steel, Inc,

as Modified October 18, 2013" (hereinafter the "Plan" for purposes of this Objection).

## II.    MDOR'S CLAIMS

6.    On August 11, 2011, MDOR filed a proof of claim in the priority unsecured amount of $94,587.41 and in the general unsecured amount of $4,926.68, which appears as Claim No. 41 in the claims register for the above-captioned case (the "MDOR Claim").  The claim consists of sales tax liabilities for the periods running from January 2011 through June 2011.

7.    On March 14, 2012, MDOR filed a claim for administrative post-petition taxes in the aggregate amount of $82,579.85 inclusive of the interest and penalties calculated through March 30, 2012 (the "MDOR Administrative Claim").  This claim consists of the tax, interest and penalties for filing but not paying any sales tax returns for the periods of July 2011 through December 2011; a corporate excise tax estimate, interest and penalties for the period ending October 2011 which the Debtor has not filed or paid the return.

8.    After the filing of the MDOR Administrative Claim, the Debtor failed to file and pay several tax returns, including:

*a) Corporate tax returns for the periods ending October 31, 2012;*

*b) witholding tax returns for the periods May 2012 and June 2012;*

*c) sales tax returns for the periods of February 2012 to Present.*

9. Assuming that these liabilities are still not paid (exclusive of accrued and assessed interest and penalties), MDOR soon intends to file an amended claim for these post-petition administrative taxes.

10. The unpaid tax and pre-petition interest portion of the MDOR Claim qualifies as a priority unsecured claim under Section 507(a)(8)(A)(i) of the Bankruptcy Code.

### III.  GROUNDS FOR OBJECTION

11. Under Section 1129(a) of the Bankruptcy Code, the court may confirm a Chapter 11 plan only if the Court finds that, *inter alia*, the plan complies with the applicable provisions of Title 11.

12. For the reasons set forth below, the Amended Plan does not meet these standards, and as such, the request for confirmation by the Court must be denied.

#### A. FAILURE TO FILE AND PAY POST-PETITION TAX RETURNS

13. As noted above, the Debtor has failed to file corporate tax returns for the periods ending October 31, 2012; witholding tax returns for the periods May 2012 and June 2012; and sales tax returns for the periods of February 2012 to Present.  Without these tax returns the MDOR is unable to provide a final amount for its administrative claim.  Furthermore the Debtor has failed to pay any of the post-petition taxes for which it has filed a return.

14. Post-petition taxes of the estate "shall be paid on or before the due date of the tax under applicable law, unless… payment of the tax is excused under a specific provision of title 11." 28 U.S.C. § 960(b).

15. The failure to timely file and pay post-petition taxes is also cause for dismissal or conversion of the case to chapter 7. 11 U.S.C. § 1112(b)(4)(I). *See, also* 11 U.S.C. § 521(j) (requiring the court to dismiss or convert case if the taxing authority requests it).

16. There is no specific provision in Title 11 that would excuse the Debtor from paying these post-petition taxes.

17. The Plan that the Debtor has proposed cannot be confirmed as the Debtor has failed to comply with the applicable provisions of the Bankruptcy Code, including those that require it to timely file and pay its post-petition taxes.

## B. FEASIBILITY UNDER SECTIONS 1129(a)(9)(C) and 1129(a)(9)(A)

18. If a plan does not provide for the payment in full of an allowed priority tax claim on or before the effective date of the plan, or if the taxing authority has not agreed to an alternative treatment, then Section 1129(a)(9)(C) of the Bankruptcy Code requires at a minimum that the plan provide the holder of the priority unsecured tax claim (or the secured tax claim) with:

regular installment payments in cash -

(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

      (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

      (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b))….

19.    The Bankruptcy Code's required condition for the confirmation of any plan under chapter 11 that the amount paid on an allowed priority tax claim must be of a value as of the effective date of its allowed amount includes the requirement that the allowed amount of a priority tax claim must also be paid interest (under the rate determined through Section 511) from the effective date, and not the date of allowance. Anything that provides the holder of the allowed priority tax claim less than that would not comply with Section 1129(a)(9)(C) of the Bankruptcy Code.

20.    Section 1129(a)(9)(A) of the Bankruptcy Code further requires that the holders of an administrative claim be paid in full with cash in the allowed amount of the administrative claim on the effective date. MDOR is a governmental unit which holds a claim for a tax incurred by the estate and consequently there is no requirement that MDOR file a request for its administrative claim to be allowed. 11 U.S.C. § 503(b)(1)(D). The MDOR Administrative Claim is currently an allowed administrative expense, as would be any amendment to it.

i.   **Failure to state method or timing of payment of MDOR's Claims**

21.   The Plan fails to adequately explain or provide for the payment of the MDOR's priority and administrative claims.

22.   The Plan incorporates the GSA and states that a liquidating trust containing all of the debtors' assets has been established pursuant to the GSA and that the "administration, use and distribution of the Trust Assets shall be governed by the GSA."  Plan, section 5.2.

23.   The Plan then goes on to state that:

" *Except as otherwise provided in the GSA*(emphasis added), allowed Administrative Claims shall be paid in full upon either the later of the Effective Date and the date which is thirty (30) days after the date upon which such Administrative Claim becomes an Allowed Administrative Claim.  In the alternative, an Allowed Administrative claim may be paid and satisfied in accordance with any agreement between the Debtors and the holder of such Allowed Administrative Claim"  (Plan, section 2.1).

24.   The GSA, in relevant part, states:

In consideration of the allowance of the Turner Administrative Claim and to the extent not already paid, Turner shall pay for the goods, services, and other claims, including allowed tax claims asserted by the Massachusetts Department of Revenue that comprise the Turner Administrative Claim…. (GSA ¶ 11)[1].

25.   This provision of the GSA is unclear but when reading this

---

[1] The Disclosure Statement and Global Compromise and Settlement Disclosure Supplement (filed 8/30/13 as Docket No. 1146) repeatedly mention the MDOR's administrative claim as $520,000.00.  The MDOR is unaware of the basis for this figure.  MDOR asserts it has claims against the debtors in the total amount of approximately $190,000.00 for pre-petition and post-petition obligations. These amounts may change when the Debtor files the missing tax returns noted in paragraph 8 of this Objection. As noted in paragraph 9 of this Objection the MDOR soon intends on filing an amended administrative tax claim in this case.

provision in conjunction with sections 2.1 and 5.2[2] of the Plan, MDOR infers that the Debtors' are proposing to have the MDOR claims paid in full by Turner Construction.

26. The GSA, Plan and Disclosure Statement do not provide the timing or method of payment of the MDOR claims.  Furthermore, given the MDOR was not a party to the GSA, it is unclear what recourse the MDOR would have if Turner fails to pay as agreed.  The Plan therefore, fails to adequately provide for the payment of its claims pursuant to 11 U.S.C. §§ 1129(a)(9)(A) and (C) and should not be confirmed.

27. The MDOR further notes that all of its claims are listed as "Disputed/Unliquidated/Contingent" in the "Joint Class, Creditor and Claim Summary"[3] attached as Exhibit C to the Debtors' First Amended Disclosure Statement.  While it can hardly be said that claim treatment is governed by what may be seen in an exhibit to a Disclosure Statement, the MDOR disputes and denies that there is any good faith basis for listing the claim amounts as disputed as the claim amounts are based on tax returns filed by the debtor.

---

[2] Section 5.2 of the Plan states: "The administration, use and distribution of the Trust Assets shall be governed by the GSA, a copy of which, with confidential information redacted, is annexed hereto as Exhibit A.  Such Agreement is hereby adopted by the Debtors to this plan, ratified, confirmed, and incorporated herein by reference."

[3] See Case Docket No. 1184-3, filed 9/25/13.

### ii.   Failure to Specify Interest Rate

28.   Section 2.1 of Article II of the Plan proposes to treat administrative claims in the following manner:

> " Except as otherwise provided in the GSA, allowed Administrative Claims shall be paid in full upon either the later of the Effective Date and the date which is thirty (30) days after the date upon which such Administrative Claim becomes an Allowed Administrative Claim.  In the alternative, an Allowed Administrative claim may be paid and satisfied in accordance with any agreement between the Debtors and the holder of such Allowed Administrative Claim"

29.   Section 2.2 of Article II of the Plan proposes to treat priority claims in the following manner:

> The holders of Allowed Priority Claims, shall be paid in full upon the later of the Effective Date and the date which is thirty (30) days after the date upon which such Priority Claim becomes an Allowed Priority Claim.

30.   11 U.S.C. §1129(a)(9)(A) and (C) require administrative and priority tax claims to receive value equal to the amount of such claims.  The "amount of such claim" comprises the payment of interest.

31.   The plan fails to state the interest rate applicable and necessary to reach the value of the priority and administrative tax claims.

32.   Massachusetts law requires that "if any amount of tax is not paid to the commissioner on or before its statutory due date, there shall be added to the tax interest at the rate of the Federal short term rate determined under section 6621(b) of the Internal Revenue Code, as amended and in effect for the taxable year, plus four percentage points, compounded daily" M.G.L. c. 62C, § 32(a).  The rate of each quarter is announced in the month prior to the quarter, customarily through a Technical Information Release, following the announcement of the Federal short-term rate by the U.S. Treasury Department.

33. The interest rate for the fourth quarter is 4% compounded daily, as announced by the last Technical Information Release (TIR No. 13-13) on this topic on September 11, 2013.

34. The alternative to using MDOR's regular market-derived interest rate for delinquent taxes is the formula of "prime plus 2.5%" as of the effective date of the plan. See In re Hi-Fi Pizza, 40 B.R. 258 (Bankr. D. Mass. 1984). Although it may change between now and the effective date of the plan, the current (October 21, 2013) prime rate is 3.25%, as published in that day's Wall Street Journal. Based upon today's rate, the interest rate for deferred cash payments on priority tax claims would be 5.75%.

35. In the absence of a specified rate of interest, the payments as set forth in the Plan do not provide "a value, as of the effective date of the plan, equal to the allowed amount of such claim," and consequently the Court cannot confirm the Plan as it does not comply with the applicable provisions of the Bankruptcy Code.

### C. THE PLAN IS NOT FAIR AND EQUITABLE TO IMPAIRED CLASSES

36. It is a requirement under 11 U.S.C. § 1129(a)(8) that impaired classes accept the Plan in order for the Plan to be confirmable. Notwithstanding this requirement, 11 U.S.C. § 1129(b)(1) allows the Court to nevertheless confirm a Plan if the Plan does not discriminate unfairly and is fair and equitable with respect to impaired classes that do not accept the Plan.

37. The MDOR submits that the Plan is not fair and equitable given the GSA's transfer of estate property to a liquidating trust when it does not appear that the Court will retain jurisdiction of such property. As the U.S. Trustee notes

in the Motion to Reconsider Order Approving Global Settlement Agreement and Stipulation (Case Docket #1221), the GSA "provides no mechanism for the proceeds of the D&O claims and chapter 5 actions to be transferred back to the estate or distributed to creditors." The GSA circumvents the confirmation process, denying impaired classes a meaningful opportunity to accept or reject the instrument that essentially governs the Plan's contents.

38. Under the Plan, it is unclear what recourse creditors, including the MDOR, would be left with in the event that the parties to the GSA do not comply with its terms. The Plan therefore is not fair and equitable within the meaning of section 1129(b)(1) and confirmation should be denied.

D. **"ALLOWED CLAIMS" DEFINITION CONFLICTS WITH 11 U.S.C. § 503(b)(1)(D)**

39. Section 503(b)(1)(D) of the Bankruptcy Code provides that "notwithstanding the requirements of subsection (a), a governmental unit shall not be required to file a request for the payment of an expense described in subparagraph (B) or (C), as a condition of its being an allowed administrative expense." Consequently, at present the MDOR Administrative Claim is an allowed administrative claim.

40. The definition of "Allowed" stated in the Plan conflicts with this provision:

"Allowed with respect to any Claim or Interest other than a Fee Claim,

shall mean any Claim or Interest (a) that is subject of a timely filed proof of claim, or (b) any Claim or Interest that has been listed in the schedules filed with the Bankruptcy Court by the Debtor pursuant to Bankruptcy Code § 521 and is not listed therein as disputed, unliquidated, or contingent; and, in each such case as to which either (i) no objection to the allowance thereof or other similar pleading has been filed within the applicable time period set forth in the Plan, or (ii) an objection or other similar pleading has been filed and the Claim or Interest has been allowed by a Final Order but only to the extent so allowed.  To the extent that all or a portion of a Claim is not Allowed, the holder of such claim shall not receive any distribution on account of the portion of such claim that is not allowed."  *(Plan, section 1.2).*

41. The Plan's definition of "Allowed" and proposed treatment of the MDOR's administrative claim for post-petition taxes contravenes section 503(b)(1)(D) because it does not acknowledge that a governmental unit is not required to file a request for the payment of an administrative tax claim as a condition of its being an allowed administrative expense.  As noted, the MDOR Administrative Claim is currently an allowed administrative expense, as would be any amendment to it.

42. The Plan's definition of "Allowed" and consequently, its treatment of "Allowed Administrative Claims" contravenes section 503(b)(1)(D) and confirmation should therefore be denied.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, Amy A. Pitter, as she is Commissioner of the Massachusetts Department of Revenue, respectfully requests that this Honorable Court deny confirmation of the Debtor's *Plan of Reorganization Dated September 25, 2013*, and enter an order for such other and further relief as the Court deems proper and just.

|  |  |
|---|---|
|  | **Respectfully submitted,** |
| **Dated: October 21, 2013** | **AMY A. PITTER**<br>**COMMISSIONER**<br>**MASSACHUSETTS DEPARTMENT**<br>**OF REVENUE** |
|  | **By her attorneys,** |
|  | **MARTHA COAKLEY**<br>**ATTORNEY GENERAL OF**<br>**MASSACHUSETTS** |
|  | **Kevin W. Brown, General Counsel**<br>**Special Assistant Attorney General** |
|  | <u>/s/ *Stephen G. Murphy* //</u><br>**Stephen G. Murphy (BBO # 542427)**<br>**Counsel to the Commissioner**<br>**Massachusetts Department of Revenue**<br>**Litigation Bureau**<br>**100 Cambridge Street, P. O. Box 9565**<br>**Boston, MA 02114**<br>**(617) 626-3305**<br>**Email: murphys@dor.state.ma.us**<br>**Fax No.: (617) 660-394** |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

_____   )
                                        )
In re:                                  )
                                        )       Chapter 11
ISAACSON STEEL, INC.                    )       Case No.: 11-12415-JMD
ISAACSON STRUCTURAL STEEL, INC.  )       Case No.: 11-12416-JMD
                                        )
        Debtors                         )       Jointly Administered
                                        )
_____)

**CERTIFICATE OF SERVICE**

      I, Stephen G. Murphy, hereby certify that on this 21st day of October 2013 I have caused to be served a true and accurate copy of the *Objection by Commissioner of Massachusetts Department of Revenue to Confirmation of Debtors' Plan of Reorganization* by United States first class mail, postage pre-paid or by electronic notification, where indicated (EN), upon the following parties:

**Daniel P. Luker** (EN)
nhbankruptcyfilings@preti.com

**Daniel W. Sklar** (EN)
dsklar@nixonpeabody.com

**James S. LaMontagne** (EN)
nhbankruptcycourt@sheehan.com

**Peter N. Tamposi** (EN)
peter@thetamposilawgroup.com

**Lisa Snow Wade** (EN)
lwade@orr-reno.com

**Geraldine Karonis**  (EN)
Office of U.S. Trustee
Geraldine.L.Karonis@usdoj.gov

**William S. Gannon** (EN)
bgannon@gannonlawfirm.com

**Gregory A. Moffett** (EN)
gmoffett@preti.com

**Ann Marie Dirsa** (EN)
Office of U.S. Trustee
ann.marie.dirsa@usdoj.gov

**D. Ethan Jeffrey** (EN)
dej@murphyking.com


**George J. Marcus** (EN)
bankruptcy@mcm-law.com

**Official Committee of Unsecured Creditors**
c/o Nixon Peabody LLP
900 Elm Street 14th Floor
Manchester, NH 03101
603-628-4000

**Holly Kilibarda**
Nixon Peabody LLP
900 Elm Street
Manchester, NH 03101
603-628-4000
hkilibarda@nixonpeabody.com

**David Gandin**
Jacobowitz and Gubits, LLP
158 Orange Avenue
POB 367
Walden, NY 12586-0367
845-778-2121

**Justin M. Boothby**
Orr & Reno, PA
One Eagle Square
POB 3550
Concord, NH 03301

**Peter F. Burger**
Orr & Reno
PO Box 709
Concord, NH 03302-0709
(603) 224-2381

**Steven L. Winer**
14 South Street
P O Box 1477
Concord, NH 03302
(603) 224-9033

*/s/ Stephen G. Murphy*
**Stephen G. Murphy**