**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ISAACSON STEEL, INC. | ) | Case No. 11-12415-JMD |
| ISAACSON STRUCTURAL STEEL, INC. | ) | Case No. 11-12416-JMD |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**FIRST AMENDED JOINT PLAN OF REORGANIZATION
FOR ISAACSON STEEL, INC. AND ISAACSON STRUCTURAL STEEL, INC.
DATED SEPTEMBER 25, 2013, AS MODIFIED OCTOBER 18, 2013**

**Isaacson Structural Steel, Inc.** and **Isaacson Steel, Inc.** (each, a "**Debtor**" and combined, the "**Debtors**"), propose this First Amended Joint Plan of Reorganization dated September 25, 2013, pursuant to 11 U.S.C § 1121 of the Bankruptcy Code (the "**Plan**").

**INTRODUCTION**

On June 22, 2011 (the "**Filing Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**"), thereby initiating a proceeding under Chapter 11 of the Bankruptcy Code (the "**Code**") for each Debtor. As a result of the filing, each Debtor became a debtor-in-possession with authority to operate its business pursuant to §§ 1107 and 1108 of the Code.

The Debtors were formerly engaged in the business of fabricating and selling structural steel. During the course of the Debtors' Chapter 11 proceedings, the tangible assets of each of the Debtors were liquidated, and, with the exception of a limited amount of cash and remaining accounts receivable, and after payment of certain costs of administration, the proceeds of the liquidation of the tangible assets of the Debtors were distributed to secured creditors holding liens and security interests in such assets.  The Debtors continue to hold certain valuable causes of action, including claims against former officers and directors of the Debtors (the "**D&O Claims**") which claims are insured by available D&O insurance policies, and certain causes of action arising under Chapter 5 of the Bankruptcy Code (the "**Chapter 5 Causes of Action**"). By virtue of that certain Global Settlement Agreement, dated August, 2013, between and among the Debtors, the Official Committee of Unsecured Creditors of the Debtors (the "**Committee**"), the New Hampshire Business Finance Authority ("**BFA**"), Passumpsic

Savings Bank (together with and including its participating lenders, Woodsville Guaranty Savings Bank and Ledyard National Bank, "**PSB**"), and Turner Construction Company, Inc. ("**Turner**"), the parties to that Agreement, representing each major constituency of creditors of the Debtors, agreed upon the means and method for the liquidation of the D&O Claims and the Chapter 5 Causes of Action, and the distribution of the proceeds of the same.  The Global Settlement Agreement (sometimes referred to hereafter as the "**GSA**") presents significant advantages to every class of creditors of the Debtors, and accordingly, the Debtors propose this Plan of Reorganization in order to confirm and make binding upon all creditors and parties in interest, the agreements reached in the Global Settlement Agreement for the liquidation and distribution of the proceeds of the remaining assets of the Debtors.  In the event of any conflict or apparent conflict between the Global Settlement Agreement and this Plan, the conflict or apparent conflict shall be resolved solely by reference to the Global Settlement Agreement, which shall be the controlling document.

Each of the non-Debtor parties to the GSA, that is, the Committee, BFA, PSB, and Turner, shall have the right to join in this Plan as Plan proponents.

## ARTICLE I

## DEFINITIONS

General.  Unless the context otherwise requires and/or unless defined in the GSA or elsewhere in the Plan, the following terms shall have the following meanings when used in initially capitalized form in this Plan.  Such meanings shall be equally applicable to both the singular and plural forms of such terms.  Any term used in initially capitalized form in this Plan that is not defined herein but that is defined in the Bankruptcy Code shall have the meaning assigned to such term in the Bankruptcy Code.

   1.1   Administrative Claim shall mean a Claim arising and allowable under § 503(b) of the Bankruptcy Code with respect to the Debtor, including charges against the Debtor's estate under 28 U.S.C. § 1930.

   1.2   Allowed with respect to a Claim or Interest other than a Fee Claim, shall mean any Claim or Interest (a) that is the subject of a timely filed proof of claim, or (b) any Claim or Interest that has been listed in the schedules filed with the Bankruptcy Court by the Debtor pursuant to Bankruptcy Code § 521 and is not listed therein as disputed, unliquidated, or contingent; and, in each such case as to which either (i) no objection to the allowance thereof or other similar pleading has been filed within the applicable time period set forth in the Plan, or (ii) an objection or other similar pleading has been filed and the Claim or Interest has been allowed by a Final Order but only to the extent so allowed.  To the extent that all or a portion of a Claim is not Allowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is not Allowed.

5877169.2

5923973.1

1.3 <u>Allowed Amount</u> shall mean the amount of any Allowed Claim or Allowed Interest.

1.4 <u>Assets</u> means all property that would be property of the Debtor and the Debtor's estate under § 541 of the Bankruptcy Code, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, all Causes of Action and all proceeds of and recoveries on Causes of Action, all accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory, intellectual property, domain names, and interest in real estate.

1.5 <u>Approval Order</u> means the September 25, 2013 order of the Bankruptcy Court [Doc. #1186] approving the GSA, as that term is defined herein.

1.6 <u>Bank</u> shall mean Passumpsic Savings Bank, together with and including its participating lenders, Woodsville Guaranty Savings Bank and Ledyard National Bank and their affiliates, successors, agents, and assigns.

1.7 <u>Bankruptcy Code</u> shall mean 11 U.S.C. §§ 101 *et seq.*, as in effect with respect to the Case on the Petition Date. All Code references herein are to the Bankruptcy Code in effect as of the Petition Date, unless otherwise stated.

1.8 <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court for the District of New Hampshire, or any other court with jurisdiction over the Case.

1.9 <u>Bar Date</u> shall mean the date, if any, established by the Bankruptcy Court as the deadline for filing proofs of claims or interests in the Case.

1.10 <u>Case</u> shall mean the Chapter 11 Cases of the Debtors now pending in the Bankruptcy Court pursuant to Chapter 11 of the Bankruptcy Code.

1.11 <u>Cash</u> shall mean payment, including by check, issued by or on behalf of the Debtor with respect to any payment of collected funds required to be made pursuant to the Plan.

1.12 <u>Cause of Action</u> shall mean all claims and causes of action now owned or hereafter acquired by the Debtor and/or its estate, other than the D&O Claims, whether arising under the Bankruptcy Code or other federal or state law, including, without limitation, Chapter 5 Causes of Action.

1.13 <u>Chapter 5 Causes of Action</u> shall mean all Causes of Action (as that term

5877169.2

5923973.1

is defined *infra* at §1.11 arising under Chapter 5 of the Bankruptcy Code (including, but not limited to, causes of action arising under 11 U.S.C. §§544, 547, 548, 549, 550, and 553). As used in this Plan, the terms "Chapter 5 Causes of Action" shall have and be given the same meaning as the phrase "Chapter 5 Actions" used in the GSA.

1.14  Claim shall mean a claim, as defined in § 101(5) of the Bankruptcy Code, against either of the Debtors.

1.15  Committee shall mean the Official Committee of Unsecured Creditors of the Debtor appointed in this case.

1.17  Confirmation Date shall mean the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

1.18  Confirmation Order shall mean the Order (which need not be a Final Order) confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

1.19  D&O Claims and D&O Policy means (a) all claims and causes of action against former officers, directors, or accountants of the Debtors, arising by reason of their service as directors and/or officers or accountants of the Debtors, and (b) all policies of insurance insuring such claims and causes of action, including the Debtors' directors and officers liability insurance policy issued by Executive Risk Indemnity, Inc., Policy No. 8167-110

1.20  Effective Date shall mean the date determined in accordance with Article VI of the Plan.

1.21  Encumbrances shall mean all liens, encumbrances, mortgages, hypothecations, pledges, and security interests of any kind whatsoever.

1.22  Executory Contract shall mean an executory contract within the meaning of § 365 of the Bankruptcy Code.

1.23  Fee Claim shall mean the Administrative Claim of a professional person for compensation and/or reimbursement of expenses.

1.24  Final Order shall mean an Order of any court, administrative agency or other tribunal as entered on its docket as to which (a) the time to appeal or petition for rehearing or *certiorari* has expired and as to which no appeal or motion for rehearing or petition for *certiorari* has been timely filed or taken, (b) if such an appeal or motion for rehearing or petition for *certiorari* has been timely filed or taken, such order or judgment has been affirmed by the highest tribunal in which review was sought or such appeal, motion for rehearing or petition for *certiorari* was dismissed or

5877169.2

5923973.1

    otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.25 <u>GSA</u> shall mean that certain Global Settlement Agreement, dated August __, 2013, by and between the Debtors, the Official Committee of Unsecured Creditors, New Hampshire Business Finance Authority, Passumpsic Savings Bank, and Turner Construction Company, Inc., as the same may be modified or amended by the parties thereto, or pursuant to the Approval Order, as that term is defined herein.

1.26 <u>Liquidating Trust or Trust</u> shall mean the Isaacson Steel Liquidating Trust established pursuant to the GSA.

1.27 <u>Net Estate Recoveries</u> shall have and be given the same meaning as is attributed to such term in the Global Settlement Agreement.

1.28 <u>Order</u> shall mean an order of the Bankruptcy Court in the above case.

1.29 <u>Petition Date</u> shall mean June 22, 2011.

1.30 <u>Plan</u> shall mean this First Amended Joint Plan of Reorganization, dated September 25, 2013, as Modified October 18, 2013 as it may be amended or modified by the Debtor from time to time, together with all exhibits, schedules and other attachments hereto, as the same may be amended or modified by the Debtor from time to time, all of which are incorporated herein by reference.

1.31 <u>Post-Petition Bar Date</u> shall mean the date that is forty-five (45) days after the Effective Date.

1.32 <u>Prime Rate</u> shall mean the annualized rate of interest designated as the "Prime Rate" as published in the Money Rates Section of the Wall Street Journal, Eastern Edition, as of the Effective Date. If the Prime Rate shall no longer be published in the Money Rates or any other section of The Wall Street Journal, then the holder(s) of an obligation payable with interest at the Prime Rate pursuant to this Plan shall have the right, exercising reasonable judgment, to substitute a new method for determining a comparable per annum interest rate to be charged by the holder(s) and such rate of interest determined by such method shall become the Prime Rate for the purpose of this Plan and any obligation issued pursuant to this Plan.

1.33 <u>Priority Claim</u> shall mean an Unsecured Claim arising before the Petition Date and allowable under §§ 507(a)(2) through 507(a)(9) of the

5877169.2

5923973.1

Bankruptcy Code.

1.34 <u>PSB</u> shall mean Passumpsic Savings Bank and its participating lenders, Woodsville Guaranty Savings Bank and Ledyard National Bank

1.35 <u>Secured Claim</u> shall mean a claim that is secured by a perfected (or similarly binding) Encumbrance on any of the Debtor's assets, to the extent provided in 11 U.S.C. § 506 of the Bankruptcy Code.

1.36 <u>Trustees</u> shall mean the trustees designated to administer the Liquidating Trust and their successors.

1.37 <u>Unsecured Claim</u> shall mean a Claim which arose before the Petition Date and which is not secured by any interest in any property of the Debtor's estate, and shall include a Claim which arises from the rejection of an Executory Contract or Unexpired Lease, within the meaning of § 365 of the Bankruptcy Code; provided, however, that in order to be an Unsecured Claim, such claim must be evidenced by a proof of claim which has been timely filed by the holder of the Claim (whether or not such proof of claim has been Allowed) prior to the Bar Date, or such Claim must be described on Schedule F filed by the Debtor and not noted as unliquidated, contingent or disputed on such Schedule (whether or not such claim is deemed Allowed).

## *ARTICLE II*

## **TREATMENT OF NON-CLASSIFIED CLAIMS**

2.1 <u>Administrative Claims</u>. Except as otherwise provided in the GSA, all Allowed Administrative Claims shall be paid in full upon the later of the Effective Date and the date which is thirty (30) days after the date upon which such Administrative Claim becomes an Allowed Administrative Claim. In the alternative, an Allowed Administrative claim may be paid and satisfied in accordance with any agreement between the Debtors and the holder of such Allowed Administrative Claim.

2.2 <u>Priority Claims</u>. The holders of Allowed Priority Claims, shall be paid in full upon the later of the Effective Date and the date which is thirty (30) days after the date upon which such Priority Claim becomes an Allowed Priority Claim.

2.3 <u>Bankruptcy Fees</u>. Any Administrative Claim for outstanding fees incurred in the Case pursuant to 28 U.S.C. § 1930(a)(6) and due and payable as of the Effective Date shall be paid in full on the Effective Date. Thereafter, the Liquidating Trust shall pay any and all fees lawfully due and payable under 28 U.S.C. § 1930(a)(6) with respect to the Case in the ordinary course without necessity of allowance by the Court until entry of an Order closing the Case.

5877169.2

5923973.1

## ARTICLE III

## DESIGNATION OF CLASSES OF CLAIMS

Claims that are required or permitted to be classified under Bankruptcy Code § 1123(a)(1) are hereby classified into the following classes:

3.1 <u>Class One</u> shall consist of all Allowed Claims against the Debtors of any kind or nature held by PSB.

3.2 <u>Class Two</u> shall consist of all Allowed Claims against the Debtors of any kind or nature held by BFA.

3.3 <u>Class Three</u> shall consist of the holders of all Allowed Unsecured Claims against the Debtors, as that term is defined in Section 101(31) of the Bankruptcy Code. Class Three shall include Allowed Unsecured Claims arising from (i) the insufficiency of assets held as collateral by secured creditors to satisfy the claims of such creditors, to the extent that such insufficiency is not entitled to treatment as an administrative claim, and (ii) claims arising from the rejection, prior to or after the Confirmation Date, of an executory contract or unexpired lease.

3.4 <u>Class Four</u> shall consist of the holders of all equity interests in and to each Debtor, including equity interests evidenced by any class of stock issued by each Debtor.

## ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

All classes of claims and interests are impaired under this Plan, within the meaning of Section 1124 of the Bankruptcy Code.

4.1 <u>Class One</u>. The holder of the Class One Claim shall receive payment, in full settlement and satisfaction of such Claim, in accordance with the terms of the GSA.

4.2 <u>Class Two</u>. The holder of the Class Two Claim shall receive payment, in full settlement and satisfaction of such Claim, in accordance with the terms of the GSA.

4.3 <u>Class Three</u>. The holders of the Class Three Claims shall receive payment, in full settlement and satisfaction of such Claims, of each holder's pro-rata share of all sums distributed to or for the account of holders of such claims in the aggregate, in accordance with the terms of the GSA.

4.4 <u>Class Four</u>. All equity interests in Class Four shall be cancelled and terminated on the Effective Date, and the holders thereof shall receive no distribution on

5877169.2

5923973.1

account of or with respect to such equity interests Plan.

## ARTICLE V

## MEANS FOR EXECUTION OF THE PLAN

5.1 The Liquidating Trust has been established pursuant to the GSA, and by virtue of transfers made or to be made by the Debtors and PSB, such Trust will hold cash; all of the D&O Claims of the Debtors and PSB; if and to the extent assignable, all of the Chapter 5 Causes of Action; and all of the Net Estate Recoveries made by the Debtors on account of their Chapter 5 Causes of Action which shall be assigned, paid or otherwise transferred to the Trust for distribution pursuant to this Plan and the GSA (the "**Trust Assets**"). A copy of the Liquidating Trust Agreement is available upon written request made to counsel for the Debtor, William S. Gannon, Esq. by letter addressed to Mr. Gannon at 889 Elm Street, Fourth Floor, Manchester, NH 03101-2101, or sent by facsimile, (603) 621-0830.

5.2 The administration, use and distribution of the Trust Assets shall be governed by the GSA, a copy of which, with confidential information redacted, is annexed hereto as **Exhibit A**. Such Agreement is hereby adopted by the Debtors pursuant to this plan, ratified, confirmed, and incorporated herein by reference.

5.3 The Trust is established for the purpose, among other things, of prosecuting claims against former officers and directors of the Debtor, as insured individuals under the D&O Policy, and causing the prosecution and/or liquidation of the Chapter 5 Causes of Action and distributing the proceeds thereof. The Trust is established under this Plan in order to satisfy the exception to the "insured v. insured" exclusion contained in the Debtor's D&O Policy. The pertinent exception to the "insured v. insured" exclusion provides in pertinent part that:

> "a Claim brought against Insured Persons of any Insured Organization by a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee or any similar official who has been appointed to take control of, supervise, manage or liquidate the: Parent Corporation"

shall not be excluded from coverage under the D&O Policy by virtue of the "insured v. insured" exclusion.

Accordingly, the entry of the Confirmation Order shall constitute a finding and determination of the Court, binding upon all parties in interest, that the Trust: (a) is a "bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee or any similar official who has been appointed to take control of, supervise, manage or liquidate the Parent Corporation" within the meaning of the D&O Policy, and that claims brought by said Trust against present or former officers and directors of the Debtor satisfies the exception to the "insured v. Insured" exclusion set forth in the D&O Policy; and (b) has the standing, rights and powers of a trustee under the Bankruptcy Code to prosecute the Chapter 5 Causes of Action.

5877169.2

5923973.1

5.4     Except as provided in, and unless expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, the Confirmation Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, Debtor and/or the Trust will retain and may enforce, and expressly reserve and preserve for these purposes, in accordance with sections 1123(a)(5)(A) of the Bankruptcy Code, any Claims, Causes of Action and demands and rights relating thereto that the Debtor or its Estate may hold against any person or entity, the proceeds of which shall be deemed Net Estate Recoveries and administered by the Trust in accordance with the GSA. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to them by virtue of or in connection with the confirmation, consummation of effectiveness of the Plan.

## ARTICLE VI

## THE EFFECTIVE DATE

6.1     Effective Date.  Unless the Confirmation Order has been stayed prior thereto, the Effective Date shall be the tenth (10th) day following entry of the Confirmation Order, provided that such date is not a weekend day or a holiday.  If such date falls on a weekend date or a holiday, the Effective Date shall be the next day which is not a weekend day or a holiday.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     Assumption/Rejection of Certain Executory Contracts and Unexpired Leases Other Than the D&O Policy.

(a) Unless the subject of a motion to assume an executory contract that is pending as of the Effective Date, or unless an executory contract is dealt with by an Order of this Court entered on or prior to the Effective Date, any and all executory contracts and unexpired leases of the Debtor that were entered into prior to the Filing Date shall be deemed rejected as of the Effective Date, if not earlier rejected by other orders of the Bankruptcy Court.  If an executory contract is the subject of a motion to assume as of the Effective Date, then such executory contract shall be assumed or rejected in accordance with an order entered into by the Court with respect to such motion, or in accordance with an agreement of the Debtor and the non-debtor party(ies) to such executory contract.

(b) The non-Debtor party to any such rejected contract or lease shall be required to assert a claim for damages from such rejection in accordance with Section 8.2 hereof.

7.2     Damages.  Any claim for damages arising from the rejection or deemed rejection of an executory contract or unexpired lease must be filed on or before thirty (30)

5877169.2

5923973.1

days after written notice of the Confirmation Date to the non-Debtor party to such contract or lease, or by such other date as may be specified by Order of the Bankruptcy Court and, if not so filed, will be deemed disallowed, discharged, and forever barred from receiving any distribution under this Plan. All Allowed Claims arising from the rejection of executory contracts and unexpired leases shall be classified as Allowed Unsecured Claims in Class Three of the Plan.

  7.3 <u>D&O Policy</u>.  The entry of the Confirmation Order shall constitute and effectuate the Debtors' assumption of the D&O Policy, within the meaning of Section 365(a) of the Bankruptcy Code.  The Debtor shall have no liability for payment of any amounts for cure with respect to the D&O Policy, and the entry of the Confirmation Order shall constitute adequate assurance of performance of such D&O Policy, all within the meaning of Section 365(b)(1) of the Bankruptcy Code.

## ARTICLE VIII

## MISCELLANEOUS PROVISIONS

  8.1 <u>Legally Binding Effect</u>.  The provisions of the Plan shall bind all holders of Claims and Interests, whether or not they accept the Plan.

  8.2 <u>Debtor's Assets and Causes of Action</u> .  On the Effective Date of the Plan, and subject to the terms and provisions of this Plan, the Confirmation Order, and the GSA, all property of the Debtor's bankruptcy estate shall vest in theTrust, subject only to liens and encumbrances that are not discharged and that are continued in full force and effect pursuant to this Plan.  On and after the Confirmation Date, and subject to the terms and provisions of this Plan, the Confirmation Order, and the GSA, the Trust may, without further approval of the Bankruptcy Court, use, sell, assign, transfer, abandon, settle, or otherwise dispose of at a public or private sale any of theTrust's Assets for the purpose of liquidating and converting such assets to cash, making distributions, and fully consummating the Plan.  Notwithstanding the foregoing, the Trust or the Debtor shall seek and obtain Bankruptcy Court approval of any compromise or settlement of a Cause of Action.

  8.3 <u>Claims Subject to Allowance</u>.  Notwithstanding any other provision of the Plan, no distribution shall be made on account of any Claim until such Claim is Allowed.

  8.4 <u>Prepetition Claim and Amendments</u>.  Each Claim as to which a proof of claim was required to be filed on or before the Bar Date and as to which a proof of claim was not filed on or before the Bar Date shall not under any circumstances become an Allowed Claim.  In no event shall the Allowed Amount of any Claim against the Debtor exceed the amount set forth in a proof of claim therefor filed on or before the Bar Date unless the claimant in its proof of claim expressly reserved the right to amend such proof of Claim, in which case any such amended proof of claim must be filed by the

5877169.2

5923973.1

Confirmation Date. No Order allowing or disallowing a Claim may be reconsidered, pursuant to the Bankruptcy Code Section 502(j) or otherwise, so as to increase the Allowed Amount thereof after entry of the Confirmation Order.

8.5 <u>Objections to Prepetition Claims and Interests</u>. Claims and Interests that arose prior to the Petition Date, and which have not been scheduled by the Debtor as contingent, unliquidated or disputed, or as to which a valid proof of claim or interest has been filed on or before the Bar Date, shall be allowed in full, unless an objection to such Claim or Interest is filed on or before the date which is thirty (30) days after the Confirmation Date. Claims that have been objected to and not allowed shall have no right to vote with respect to the acceptance or rejection of this Plan except as otherwise ordered by the Court.

8.6 <u>Bar Date for and Objection to Post-Petition Claims</u>. Any Claim entitled to priority under Bankruptcy Code § 503(a) arising before the Confirmation Date and still outstanding 60 days thereafter, except for a Fee Claim, shall be forever barred unless it is the subject of a proof of claim filed with the Bankruptcy Court on or before the Post-Petition Bar Date. Any Claim that is the subject of such a proof of claim shall be Allowed in full unless an objection thereto is filed within 30 days after the Post-Petition Bar Date or such other date as is provided by Order upon motion of the Debtor.

8.7 <u>Means of Cash Payment</u>. Cash payments made pursuant to the Plan will be in United States funds, by the means agreed to by the Debtor and the respective holders of Allowed Claims, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Debtor shall reasonably determine.

8.8 <u>Discharge</u>. To the fullest extent allowable under the Bankruptcy Code, and except as expressly provided otherwise in the Amended Plan, the Debtor shall, as of the Confirmation Date, have the full benefit of the discharge provided by Bankruptcy Code Section 1141(d); provided, however, that nothing herein shall release or discharge the Debtor with respect to its obligation to make the payments and to provide the other consideration which is described in this Plan.

8.9 <u>Release of Encumbrances</u>. The entry of an order confirming this Plan shall constitute the immediate release and discharge of any contractual or statutory or judicial lien, security interest, mortgage or other encumbrance affecting property of the estate or property of the Debtor (the "<u>Encumbrances</u>"), unless this Plan or the Confirmation Order requires the continuation in effect of any of such Encumbrances. Any holder of an Encumbrance that is discharged pursuant to this Plan shall, upon request of the Debtor, execute and deliver to the Debtor such documents and agreements, in recordable form, as are reasonably necessary to cause the discharge of record of any such Encumbrance. In the event that any such holder fails and refuses to do so, then the Debtor may cause to be recorded a discharge of such Encumbrance.

8.10 <u>Injunction and Stay</u>. Unless otherwise provided, all injunctions or stays provided for in the Case pursuant to §§ 105 or 362 of the Bankruptcy Code, or

5877169.2

5923973.1

otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the close of the Case.  The entry of the Confirmation Order shall constitute a stay and injunction applicable to all persons, staying and enjoining the enforcement or attempted enforcement by any means of all liens, claims, Encumbrances, and debts discharged pursuant to Sections 8.8 and 8.9  above.

8.11 Modification of Confirmed Plan.  After the Confirmation Date, the proponent of this Plan may modify the Plan under Bankruptcy Code § 1127 and may remedy any defect or omission or reconcile any inconsistency in the Plan or in the Confirmation Order in such manner as may be necessary or appropriate to carry out the purposes and intent of the Plan, so long as the interests of holders of Claims and Interests are not materially and adversely affected thereby.

8.12 Substantial Consumation.  The Plan shall be deemed to have been substantially consummated when all of the requirements of Bankruptcy Code § 1101(2) shall have been satisfied.

8.13 Closing of Case.  The Case shall be deemed closed at such time as the Order closing the Case pursuant to Bankruptcy Code § 350 has been entered by the Bankruptcy Court on the motion of the Debtor, and the Order becomes a Final Order.

8.14 Retained Jurisdiction.  The Bankruptcy Court shall retain jurisdiction over the Case after the Confirmation Date for the following purposes:

(a) to hear and determine objections to claims, and requests for approval of any compromise or settlement of a Cause of Action;

(b) to hear and determine any disputes arising under the Plan, its implementation and execution of any necessary documents thereunder, and any requests to amend, modify, or correct the Plan, provided that such matters are brought before the Court prior to the point of Substantial Consummation as that term is defined in Bankruptcy Code § 1101(2) of the Bankruptcy Code and by the Plan itself, and subject, further, to the restrictions set forth in Bankruptcy Code § 1127(b);

(c) to grant extensions of any deadlines set forth in the order confirming this Plan as may be appropriate;

(d) to enforce all discharge provisions under the Plan, including the provisions of § 8.9 of this Article;

(e) to review and rule upon applications for compensation of professional persons; and

(f) If at the time of the hearing confirming the Plan, the Debtor expects that a broader retention of jurisdiction will be sought, but is not in a position to request a specific enlargement, the Court may conditionally reserve the

5877169.2

5923973.1

question of additional retained jurisdiction in the order confirming the Plan and shall set a time within which the Debtor shall file a motion on notice requesting retention of such additional jurisdiction as necessary, to be embodied in a supplemental order.

8.15 <u>Dates</u>. Whenever the Plan requires the Debtor or the Trust to make a transfer or distribution or take some other action on a particular date, such action shall be taken on the required date or as soon as practicable thereafter.

8.16 <u>Exemption from Transfer Taxes</u>. Pursuant to § 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including the execution, delivery and recording of any deeds, bills of sale or assignments executed in connection with any disposition of assets under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

8.17 <u>Binding Effect</u>. Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtor and its respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan. The rights, benefits and obligations of any entity named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity (including, but not limited to, any trustee appointed for the Debtor under chapters 7 or 11 of the Bankruptcy Code).

8.18 <u>Severability</u>. In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

8.19 <u>Headings</u>. Headings are utilized in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

8.20 <u>Plan Controls</u>. To the extent that the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

[Signatures on following page]

5877169.2

5923973.1

Dated:  October 18, 2013                    **ISAACSON STEEL, INC.**
**ISAACSON STRUCTURAL STEEL, INC.**


By:/s/William S. Gannon
Attorney for the Debtor

William S. Gannon, PLC
889 Elm St., 4th Floor
Manchester, NH 03101

(603) 621-0833

5877169.2


5923973.1