## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

---------------------------------------------------

In re:                                             CHAPTER 11

**Isaacson Steel, Inc.**                       Case No. 11-12415-JMD
**Isaacson Structural Steel, Inc.**      Case No. 11-12416-JMD

         Debtors                                   Jointly Administered

---------------------------------------------------

### ORDER CONFIRMING PLAN OF REORGANIZATION

Pursuant to the First Amended Joint Plan of Reorganization for Isaacson Steel, Inc. and Isaacson Structural Steel, Inc. Dated September 25, 2013, as Modified by Motion dated October 18, 2013, and granted by the Court on October 28, 2013 (the "**Plan**") and disclosure statement (Court Doc. Nos. 1225 and 1184) filed by the Debtors (the "**Debtors**" or "**Proponents**"), and after notice having been transmitted to all creditors, equity security holders, parties in interest and other persons entitled to notice in accordance with Bankruptcy Rules 2002 and 3017; and after having reviewed the Plan, the showing made by parties who attended the confirmation hearing held on October 28, 2013, and the Objections thereto, and with the Objections having been withdrawn or having been adequately addressed with the modifications to the Plan as set forth herein in paragraph 15, and the Court having determined that good cause has been shown for entry of this Order,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** as follows:

1.       The Plan, which is incorporated herein by reference, complies with the applicable provisions of the Bankruptcy Code, 11 U.S.C. §§ 101-1532.  See 11 U.S.C. § 1129(a)(1).

2.       Proponents' Plan complies with the applicable provisions of the Bankruptcy Code, 11 U.S.C. §§ 101-1532.  See 11 U.S.C. § 1129(a)(2).

3.      The Plan has been proposed in good faith and not by any means forbidden by law.  See 11 U.S.C. § 1129(a)(3).

4.      Any payment made or to be made by the Proponents, by the Debtors, by the Trustees of the Liquidating Trust established to administer the Plan (the "**Liquidating Trustees**" and the "**Trust**"), or by any entity acquiring property under the Plan, for services or for costs and expenses in the case or in connection with the case, or in connection with the Plan and incident to this case, has been approved by, or is subject to the approval of, the Court as reasonable.  See 11 U.S.C. §1129(a)(4).

5.      The Proponents of the Plan have disclosed the identity and affiliations of the Liquidating Trustees and any individual proposed to serve after confirmation of the Plan as a director, officer, or voting trustee of the reorganized debtor, an affiliate of the Debtors participating in a joint Plan with the Debtor, or a successor to the Debtors under the Plan and the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of compensation for such insider.  See 11 U.S.C. § 1129(a)(5).

6.      With respect to each impaired class of claims or interest of such class, being Classes One, Two, Three and Four, each holder of a claim or interest of such class has accepted the Plan or will receive or retain under the Plan, on account of such claim or interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter.

7. If § 1111(b)(2) of the Bankruptcy Code applies, such class will receive or retain under the Plan, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property securing such claim.  See 11 U.S.C. § 1129(a)(7).

8.      The Certificate of Vote attached as <u>Exhibit A</u> hereto discloses, as applicable, those classes that have accepted the Plan, those classes that have rejected the Plan, those classes that are not impaired under the Plan, and those classes which have rejected the Plan but are being treated by Plan treatment permitted under § 1129(b)(1) and 1129(b)(2) of the Bankruptcy Code.  See 11 U.S.C. § 1129(a)(8).

9.      Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that, with respect to a claim of a kind specified in §

2

507(a)(2) or 507(a)(3) of the Bankruptcy Code, on the Effective Date of the Plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim.  See 11 U.S.C. § 1129(a)(9)(A).

10.     With respect to a class of claims of a kind specified in § 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), 507(a)(7) and 507(a)(8) of the Bankruptcy Code, each holder of a claim of such class will receive, cash on the Effective Date of the Plan equal to the allowed amount of such claim, or such other treatment to which the holder of such claim has agreed.  See 11 U.S.C. § 1129(a)(9)(B).

11.     If a class of claims is impaired under the Plan, at least one class of claims that is impaired under the Plan, being Classes One through Three, has accepted the Plan, determined without including any acceptance of the Plan by an insider.  See 11 U.S.C. § 1129(a)(10).

12.     Confirmation of this Plan is not likely to be followed by liquidation, or the need for further financial reorganization, of these debtors or any successor to the debtors under the Plan, unless, as in this case, such liquidation or reorganization is proposed in the Plan.  See 11 U.S.C. § 1129(a)(11).

13.     All fees due and all quarterly fees payable to the United States Trustee have been paid as of the confirmation date or the Plan provides for the payment of all such fees on the Effective Date of the Plan.  See 11 U.S.C. § 1129(a)(12) and LBR 3020-1(c).

14.     All transfers of property of the Plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.  See 11 U.S.C. §1129(a)(16).

15.     The Plan is hereby determined to be fair and equitable and does not discriminate unfairly with regard to any class of claims or interests that is impaired under, and has not accepted, the Plan.  See 11 U.S.C. § 1129(b)(1).

16.     Special provisions:

        (a)     Subject to the provisions of this Paragraph 16, which addresses certain objections made by Steven Griffin, the Massachusetts Department of Revenue, and the United

States Trustee, all objections to the Confirmation of the Plan shall be, and hereby are overruled in their entirety.

(b)   The Global Settlement Agreement (the "**GSA**") entered into by and among the Debtors, the Official Committee of Unsecured Creditors (the "**Committee**"), New Hampshire Business Finance Authority ("**BFA**"), Turner Construction, Inc. ("**Turner**") and Passumpsic Savings Bank (together with its participating lenders, "**PSB**"), which is the basis of the Plan confirmed hereby, is hereby approved in all respects.  The Liquidating Trust Agreement adopted pursuant to the GSA, as the Liquidating Trust Agreement has been modified by the Plan and/or this Order (hereinafter, said trust, as so modified, is referred to as the "**Trust**"), is hereby approved in all respects.  Without limiting the generality of the foregoing sentences of this subparagraph in any way, the provisions of the GSA relating to the payment of taxes due MDR are incorporated herein by reference.

(c)       The **Trustees** of the Liquidating Trust are identified as follows:

PSB Appointee: Robert M. Bishop, Senior Vice President.

BFA Appointee: Jack Donovan, Chief Executive Director Officer.

Committee Appointee: Charles B. Fenderson, President of Charles Leonard Construction Co., Inc.

Annexed to this Order confirming the Plan as Exhibit B is a fully executed copy of the Liquidating Trust Agreement.  The trustees shall serve without compensation but may receive compensation for out of pocket expenses.  No bond shall be required of any Liquidating Trustee.

(d)       Consistent with the terms of the GSA all assets of the Debtors required to be transferred to the Trust shall be deemed transferred to the Liquidating Trustees of the Trust, in their capacities as such, as of the Effective Date, pursuant to the Plan.  Without limiting the generality of the foregoing, the Debtors' Chapter 5 Actions and/or Other Actions shall be transferred to the Liquidating Trustees of the Trust, in their capacities as such, for for administration, collection, prosecution, and distribution, as provided in the Plan.  To the extent that the Debtors transfer cash to the Trust, the Trust shall be responsible to utilize such cash, to

4

the extent required, for the payment of allowed Administrative and Priority Claims pursuant to the provisions of the GSA and Article II of the Plan.

      (e)    [Intentionally omitted]

      (f)    The Stipulation entered into by and among Massachusetts Department of Revenue ("**MDR**") and Debtor [Doc. No. 1277-1] (the "**MDR-Debtor Stipulation**"), which resolves by agreement MDR's objections to the confirmation of the Plan shall be, and hereby is approved. The Plan shall be and hereby is deemed modified by the MDR-Debtor Stipulation insofar as the treatment of the MDR Administrative and Priority Tax Claims are concerned. The Debtors or the Liquidating Trustees of the Trust shall pay MDR's Allowed Priority Tax Claim in accordance with the MDR-Debtor Stipulation. Without limiting the generality of the foregoing sentences of this subparagraph in any way, the provisions of the GSA relating to the payment of taxes due MDR are incorporated herein by reference.

      (g)    The Debtors, or the Liquidating Trust, shall pay the quarterly fees due the United States Trustee as of the date of entry of this Order, in full, on the Effective Date, and thereafter, shall timely pay such additional quarterly fees as may become due and payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6). In addition, the Debtors or the Liquidating Trustees shall timely pay the fixed, monthly fees due Morgan Storage ($312/mo. plus an additional fee for delivering and picking up boxes of materials) and Spectra Access ($375/mo) for storing the Debtors' business and financial records for so long as the Liquidating Trustees determine that it is necessary to maintain, store, and/ or retrieve such records.

      (h)    The Professionals holding allowed or approved Administrative Claims shall be paid as and to the extent permitted by the GSA and further Order of this Court. With respect to

the approved interim Administrative Claims held by the Debtor's counsel and the Committee's counsel, the Liquidating Trustees may disburse the sum of $15,000 to be allocated by counsel in accordance with their "even up" agreement previously disclosed to this Court.

(i)      Except as otherwise provided for herein, or by agreement with a holder of an Allowed Priority Claim, all other allowed Priority Claims shall be paid in full by the Debtor or the Liquidating Trustees on the later of the Effective Date or the date upon which a Priority Claim becomes an Allowed Priority Claim.  The Debtors or the Liquidating Trustees may file objections to the Pre-petition Priority Claims asserted by the States of Vermont and Maine and David Payeur by December 20, 2013  and shall pay each such claimant the amount allowed by a final order.  In the absence of a timely claim objection, the claims filed by Vermont, Maine, or Payeur shall be allowed in the amount of their respective Proofs of Claim, and paid by the Debtors or the Trust on or before **February 28, 2014**.

(j)      The Debtors shall file all tax returns due the Internal Revenue Service, MDR or any other taxing authority when such returns are due, including any filing date extensions.

(k)      Notwithstanding any language in the Plan or the GSA to the contrary, PSB shall retain its right, as Debtors' primary secured lender pursuant to cash collateral and other orders previously entered in this case, (a) to pursue, at its election and expense, any potential claims against John Moriarty &  Associates, Inc. or others for monies owed for retainage or other pre-petition receivables on contracts with the Debtors and (b) to maintain, at its election and expense, its interest in the term life insurance policies on Debtors' principals that were assigned and delivered pre-petition to PSB in connection with  Debtors' loan obligations.

(l)      Notwithstanding any language in the Plan to the contrary, the Debtors shall not receive a discharge pursuant to the provisions of Code Section 1141(d)(3).

(m)      Notwithstanding any language in the Plan to the contrary, holders of claims against the Debtors or either of them that arose on or after the Petition Date ("**Post-Petition Claims**") which have not previously been approved by the Court or are not addressed elsewhere in this Order shall file such claims on or prior to February 28, 2014.  Any such Post-Petition Claim which is not filed on or prior to said date shall be deemed disallowed, without further order of the Court.

(n)     Notwithstanding §8.5 or any other provision of the Plan, any Claims that arose prior to the Petition Date and which were not scheduled by the Debtor as contingent, unliquidated, or disputed, or as to which a valid proof of claim was filed on or before the Bar Date, shall be allowed in full unless the Debtors, the Trust and/or any party in interest pursuant to Section 502(a) of the Bankruptcy Code, file an objection to such claim on or before March 28, 2014.

(o)     The Liquidating Trustees will commence distributions prescribed by the GSA (i) within ninety (90) days of the later of the final resolution of the prosecution of the D&O Claims or the Debtors' Causes of Action, provided, however, that in the event that the Liquidating Trustees have at any time accumulated a total of at least $300,000 (net of any Trust expenses or necessary reserve, as determined by the Liquidating Trustees), the Liquidating Trustees shall make an interim distribution in accordance with the priorities prescribed by the GSA.

(p)     This Order is not intended to be, and shall not be construed as an order relieving the Debtors or the Liquidating Trustees of the Trust from compliance with the automatic stay imposed by Section 362 of the Bankruptcy Code with respect to any entity that is a debtor in any proceeding currently pending under the Bankruptcy Code.  This Order is not intended to, and shall not be construed to vacate, alter or amend the stay relief order previously obtained by PSB in connection with *Passumpsic Savings Bank v. D.J. Driscoll & Company, PLLC, David Driscoll, CPA and Steven Griffin*, Docket No. 215-2011-CV-00176 (Cheshire County Superior Court) or any other stay relief order or expand or contract the relief granted by any such order.  Nothing contained in this Order shall limit or affect the right of the Debtors or the Liquidating Trustees to seek or obtain any necessary relief from the automatic stay in connection with any pending or future claim or proceeding pursued by the Debtors or the Liquidating Trustees.

(q)     Subject to the direction of the Trustees, and with available funding provided by the Trustees, the Debtors and/or the Committee will be responsible for filing objections to claims, paying United States Trustee fees, filing tax returns and paying the taxes due thereon and filing operating reports with the United States Trustee, and filing the application for final decree.

(r)     The Debtors may file an Application for Final Decree with Limited Retention of Jurisdiction upon or at any time after substantial consummation, which shall occur upon the Effective Date.

7

(s)   The Debtors' Motion for Order Granting Leave to Modify First Amended Joint Plan of Reorganization Dated September 25, 2013 with the Assent of the Settling Parties [Doc. No. 1225] shall be, and hereby is granted as of the start of the combined hearing on the adequacy of the Debtors' Disclosure Statement and Confirmation of Plan held on October 28, 2013 when this Court made its bench ruling thereon.

17.   There are no other Plans that have been proposed in this case.

18.   The Plan is hereby confirmed, upon and subject to the terms and provisions of this Order.

19.   The provisions of the Plan and this Order are and shall be binding upon the Debtors and any creditor or equity security holder of the Debtors whether the claim or interest of such creditor or equity security holder is impaired under the Plan and whether such creditor or equity security holder has accepted the Plan.

20.   Confirmation of the Plan does not discharge the Debtors of debts provided for in the Plan.

21.   Except as otherwise provided herein, in the GSA or in the Plan, and effective as of the Effective Date of the Plan, in accordance with § 1141(b) and 1141(c) of the Bankruptcy Code, all property of the Debtors' estate and all property dealt with by the Plan is hereby vested in the Liquidating Trustees free and clear of all claims and interest of creditors, equity security holders, and general partners of the debtors.  See 11 U.S.C. § 1141(c) and (d).

22.   Except as provided in the Plan, and subject only to the occurrence of the Effective Date of the Plan, any judgment at any time obtained, to the extent that such judgment is determination of the liability of the Debtors with respect to any debt or claim discharged hereunder, is hereby rendered null and void.

23.   As of the Effective Date of the Plan, the commencement or continuation of any action, the employment of process or any act to collect, recover or offset any claim or interest dealt with by the Plan or this Order is hereby permanently enjoined, stayed and restrained.

24.    Any claim for damages arising from the rejection of any executory contract or unexpired lease pursuant to the Plan shall be forever barred unless a proof of claim therefor in proper form is filed with the Court within thirty (30) days after the later of the date of entry of (i) an order by the Court approving the rejection of such executory contract or unexpired lease or (ii) this order.

25.    Notwithstanding §8.6 of the Plan or any other contrary provision of the Plan, all applications or requests for compensation or the reimbursement of any expenses or costs incurred by any professionals retained with Court approval in this chapter 11 case (other than fees incurred in connection with the prosecution of Chapter 5 Actions by counsel retained for that purpose or ' accountants retained solely for the purposes of preparing and filing the Debtors' tax returns following confirmation) and any other application or request for professional fees and expenses by any party in interest must be filed with the Court on or before February 28, 2014.

26.    In accordance with the provisions of *LBR 3020-1*, the Court shall retain exclusive jurisdiction for the following purposes:

(a)    To hear and determine objections to claims and claims for relief of the kind provided for in F.R.B.P. 7001 and compromises and settlements thereof;

(b)    To hear and determine adversary proceedings to subordinate claims asserted by insiders of the Debtors, including Arnold Hanson, Barbara Hanson, Steven Griffin and Cynthia Griffin.

(b)    To approve any stipulations and/or settlements entered into by the Debtors and/or the Liquidating Trustees, with any other parties;

(c)    To hear and determine any dispute arising under the Plan, its implementation and execution of any necessary documents thereunder, and any requests to amend, modify or correct the Plan, provided such matters are brought before the Court prior to the point of substantial consummation;

(d)    To grant extension of any deadlines set forth in this order as may be appropriate;

(e)    To enforce all discharge provisions under the Plan; and

(f)     To consider and rule upon requests for final compensation.

(g)     To hear and determine such other matters as may properly come within the subject matter jurisdiction of the Court.

27.     The Debtors shall be permitted to file a motion requesting additional retention of jurisdiction for specific matters within sixty (60) days of the date of this order.  Any such further retention of jurisdiction granted by the Court shall be provided for in a supplementary order on such motion.

28.     For the reasons given in this Court's Memorandum Opinion and Order dated September 25, 2013, the overwhelming support of the creditors that voted to accept the Plan and other good cause shown, this order shall become effective immediately.

**ENTERED** at Manchester, New Hampshire.


Date:    February    6    , 2014

/s/   J. Michael Deasy
_____
J. Michael Deasy, Bankruptcy Judge



UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW HAMPSHIRE

-----------------------------------------------------------

In re:                                              CHAPTER 11

**Isaacson Steel, Inc.**                            Case No. 11-12415-JMD
**Isaacson Structural Steel, Inc.**                 Case No. 11-12416-JMD

      Debtors                           Jointly Administered

-----------------------------------------------------------

### CERTIFICATE OF VOTE

The Debtors in Possession, **Isaacson Steel, Inc. and Isaacson Structural Steel, Inc.** (collectively, the "Debtors") the proponents of the First Amended Plan of Reorganization Dated September 25, 2013 (the "Plan"), hereby certifies that:

    1.    **Plan Classes:**  The Plan creates the following classes (the "Classes"):

        A.    Class 1, Passumpsic Savings Bank Claims Class

        B.    Class 2, New Hampshire Business Finance Authority Claims Class

        C.    Class 3, General Unsecured Claims

        D.    Class 4, Equity Holders Class

    2.    **All Classes Impaired.**  All Classes of Claims will be impaired by the Confirmation of the Plan.

    3.    **Voting Summary.**  Attached as Exhibit A is the Voting Summary which provides the following information by Class:  (i) the name of the Class, (ii) the number of Class Members which voted to accept or reject the Plan, (iii) the percentage by number of Class Members which voted to accept and reject the Plan, (iv) the dollar amount of Claims asserted by Class Members voting to accept or reject the Plan, and (v) the percentage by dollar amount of the Claims asserted by Class Members which voted to accept or reject the Plan.  For the purposes of this Certificate, the Voting Summary is incorporated herein by reference.

    4.    **Voting Summary by Class.**

A.      Total number of Classes: 4

B.      Creditors in all Classes were eligible to vote on the Plan, except for

Class 4 which is deemed to have rejected the Plan.

C.      The following impaired classes accepted the Plan:  Classes 1, 2 and 3.


                                    Respectfully submitted

DATED:  October 22, 2013           /s/ William S. Gannon
                                   William S. Gannon, Esq., BNH 01222 (NH)

                                   **ISSAACSON STEEL, INC.**
                                   **ISAACSON STRUCTURAL STEEL, INC.**

                                   WILLIAM S. GANNON, PLLC
                                   889 Elm Street, 4th Floor
                                   Manchester, NH 03101
                                   (603) 621-0833


                      CERTIFICATE OF SERVICE

       I hereby certify that on this date I served the foregoing pleadings on each person named
on the attached Service List(s) by causing it to be filed electronically via the CM/ECF filing
system or mailed by first class United States Mail, postage prepaid or in such other manner as
may be indicated.

Dated: October 22, 2013            /s/ Mary Ann Joyce
                                   Mary Ann Joyce

**IN RE ISAACSON STEEL, INC AND ISAACSON STRUCTURAL STEEL, INC.**
Chapter 11 Case No. 11-12415-JMD

### VOTING SUMMARY

| No. | Class | Claim Amount | Accept Amt. | Accept Amt. % | Reject Amt. | Reject Amt. % |
|---|---|---|---|---|---|---|
| 1 | **PSB Claims Class** | | | | | |
| | PSB | $ 9,000,000.00 | $ 9,000,000.00 | 100.0% | | |
| 2 | **BFA Claims Class** | | | | | |
| | BFA | $ 1,150,000.00 | $ 1,150,000.00 | 100.0% | | |
| 3 | **All Priority and Unsecured Claims Class** | | | | | |
| | American Express Corporate Card | $ 154,692.22 | | | $ 159,752.13 | 3.19% |
| | Berlin City Chevrolet | $ 3,055.95 | $ 3,055.95 | 0.06% | | |
| | Berlin City Ford | $ 51.46 | $ 51.46 | 0.00% | | |
| | Bret Steel Corporation | $ 76,410.00 | $ 76,410.00 | 1.52% | | |
| | James Stearns Co., Inc. | $ 1,254,084.29 | $ 1,254,084.29 | 25.01% | | |
| | Labonville, Inc. | $ 882.55 | $ 882.55 | 0.02% | | |
| | Macsteel Service Centers USA | $ 37,904.59 | $ 37,904.59 | 0.76% | | |
| | Sanel Auto Parts | $ 1,258.01 | $ 1,258.01 | 0.03% | | |
| | Smith & Town Printers | $ 898.00 | $ 898.00 | 0.02% | | |
| | Passasumpsic Savings Bank | $ 2,000,000.00 | $ 2,000,000.00 | 39.89% | | |
| | Passasumpsic Savings Bank | $ 90,790.27 | $ 90,790.27 | 1.81% | | |
| | Passasumpsic Savings Bank | $ 486,726.51 | $ 486,726.51 | 9.71% | | |
| | Passasumpsic Savings Bank | $ 10,725.40 | $ 10,725.40 | 0.21% | | |
| | Passasumpsic Savings Bank | $ 10,725.40 | $ 10,725.40 | 0.21% | | |
| | Turner Construction Company, Inc. | $ 886,101.00 | $ 886,101.00 | 17.67% | | |
| | **TOTAL** | $ 5,014,305.65 | $ 4,859,613.43 | 96.91% | $ 159,752.13 | 3.19% |





## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (this "**Agreement**"), dated as of October 21, 2013, is by and between Chapter 11 Debtors Isaacson Steel, Inc. and Isaacson Structural Steel, Inc. (together, the "**Estate**"), the Official Committee of Unsecured Creditors of the Isaacson Structural Steel, Inc. (the "**Committee**"), the New Hampshire Business Finance Authority ("**BFA**"), and Passumpsic Savings Bank (together with and including its participating lenders, Woodsville Guaranty Savings Bank and Ledyard National Bank, "**PSB**") (collectively the "**Parties**"), and is created in order to establish a liquidating trust in connection with that certain Global Settlement Agreement, dated August ___ 2013, by and between the Parties and Turner Construction Company, Inc. ("**Turner**")and approved or to be approved by the United States Bankruptcy Court for the District of New Hampshire (the "**Bankruptcy Court**").  Said Global Settlement Agreement, as the same may be amended, modified or supplemented from time to time in accordance with the terms and provisions thereof and/or as modified supplemented, or amended by further order of the Bankruptcy Court, is hereinafter referred to as the "**GSA**".[1]

WITNESSETH

WHEREAS, the Estates are debtors-in-possession in proceedings currently pending under Chapter 11 of the United States Bankruptcy Code (the "**Chapter 11 Case**") in the Bankruptcy Court;

WHEREAS, the Committee was duly appointed by the United States Trustee for Region One in the Estate's Chapter 11 Case.

WHEREAS, BFA is the holder of post-petition secured and administrative claims, including super-priority administrative claims against the Estate, such claims arising by virtue of post-petition loans made to the Estate, and pursuant to orders of the Bankruptcy Court entered in the Chapter 11 Case; and

WHEREAS PSB holds secured, administrative (including super-priority administrative), and unsecured claims against the Estate, arising from loans, security agreements with the Estates entered into prior to the commencement of the Estates' Chapter 11 Cases, as well as post-petition agreements with the Estate, and pursuant to orders of the Bankruptcy Court entered in the Chapter 11 case; and

WHEREAS, Turner holds administrative, including super- priority administrative claims against the Estate, arising from contracts entered into with the Estate, and pursuant to orders of the Bankruptcy Court entered in the Chapter 11 Case; and

WHEREAS, the Parties have all executed the GSA for the purpose of (a) settling and compromising conflicting claims among the Parties to the proceeds arising from the

---

[1] Capitalized terms used in this Agreement and not otherwise defined herein shall have the meanings ascribed to them in the GSA and the Plan.  A copy of the GSA is attached as Exhibit A.

1

prosecution of certain claims against former officers and directors of the Estate (the **"D&O Claims"**), liability for which claims are or may be insured pursuant to Director and Officer liability insurance policies held by the Estate (the proceeds of such policies being referred to herein as the **"D&O Proceeds"**), and (b) settling and compromising certain disputes regarding the order and priority of distribution of proceeds of the prosecution of the D&O Claims and causes of action held by the Estate under Chapter 5 and other provisions of the U.S. Bankruptcy Code (the **"Chapter 5 Causes of Action"**); and

WHEREAS, the Estate has filed a proposed Chapter 11 Plan incorporating the GSA and, with certain modifications, the terms of the settlement, distributions, and liquidating trust described therein, (as and when confirmed by a final order of the Bankruptcy Court, the **"Plan"**); and

WHEREAS, pursuant to the GSA, all D&O Claims and the **Net Estate Recoveries** (as defined in ¶ 7 of the GSA) are to be transferred to a liquidating trust established to administer, prosecute, and distribute the proceeds of the D&O Claims and the Net Estate Recoveries in accordance with the GSA and the Plan; and

WHEREAS, the liquidating trust established in accordance with the terms of the GSA will also continue to serve as a liquidating trust under and pursuant to the Plan; and

WHEREAS, the Parties, by this Agreement, wish to establish the liquidating trust called for by the GSA to receive the transfer of the D&O Claims and to administer, prosecute and distribute the proceeds thereof and the Net Estate Recoveries in accordance with the GSA, and upon confirmation of the Plan, in accordance with the Plan;

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the GSA, the Parties agree as follows:

## ARTICLE 1
## ESTABLISHMENT OF THE LIQUIDATING TRUST

1.1     Establishment of the Isaacson Steel Liquidating Trust and Appointment of the Liquidating Trustees.

(a) The Parties hereby established a trust which shall be known as the **"Isaacson Steel Liquidating Trust,"** and also referred to herein as the **"Liquidating Trust"** or the **"Trust,"** on behalf of and for the benefit of the Parties and the entities that they represent, respectively, and the creditors of the Estate, all of whom shall be the beneficiaries of the Trust created hereby (the **"Beneficiaries"**).

(b) There shall be three (3) trustees of the Trust, with the Committee, BFA, and PSB each having appointed one person to serve as a trustee of the Trust, and together the three persons so appointed shall constitute and shall be referred to herein as the Liquidating Trustees (together, the **"Liquidating Trustees"**, and each a **"Liquidating**

5989321 3

Trustee" or "**Trustee**"), and they shall be the trustees of the Trust.  Each Trustee and each successor trustee serving from time to time hereunder as a Liquidating Trustee shall have all the rights, powers and duties set forth herein. The initial Trustees of the Trust shall be:

| | |
|---|---|
| PSB Appointee: | Robert M. Bishop, Senior Vice President |
| BFA Appointee: | Jack Donovan, Chief Executive Officer |
| Committee Appointee: | Charles B. Fenderson, President, |
| | Charles Leonard Construction Co., Inc. |

1.2    Transfer of Assets and Rights to the Isaacson Steel Liquidating Trust and the Liquidating Trustees.

(a)  Upon confirmation of the Plan, the Parties shall cause to be transferred, assigned and delivered to the Trust all of their right, title, and interest in and to the D&O Claims, the Chapter 5 Causes of Action, and the Net Estate Recoveries, including the sum of  approximately $182,299.35 (the "**Estate Cash**"), comprised of all cash assets of the Estate derived from the prosecution by the Estate of the Chapter 5 Causes of Action and other sources, less an amount sufficient to pay the Estate's accountant and taxes[2] (the "**Transfers**").  The Transfers shall be free and clear of all liens, claims, encumbrances and interests of any person or entity.

(b)  Upon and after such Transfers, the Trustees shall administer, prosecute, liquidate and distribute the proceeds of the D&O Claims and the Chapter 5 Causes of Action and administer and distribute the Net Estate Recoveries in accordance with the terms and conditions of this Agreement, the GSA, and the Plan.

(c)  Upon and after such Transfers, the Parties shall (i) cause to be delivered to the Trustees any and all documents or other information in their possession that is or may be useful in connection with the prosecution of the D&O Claims and the Chapter 5 Causes of Action (including those maintained in electronic format and original documents) and (ii) shall provide access at reasonable times and under reasonable conditions to the Trustees as to all employees or agents of the Parties with knowledge of matters relevant to the D&O Claims and the Chapter 5 Causes of Action.

1.3    Title to D&O Claims, Chapter 5 Causes of Action, and Net Estate Recoveries.

Upon the Transfer of the D&O Claims, the Chapter 5 Causes of Action, and the Net Estate Recoveries, the Liquidating Trustees shall succeed to all of the Parties' right, title and interest in and to the D&O Claims, the Chapter 5 Causes of Action, and the Net Estate Recoveries, and except as provided by the terms of this Agreement, the GSA, or the Plan, the Parties, separately or individually, shall have no any further interest in or with respect to the same.

---

[2] For convenience sake, and subject to the Trustees' approval,  the Estate has agreed to have its accountants complete and file the Estate tax returns for all periods through 2013.

3

1.4    Nature and Purpose of the Isaacson Steel Liquidating Trust.

(a) Purpose. The Isaacson Steel Liquidating Trust is organized and established as a trust pursuant to which the Liquidating Trustees, subject to the terms and conditions contained herein, in the GSA, and in the Plan, agree to (i) hold the assets of the Trust and dispose of the same in accordance with this Agreement, the GSA, the Plan, and Treasury Regulation Section 301.7701-4(d); and (ii) oversee and direct the expeditious and orderly liquidation of the assets of the Trust and the distribution thereof in accordance with the terms of this Agreement, the GSA and the Plan. Accordingly, the primary purpose of the Trust is to liquidate and distribute the assets transferred to it with no objective to continue or engage in the conduct of any trade or business, except to the extent reasonably necessary to preserve or enhance the liquidation value of the assets of the Trust, and consistent with, the liquidating purpose of the Trust.

(b) Actions of the Liquidating Trust. The Liquidating Trustees, subject to the exercise of their reasonable business judgment, and on behalf of the Trust, shall, in an expeditious and orderly manner, liquidate and convert the D&O Claims and the Chapter 5 Causes of Actions to Cash, and make timely disbursements under this Agreement, in accordance with the GSA and the Plan. The liquidation of the D&O Claims and the Chapter 5 Causes of Action and the distribution of the proceeds thereof and of the Net Estate Recoveries, may be accomplished by the Liquidation Trustees, in the exercise of their sole judgment and discretion, and, except as provided in ¶ 3 of the GSA and the Plan, without the necessity of Bankruptcy Court approval, and through the prosecution, compromise and settlement, abandonment or dismissal of any or all claims, rights or causes of action, or otherwise. Without limiting the generality of the foregoing:

(i) All actions of the Trust shall be upon the consent, authorization and/or approval of the Liquidating Trustees acting by a majority vote of the Trustees. Such consent, authorization and/or approval by majority vote of the Liquidating Trustees shall be obtained in one or more meetings thereof duly noticed and held pursuant to this Agreement, or upon one or more written consents, authorizations and/or approvals executed by a majority of the Liquidating Trustees, and obtained in accordance with the terms of this Agreement.

(ii) A meeting of the Liquidating Trustees may be held at any location within the State of New Hampshire or by video or telephonic conference call in which all Trustees are invited to participate in the same conference call. A meeting in person or by video or telephonic conference call may be called upon two (2) days' written (mail or electronic) notice delivered by any Trustee to the other Trustees, which notice shall specify the time and place and/or dial-in instructions for the meeting or conference call, as the case may be. A Trustee may appear in person at any such meeting of the Trustees, or may participate by telephone in such meeting. A majority of the Trustees shall constitute a quorum of the Trustees, which shall be necessary for the conduct of any business at any such meeting.

(iii)   A Trustee may propose that any consent, authorization and/or approval be provided by written agreement of the Trustees. Notice of any such proposed consent, authorization and/or approval shall be provided to the Trustees by any one or more or more Trustees by written notice, and specifying the consent, authorization and/or approval to be sought. After three days following the delivery of such notice, any such consent, approval or authorization shall be effective if executed by a majority of the Trustees.

(c)   Nothing in this Agreement requires the Liquidating Trustees to file any accounting or seek approval of any court with respect to the administration of the Trust, or as a condition for managing any payment or distribution out of the assets of the Trust, provided that such payment or distribution is made in accordance with the provisions of this Agreement, the GSA, and the Plan.

(d)   Prosecutorial Discretion of Liquidating Trustees. Subject to such Bankruptcy Court approval as may be required by the GSA or the Plan, the Liquidating Trustees shall have the absolute right to pursue, settle and compromise or not pursue any and all D&O Claims and/or Chapter 5 Causes of Action as they may, in their sole judgment, determine to be in the best interests of the Beneficiaries.

(e) Relationship. This Agreement is intended to create a trust and a trust relationship and is to be governed and construed in all respects as a trust. The Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Liquidating Trustee or the Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Beneficiaries to the Liquidating Trustees shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and the Beneficiaries' rights shall be limited to those conferred upon them by this Agreement.

1.5   Incorporation of GSA.

The GSA and the Plan are hereby incorporated into this Agreement and made a part hereof by this reference; provided, however, to the extent that there is conflict between the provisions of this Agreement, the Plan, and/or the provisions of the GSA, the terms of the Plan shall govern.

5989321.3

1.6     Funding of the Trust.

The Trust shall be initially funded by the Estate Cash included with the Transfers and, thereafter, with the proceeds from the liquidation of the D&O Claims and the Chapter 5 Causes of Action and any other Net Estate Recoveries.

## ARTICLE 2
## ISAACSON STEEL LIQUIDATING TRUST INTERESTS

2.1     Interests Beneficial Only.

The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary to any title in or to the assets of the Trust as such (which title shall be vested in the Liquidating Trustees) or to any right to call for a partition or division of the assets of the Trust or to require an accounting or give standing to direct the Liquidating Trustees to do or not to do any act or to institute any action or proceeding upon or with respect to the assets of the Trust, except as expressly provided in this Agreement, the GSA, or the Plan.

## ARTICLE 3
## THE LIQUIDATING TRUSTEES

3.1     Trust Assets.

The D&O Claims, the Chapter 5 Causes of Action, the Estate Cash and all of the rights to and proceeds of the prosecution, compromise and settlement of D&O Claims and Chapter 5 Causes of Action and any other Net Estate Revenues shall comprise the assets of the Trust (the "**Trust Assets**") and shall be held as a part thereof, title to which shall be vested in the Liquidating Trustees.

3.2     Payment of Trust Expenses.

(a) The Liquidating Trustees shall maintain a litigation expense fund (the "**Litigation Expense Fund**") and expend the assets of the Litigation Expense Fund (i) as they deem reasonably necessary to meet contingent liabilities and to maintain the value of the Assets of the Trust during its duration; (ii) to pay reasonable administrative costs (including but not limited to, the costs and expenses of the Liquidating Trustees (including reasonable fees, costs, and expenses of professionals employed by the Liquidating Trustees), any taxes imposed on the Trust or fees and expenses in connection with, arising out of or related to the D & O Claims and the Chapter 5 Causes of Action; and (iii) to satisfy other liabilities incurred or assumed by the Trust (or to which the Trust Assets are otherwise subject) in accordance with this Agreement.

6

5989321.3

(b) The Liquidating Trustees may retain from the Trust Assets and add to the Litigation Expense Fund, at any time and from time to time, such amounts as the Liquidating Trustees deem reasonable and appropriate to ensure that the Litigation Expense Fund will be adequate to meet the expenses and liabilities described in this Section 3.2.

(c) Notwithstanding any other provision of this Agreement to the contrary, the Liquidating Trustees shall not be required to take any action or enter into or maintain any claim, demand, action or proceeding relating to the Trust unless it shall have sufficient funds in the Litigation Expense Fund for that purpose.

3.3     Distributions.

The Liquidating Trustees shall distribute the net distributable Trust Assets to the Parties and/or the Beneficiaries in accordance with the provisions of the GSA and the Plan.

3.4     Tenure, Removal, and Replacement of the Liquidating Trustee.

(a) Each Liquidating Trustee will serve until resignation and the appointment of a successor pursuant to subsection (b) below, disability or death (if applicable)).

(b) A Liquidating Trustee may resign by giving not less than sixty (60) days' prior written notice to the remaining Liquidating Trustees. .

(c) In the event of a vacancy in any Trustee position, (whether by removal, resignation, disability, or death, if applicable), the vacancy will be filled by the Party who appointed the Trustee who has ceased service as Trustee.

(d) Immediately upon the appointment of any successor trustee, all rights, powers, duties, authority, and privileges of the predecessor Liquidating Trustee will be vested in and undertaken by the successor trustee without any further act; and the successor trustee will not be liable personally for any act or omission of the predecessor Liquidating Trustee;

(e) Upon the appointment of a successor trustee, the predecessor Liquidating Trustee (or the duly appointed legal representative of a deceased Liquidating Trustee) shall, if applicable, when requested in writing by the successor trustee, execute and deliver an instrument or instruments conveying and transferring to such successor trustee upon the trust herein expressed, without recourse to the predecessor Liquidating Trustee, all properties, rights, powers and trusts of such predecessor Liquidating Trustee, and shall duly assign, transfer, and deliver to such successor trustee all property and money held hereunder, and all other assets and documents relating to the Trust.

5989321.3

3.5     Acceptance of Appointment by Successor Liquidating Trustee.

Any successor trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all of the obligations of the predecessor Liquidating Trustee hereunder and thereupon the successor trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts, and duties of his or her predecessor in the Trust with like effect as if originally appointed as Liquidating Trustee.

3.6     Role of the Liquidating Trustees.

In furtherance of and consistent with the purpose of the Trust, the Liquidating Trustees, subject to the terms and conditions contained herein and in the Plan, shall have the power to (i) prosecute, compromise and settle, abandon or dismiss for the benefit of the Beneficiaries all claims, rights and causes of action transferred to the Liquidating Trustees and the Trust, including the D&O Claims and the Chapter 5 Causes of Action; and (ii) to otherwise perform the functions and take the actions provided or permitted in the GSA or in this Agreement. In all circumstances, the Liquidating Trustees shall act in the best interests of all the Beneficiaries and in furtherance of the purpose of the Trust.

3.7     Authority of Liquidating Trustees.

Subject to any limitations contained in this Agreement (including, without limitation, Article 4 hereof) or in the GSA or the Plan, the Liquidating Trustees shall have the following powers and authorities:

(a) hold legal title to any and all rights of the Trust, including, without limitation, collecting, receiving any and all money and other property belonging to the Trust;

(b) prosecute, compromise, settle, adjust, arbitrate, sue on or defend, pursue, abandon, exercise rights, powers, and privileges with respect to, or otherwise deal with and settle, in accordance with the terms set forth herein, all D&O Claims and all Chapter 5 Causes of Action or other causes of action in favor of the Trust;

(c) protect and enforce the Trust's rights of ownership to D&O Claims and Chapter 5 Causes of Action by any method that the Trustees, in their sole discretion, deem appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(d) obtain reasonable insurance coverage with respect to the liabilities and obligations of the Liquidating Trustees under this Agreement (in the form of an errors and omissions policy or otherwise);

5989321.3

(e) subject to the provisions of the GSA and the Plan, select counsel and other professionals, who will be entitled to reasonable compensation for services rendered upon such terms as the Liquidating Trustees, in their sole discretion, shall deem fair and reasonable;

(f) waive any privilege or any defense held by the Trust, on behalf of the Trust; and

(g) take or refrain from taking any and all other actions (apart from those listed above) that the Liquidating Trustees, in their sole discretion, deem necessary or convenient for the continuation, protection and maximization of the assets of the Trust and to carry out the purposes hereof; and

(h) make payments and distributions as contemplated by this Agreement, the Plan and the GSA.

3.8     No Continuing Business or Investment Activities.

Notwithstanding anything herein to the contrary, and subject to the terms of the Plan, the Liquidating Trustees shall not, in their capacities as Liquidating Trustees, (i) be authorized to engage in any trade or business, (ii) take such actions inconsistent with the orderly liquidation of the assets of the Trust as are required or contemplated by this Agreement, , the GSA and the Plan, or (iii) be authorized to engage in any investments or activities inconsistent with the treatment of the Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684.

3.9     Books and Records.

(a) The Liquidating Trustees shall maintain books and records relating to the assets of the Trust and collections of the Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained on a cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the Trust.

(b) The Parties and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Liquidating Trustees, to inspect and, at the sole expense of the Party seeking the same, make copies of the books and records referenced in Section 3.9(a) on any business day and as often as may be reasonably be desired.

3.10    Inquiries into Trustees' Authority.

Except as otherwise set forth in this Agreement or in the GSA, no person dealing with the Trust shall be obligated to inquire into the authority of the Liquidating Trustees

5989321 3

in connection with the protection, conservation or disposition of the assets of the Trust or the making of disbursements by the Trust.

3.11    Compliance with Laws.

Any and all distributions of assets of the Trust and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, without limitation, the provisions of the Bankruptcy Code.

3.12    Compensation of the Liquidating Trustee.

The Liquidating Trustees shall not be compensated for their service to the Trust. The Liquidating Trustees shall, however, be entitled to reimbursement for their reasonable out of pocket expenses incurred on behalf of the Trust.

3.13    Reliance by Liquidating Trustee.

Except as otherwise provided herein: (a) the Liquidating Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Liquidating Trustee to be genuine and to have been signed or presented by the proper party or parties; and (b) persons dealing with the Liquidating Trustee shall look only to the assets of the Trust to satisfy any liability incurred by the Liquidating Trustee to such person in carrying out the terms of this Agreement, and the Liquidating Trustee shall not have any personal obligation to satisfy any such liability.

3.14    Standard of Care: Exculpation.

(a) No Liquidating Trustee nor any of his or her duly designated agents or representatives or professionals shall be liable to any person for any act or omission taken or omitted to be taken by the Liquidating Trustee in good faith (including acts or omissions in reliance on opinion of counsel), other than acts or omissions resulting from the Liquidating Trustee's own willful, knowing and material violation of law, or fraud.

3.15    Conflicts of Interest.

If a Liquidating Trustee determines, in the exercise of his or her reasonable discretion, that he or she has a material conflict of interest with respect to the settlement, resolution or prosecution of the D&O Claims or the Chapter 5 Causes of Action, or any other matter (including, but not limited to, issues related to disbursements under the GSA), such Liquidating Trustee, with the written approval of the party appointing him or her, may select a designee to act on behalf of the Trust solely with respect to such matter (the "**Designated Liquidating Trustee**"), with such designee's authority to act on behalf of the Trust to terminate upon the matter's conclusion.

10

5989321.3

3.16   <u>No Implied Obligations</u>.

No covenants or obligations shall be implied into this Agreement, the GSA, or the Plan. The Liquidating Trustees shall not be responsible in any manner whatsoever for the correctness of any recital, statement, representation, or warranty herein, or in any documents or instrument evidencing or otherwise constituting a part of the Trust Assets.


**ARTICLE 4**
**TAX MATTERS**


4.1   <u>Federal Income Tax Reporting</u>.

Subject to definitive guidance from the IRS, the terms of the Plan, or an order of the Bankruptcy Court or other court of competent jurisdiction to the contrary (including receipt by the Liquidating Trustees of a private letter ruling if the Liquidating Trustees so request one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustees, the Liquidating Trustees shall file returns for the Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Article 4.


**ARTICLE 5**
**INDEMNIFICATION**

5.1   <u>Indemnification of Liquidating Trustees and Others</u>.

(a) To the fullest extent permitted by law, the Liquidating Trust, to the extent of its assets legally available for that purpose, shall indemnify and hold harmless the Liquidating Trustees and each of its respective officers, agents, employees, attorneys and other professionals (collectively, the **"Indemnified Persons"**) from and against any and all losses, costs, damages, reasonable and documented out-of-pocket expenses (including, without limitation, fees and expenses of attorneys and other advisors and any court costs incurred by any Indemnified Person) or liability by reason of anything any Indemnified Person did, does, or refrains from doing for the business or affairs of the Trust, except to the extent that the loss, cost, damage, expense or liability resulted primarily from the Indemnified Person's willful, knowing and material violation of law, or fraud.   To the extent reasonable, the Trust shall pay in advance or reimburse reasonable and documented out-of-pocket expenses (including advancing reasonable costs of defense)

11

incurred by the Indemnified Person who is or is threatened to be named or made a defendant or a respondent in a proceeding concerning the business and affairs of the Trust.

(b) The fact that an act or omission of an Indemnified Person was based upon advice of counsel will conclusively be deemed not to constitute willful, knowing and material violation of law, or fraud. Each Indemnified Person may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed to be genuine and to have been signed or presented by the proper party or parties, and any order of the Bankruptcy Court.

(c) The Liquidating Trust may purchase indemnification insurance to satisfy any potential indemnification claims that may arise under this Section 5.1, in conjunction with any insurance obtained pursuant to Section 3.7(e), for the benefit of the Trust, the Liquidating Trustee, and any agents, representatives, attorneys, accountants, advisors or other professionals employed by any of them.

(d) The rights to indemnification under this Section 5.1 are not exclusive of other rights which any Indemnified Person may otherwise have at law or in equity, including without limitation common law rights to indemnification or contribution. Nothing in this Article 5.1 will affect the rights or obligations of any person (or the limitations on those rights or obligations) under this Agreement, or any other agreement or instrument to which that Person is a party.

5.2    Limited Recourse.

No recourse shall ever be had, directly or indirectly, against a Liquidating Trustee personally, or against any employee, contractor, agent, attorney, accountant or other professional retained in accordance with the terms of this Agreement, the GSA or the Plan by the Liquidating Trustees, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidating Trustees in implementation of this Agreement, the GSA or the Plan or by reason of the creation of any indebtedness by the Trust for any purpose authorized by this Agreement, the GSA or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and agreements of the Trust, whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Trust Assets or such part thereof as shall under the term of any such agreement be liable therefore or shall be evidence only of a right of payment out of the Trust Assets.

Notwithstanding the foregoing, a Liquidating Trustee may be held liable for his or her willful, knowing and material violation of law, or fraud, in each case, as determined

12

by a final order of a court of competent jurisdiction not subject to appeal; and if liability on such grounds is established, recourse may be had against (a) the Liquidating Trustee's bond or applicable insurance coverage, and, (b) to the extent not covered by such bond or insurance, subject to Section 5.3, directly against the Liquidating Trustee, provided, however, in no event shall the liability of the Liquidating Trustee be any more than the fees to which the Liquidating Trustee is entitled to hereunder that are paid to, or are received by way of set off or otherwise by, the Liquidating Trustee.

5.3    No Liability for Acts of Predecessor.

No successor Liquidating Trustee shall be in any way responsible or liable for the acts or omissions of any predecessor Liquidating Trustee in office prior to the date on which such person becomes the Liquidating Trustee, nor shall such successor Liquidating Trustee be obligated to inquire into the validity or propriety of any such act or omission unless such successor Liquidating Trustee expressly assumes such responsibility. Any successor Liquidating Trustee shall be entitled to accept as conclusive any final accounting and statement of Trust Assets furnished to such successor Liquidating Trustee by the predecessor Liquidating Trustee and shall further be responsible only for those Trust Assets properly includable in such statement.

5.4    Express Exculpatory Clauses in Instruments

As far as practicable, the Liquidating Trustee shall cause any written instrument creating an obligation of the Trust to include a reference to this Agreement, the GSA and the Plan and to provide that none of the Liquidating Trustees shall be liable thereunder and that the other parties to such instrument shall look solely to the Trust Assets for the payment of any claim thereunder or the performance thereof; provided, however, that the omission of such provision from any such instrument shall not render any Liquidating Trustee liable nor shall a Liquidating Trustee be liable to anyone for such omission.

### ARTICLE 6
### TERM; TERMINATION OF THE TRUST

Term: Termination of the Trust.

(a) The Trust shall remain in existence until all Trust assets have been fully administered and distributed in accordance with this Agreement, the GSA, and to the extent applicable, the Plan, and a final report and accounting of the Liquidating Trustees shall have been issued to the Parties and accepted by the Parties, in writing.

(b) The Trust may be terminated prior to the occurrence of the events described in Section 6(a) only upon either (i) the express written agreement of the Parties, or (ii) a final order of the Bankruptcy Court terminating the Trust.

5989321.3

## ARTICLE 7
## AMENDMENT AND WAIVER

7.1     Amendment and Waiver.

(a) The Liquidating Trustees, acting unanimously, may (i) amend, supplement or waive any provision of this Agreement, without notice to or the consent of any Party, any Beneficiary or the approval of the Bankruptcy Court: (ii) cure any ambiguity, omission, defect or inconsistency in this Agreement provided, however, that no such amendment or cure shall be inconsistent with the terms of the Plan or adversely affect the U.S. federal income tax status of the Trust as a "liquidating trust".

## ARTICLE 8
## MISCELLANEOUS PROVISIONS

8.1     Intention of Parties to Establish the Trust.

This Agreement is intended to create a liquidating trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust, and any ambiguity herein shall be construed consistent herewith and, if necessary, this Agreement may be amended in accordance with Article 7 to comply with such federal income tax laws, which amendments may apply retroactively.

8.2     Laws as to Construction.

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW HAMPSHIRE, WITHOUT REGARD TO WHETHER ANY CONFLICTS OF LAW WOULD REQUIRE THE APPLICATION OF THE LAW OF ANOTHER JURISDICTION.

8.3     Dispute Resolution.

In the event of any unresolved dispute between and/or among the Liquidating Trustees, such dispute shall be resolved by the Bankruptcy Court upon motion made by any of the Liquidating Trustees, and after due notice and hearing by the Bankruptcy Court.

8.4     Severability.

If any provision of this Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to  be

5989321.3

invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

8.5    Notices.

All notices, requests or other communications to the parties hereto shall be in writing and shall be deemed to have been given or delivered upon (i) delivery of the notice in person; (ii) delivery by electronic mail or facsimile communication (as evidenced by a confirmed fax transmission report); (iii) the expiration of three days following deposit in the United States Mail, postage prepaid, restricted delivery; or (iv) the expiration of two (2) days after delivery to an overnight courier, such as Federal Express or United Parcel Service, with delivery pre-paid.    Until a change of address is communicated, as provided below, all notices, requests and other communications shall be sent to the parties at the following addresses or facsimile numbers:

If to the Estate:


c/o William S. Gannon, PLLC
889 Elm Street, 4th Floor
Manchester NH 03101
Tel: (603) 621-0833
*bgannon@gannonlawfirm.com*

If to the BFA:
Jack Donovan, Chief Executive Officer
NH Business Finance Authority
2 Pillsbury Street Suite 201
Concord, NH  03301
JackD@nhbfa.com

With a copy to:

George J. Marcus, Esq.
Marcus, Clegg & Mistretta, P.A
One Canal Plaza, Suite 600
Portland, ME 04101
Tel: (207) 828-8000
Fax: (207) 773-3210
*gjm@mcm-law.com*


If to the Committee:

15

5989321.3

Charles B. Fenderson, President
Charles Leonard Construction Company, Inc.
183 Pembroke Road
Concord NH 03301
*charles@charlesleonardinc.com*

With a copy to:

Daniel S. Sklar, Esq.
Nixon Peabody
900 Elm Street
Manchester, NH 03101
Tel: (603) 628-4000
Fax: (603) 628-4040
*dsklar@nixonpeabody.com*

If to PSB:

Passumpsic Savings Bank, Attn: Senior Loan Officer
497 Railroad St
PO Box 38
St Johnsbury VT 05819.

With a copy to:

Daniel P. Luker, Esq.
Preti Flaherty
P.O. Box 1318
Concord, NH 03302-1318
Tel: (603) 410-1500
Fax: (603) 410-1501
*dluker@preti.com*

If to Turner:

c/o D. Ethan Jeffery, Esq.
Murphy & King, PC
One Beacon Street, 21st Floor
Boston, MA 02108
Tel: (617) 423-0400
*dej@murphyking.com*

Any party from time to time may change its address, facsimile number, or other information for the purpose of notices to that party by giving notice specifying such change to the other patty hereto.

5989321.3

8.6     Fiscal Year.

The fiscal year of the Trust shall be the calendar year, January 1 to December 31.

8.7     Headings.

The section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

8.8     Counterparts.

This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall constitute one agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed and delivered on their behalf by their duly authorized agents, all as of the date first above written.

**[signatures on following page]**

17

5989321.3

WITNESS:

ISAACSON STEEL, INC.
ISAACSON STRUCTURAL STEEL,
INC.

By: _____
Print Name: ARNOLD P. HANSON, JR
Title: PRESIDENT

NEW HAMPSHIRE BUSINESS
FINANCE AUTHORITY

By: _____
Print Name: _____
Title: _____

OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

By: _____
Print Name: _____
Title: Committee Counsel

PASSUMPSIC SAVINGS BANK

By: _____
Print Name: _____
Title: _____

18

WITNESS:                                    ISAACSON STEEL, INC.
                                            ISAACSON STRUCTURAL STEEL,
                                            INC.

_____                     By: _____
                                            Print Name:
                                            Title:

                                            NEW HAMPSHIRE BUSINESS
                                            FINANCE AUTHORITY

_____                     By: _____
                                            Print Name: Jack Donovan
                                            Title: Executive Director

                                            OFFICIAL COMMITTEE OF
                                            UNSECURED CREDITORS

_____                     By: _____
                                            Print Name:
                                            Title:

                                            PASSUMPSIC SAVINGS BANK

_____                     By: _____
                                            Print Name:
                                            Title:

18

WITNESS:

ISAACSON STEEL, INC.
ISAACSON STRUCTURAL STEEL,
INC.

_____

By:
Print Name:
Title:


NEW HAMPSHIRE BUSINESS
FINANCE AUTHORITY

_____

By:
Print Name:
Title:


OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

_____

By:
Print Name:
Title:


PASSUMPSIC SAVINGS BANK

By:
Print Name: *Robert M. Bishop*
Title: *SVP*

18